**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| FRESH PRODUCTS, INC., | Case No. 3:19-cv-02109-JZ |
| Plaintiff, | Hon. Jack Zouhary |
| v. | **Jury Trial Demanded** |
| IMPACT PRODUCTS, LLC, | |
| Defendants. | |

**DEFENDANT IMPACT PRODUCTS, LLC'S
<u>OPENING CLAIM CONSTRUCTION BRIEF</u>**

**Table of Contents**

**Page**

TABLE OF AUTHORITIES ........................................................................iii-iv

EXHIBIT LIST .........................................................................................v-vi

I.      Overview ...................................................................................1

II.     Applicable Law ........................................................................1

III.    The Level of Skill in the Art ...................................................2

IV.     Disputed Constructions............................................................3

      A.      "Urinal screen".............................................................3

      B.      "Face" .........................................................................6

      C.      "Cells" is indefinite.....................................................7

              1.      The Intrinsic Evidence Controverts any Plain, Ordinary Meaning....7

              2.      The Specification Delimits the Scope of Cells ..................10

              3.      The Prosecution History Only Heightens the Confusion..................11

              4.      There is No Special Lexicography for "Cells" .................12

      D.      "Tessellation" and "Tessellation of openings" .............14

      E.      "[W]herein at least some of the plurality of interconnected cells comprise a polygonal shape" …………………………………………16

      F.      "Post"..........................................................................17

      G.      "Reversible".................................................................19

      H.      "[A]long a perimeter of at least some of the plurality of openings, so as to surround the at least some of the plurality of openings" ...........................20

      I.      "[A]t least some of the plurality of braces comprise contoured upper and lower surfaces" ...................................................................21

## Table of Authorities

**_Cases_**:

*3M Innovative Properties Co. v. Avery Dennison Corp.*,
  350 F.3d 1365 (Fed. Cir. 2004)..........................................................................13

*Abbott Labs. v. Andrx Pharms., Inc.*,
  473 F.3d 1196 (Fed. Cir. 2007)..........................................................................13

*Astrazeneca AB v. Mutual Pharm. Co.*,
  384 F.3d 1333 (Fed. Cir. 2004)......................................................................6, 13

*Catalina Mktg. Int'l v. Coolsavings.com, Inc.*,
  289 F.3d 801 (Fed. Cir. 2002)..............................................................................3

*CCS Fitness, Inc. v. Brunswick Corp.*,
  288 F.3d 1359 (Fed. Cir. 2002)..........................................................................13

*Comark Commc'ns, Inc. v. Harris Corp.*,
  156 F.3d 1182 (Fed. Cir. 1998)............................................................................8

*Cont'l Circuits LLC v. Intel Corp.*,
  915 F.3d 788 (Fed. Cir. 2019)............................................................................12

*ePlus, Inc. v. Lawson Software, Inc.*,
  700 F.3d 509 (Fed. Cir. 2012)..............................................................................2

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  535 U.S. 722 (2002)  ..........................................................................................2

*GE Lighting Sols., LLC v. Agilight, Inc.*,
  750 F.3d 1304 (Fed. Cir. 2014)..........................................................................13

*General Electric Co. v. Joiner*,
  522 U.S. 136 (1997)......................................................................................12-13

*Georgetown Rail Equip. Co. v. Holland L.P.*,
  867 F.3d 1229 (Fed. Cir. 2017)............................................................................3

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
  527 F.3d 1379 (Fed. Cir. 2008)..........................................................................13

*Hill-Rom Servs. v. Stryker Corp.*,
  755 F.3d 1367 (Fed. Cir. 2014)....................................................................10, 12

*Interval Licensing LLC v. AOL, Inc.,*
766 F.3d 1364 (Fed. Cir. 2014)......................................................................17

*Kara Tech. Inc. v. Stamps.com,*
582 F.3d 1341 (Fed. Cir. 2009)......................................................................13

*Katz v. AT&T Corp.,*
63 F. Supp. 2d 583 (E.D. Pa. 1999) ...............................................................13

*Nautilus Inc. v. Biosig Instruments, Inc.,*
572 U.S. 898 (2014) ..............................................................................*passim*

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005)...............................................................*passim*

*Renishaw PLC v. Marposs Societa' per Azioni,*
158 F.3d 1243 (Fed. Cir. 1998) ...................................................................2, 8

*Route1 Inc. v. AirWatch LLC,*
No. CV 17-331-RGA, 2018 WL 3574873 (D. Del. July 25, 2018)..................13

*Rowe v. Dror,*
112 F.3d 473 (Fed. Cir. 1997)..........................................................................3

*Sinorgchem Co., Shandong v. Int'l Trade Comm'n,*
511 F.3d 1132 (Fed. Cir. 2007)......................................................................13

*United Carbon Co. v. Binney & Smith Co.,*
317 U.S. 228 (1942)......................................................................................14

*Unwired Planet, LLC v. Apple Inc.,*
829 F.3d 1353 (Fed. Cir. 2016)........................................................................1

*V-Formation v. Benetton Group & Rollerblade, Inc.,*
401 F.3d 1307 (Fed. Cir. 2005).........................................................................4

**_Statutes_:**

35 U.S.C. § 112...............................................................................................2

## **TABLE OF EXHIBITS**

Exhibit A        Expert Declaration of Fred Smith of Technology Background and Indefiniteness of Certain Claim Terms Set Forth in U.S. Patents 10,145,098 and 10,501,924

Exhibit B        924 Pat. File History, May 16, 2019 Information Disclosure Statement (FRESHPR0000143-153)

Exhibit C        924 Pat. File History, September 30, 2019 Information Disclosure Statement considered by examiner (FRESHPR0000219-227)

Exhibit D        U.S. Pat. No. 5,398,347 (IMPACT000368-376)

Exhibit E        U.S. Pat. No. 5,813,058 (IMPACT000379-386)

Exhibit F        U.S. Pat. No. 3,248,740 (IMPACT000094-96)

Exhibit G        U.S. Pat. No. 3,170,169 (IMPACT000091-93)

Exhibit H        U.S. Pat. No. 1,186,345 (IMPACT000319-321)

Exhibit I        WEBSTER'S NEW COLLEGE DICTIONARY (3rd ed. 2008) (FRESHPR0000840-41, 843-44)

Exhibit J        THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2011) (FRESHPR0000835-38)

Exhibit K        U.S. Pat. Pub. 2010/0183694 (IMPACT000032-35)

Exhibit L        SPI PLASTICS ENGINEERING HANDBOOK OF THE SOCIETY OF THE PLASTICS INDUSTRY, INC. (Berins M.L. ed. 1991) (IMPACT000798-99)

Exhibit M        Polymer Technologies, *Open vs. Closed Cell Foam: Understanding Permeability*, The Official Blog of Polymer Technologies, Inc. (August 24, 2018), https://blog.polytechinc.com/open-vs-closed-cell-foam (IMPACT000800-07)

Exhibit N        ASTM DICTIONARY OF ENGINEERING SCIENCE & TECHNOLOGY (10th ed. 2005) (IMPACT000934-37)

Exhibit O        098 Pat. File History, Dec. 19, 2016 Office Action (FRESHPR0000418-30)

Exhibit P        098 Pat. File History, March 17, 2017 Response to Office Action (FRESH FRESH0000432-439)

Exhibit Q        U.S. Pat. Pub. 2014/0259344 (IMPACT000060-85)

Exhibit R      Rebuttal Expert Report of Randy Hurd, Ph.D.

Exhibit S      Merriam-Webster.com Dictionary (updated May 1, 2020),
               https://www.merriam-webster.com/dictionary/tessellation (IMPACT000943-944)

Exhibit T      Merriam Webster's Collegiate Dictionary (10th ed. 1997)
               (FRESPR0000845-46, 851)

Exhibit U      Wolfram MathWorld, https://mathworld.wolfram.com/Tessellation.html
               (visited April 26, 2020) (IMPACT000827-29)

Exhibit V      U.S. Pat. No. 10,087,612 (IMPACT000830-74)

Exhibit W      U.S. Pat. No. 10,267,027 (IMPACT000875-910)

Exhibit X      Collins Dictionary (10th ed. 2009) (FRESHPR0000882-83, 886)

Exhibit Y      Oxford Dictionary of English (3d ed. 2010) (IMPACT000786-88, 796)

Exhibit Z      *Difference Between Few and Some*,
               http://www.differencebetween.net/language/grammar-language/difference-
               between-few-and-some/ (visited July 20, 2020) (IMPACT000954-59)

Exhibit AA     Erin Feldman, *Write Right: Couple, Few, Some, Several, Many* (May 22, 2013),
               https://www.writerightwords.com/write-right-couple-few-some-several-many/
               (IMPACT000960-70)

Exhibit BB     U.S. Pat. No. 10,612,226 (IMPACT000971-88)

## I.  <u>Overview</u>

U.S. Patent No. 10,145,098 (the "098 Pat.", filed as Dkt. 50-1) and U.S. Patent No. 10,501,924 (the "924 Pat.", filed as Dkt. 50-2), are directed to a urinal screen.



[098 Pat., cover page)].  The 924 Patent is a continuation of the 098 Patent, and shares a common specification with the 098 Patent.  Therefore, for the sake of consistency, Defendant Impact Products, LLC ("Impact") cites herein to the 098 Patent, except where the reference can only be found in the 924 Patent.

## II.  <u>Applicable Law</u>

Claim language is construed in the context of both the claim and the patent specification. *Phillips v. AWH Corp*., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*). The specification is the primary basis for construing patent claims. *Id*. at 1315. The claim "must be read in view of the specification," which is "the single best guide to the meaning of a disputed [claim] term." *Id*. The specification's understanding is informed, as needed, by the prosecution history. *Id*. Extrinsic evidence may be considered, but is secondary to the intrinsic evidence. *Id*. Terms are "given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1358 (Fed. Cir. 2016). This requires "understanding [] what the inventors actually invented and intended to envelop with the claim. The construction that stays

true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Phillips*, 415 F.3d at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

A claim must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2.  The patent monopoly "is a property right; and like any property right, its boundaries should be clear. This clarity is essential to promote progress, because it enables efficient investment in innovation. A patent holder should know what he owns, and the public should know what he does not."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 730–31 (2002).  A claim must therefore "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).  If it does not, the claim is indefinite. *Id.* at 901. "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).

## III.    **The Level of Skill in the Art**

The art of the patents-in-suit is described as "relat[ing] to restroom screens and mats, and, more particularly . . . to restroom urinal screens and mats." [098 Pat., 1:13-15].[1] A person of skill in the art ("POSITA") in 2015 would understand plastics, molding processes and fluid flow. [Expert Declaration of Fred Smith ("Smith Dec.") (**Ex. A**), ¶ 9]. A POSITA would have a bachelor's degree in a technical field or a college degree in a non-technical field, and 2-3 years of experience developing, designing and/or manufacturing plastic consumer products such as screens or mats. [*Id.*, ¶¶ 10-13].

---

[1] References to the asserted patents in Impact's Brief are to the column and line within the patent (*e.g.* column:line).

2

IV. **Disputed Constructions**

A. **"Urinal screen"**

| Fresh's Construction | Impact's Construction |
|---|---|
| Plain and ordinary meaning. If further defined, a screen used in a urinal and through which urine passes. | For '098 – claim 19 and dependents other than claim 22, Preamble term. Not limiting.<br><br>For all other claims, a partition fit to deter objects from entering a urinal drain hole. |

Here, Plaintiff Fresh Products, Inc. ("Fresh") relies on the preamble to escape various prior art partitions which are fit for inclusion in a urinal and which, if placed in a urinal, would block items from entering the drain hole. "Generally, the preamble does not limit the claims." *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1236 (Fed. Cir. 2017) (citation omitted).

Here, "urinal screen" appears only in the preamble – not the body – of Claim 19 of the 098. [098 Pat., 9:31-63]. Claim 19 recites "urinal screen comprising" followed a "frame" having opposing first and second "face[s]," each face with first and second "posts," and further having a specific arrangement of "braces" and "interconnected cells." [*See id.*]. Given that Claim 19 describes "a structurally complete invention in the claim body," and that Fresh's proffered construction emphasizes the "intended use for the invention" ("**used** in a urinal"), the preamble of Claim 19 is not a limitation. *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997).

On the other hand, dependent Claim 22 of the 098 recites "urinal screen" in the **body** of the claim. [098 Pat., 10:4-9]. The other independent claims at issue in this case – Claim 38 of the 098 and Claims 1, 21 and 28 of the 924 – utilize "urinal screen" in the preamble **and then again in the body of the claim**. [098 Pat., 10:64-11:29; 924 Pat., 7:65-12:25]. For these claims, "urinal screen" acts as a limitation. *See Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d

801, 810-11 (Fed. Cir. 2002) (finding preamble language found only in the preamble to be non-limiting, while finding that language found in **both** the preamble and again in the body of the claim serves as a claim limitation).

Where "urinal screen" **is** a limitation, the Court should construe it consistent with the intrinsic evidence, as a partition fit to deter objects from entering a urinal drain hole. [098 Pat., 1:19-20]. The prior art reviewed during prosecution is intrinsic evidence, *see V-Formation v. Benetton Group & Rollerblade, Inc.*, 401 F.3d 1307, 1311 (Fed. Cir. 2005), and militates in favor of Impact's construction.  These urinal screens were disclosed on the face of the patents-in-suit and identified in information disclosure statements ("IDS") filed during patent prosecution:



[*See* 924 File History, May 16, 2019 IDS (**Ex. B**), at FRESHPR0000147, FRESHPR0000149; *id.*, IDS considered by examiner, September 30, 2019 (**Ex. C**); *see also* U.S. Pat. 5,398,347 (**Ex. D**), at Fig. 2, 1:27-51:

> The **drain opening of the urinal may be covered by a screen** or a grid or it may comprise openings in the sidewalls of the urinal or in a projecting hub disposed near the bottom of the collection region. … drain mats are well known, **their purpose has been to collect solid debris which otherwise, when deposited in a urinal, would pass into the drain openings and clog or obstruct the drain system for the urinal**. The **typical urinal mat is a flexible sheet of synthesized material having a screen or grid region through which the urine and other liquids are to pass while solid debris is intended to be collected on the screen or grid surface**.

(emphasis added); U.S. Pat. 5,813,058 (**Ex. E**), at Fig. 1, 1:20-22, 1:39-43 ("desirable to prevent

the plugging or blocking of the drains of the urinals though the introduction of foreign objects[]"); U.S. Pat. 3,248,740 (**Ex. F**), at FIG. 1, 1:8-16) ("Urinal screens are provided for straining purposes in order to prevent debris, such as cigarette butts and the like from entering the trap and plumbing associated with the urinal and thus blocking the urinal"); U.S. Pat. 3,170,169 (**Ex. G**), at FIG. 3, 1:10-21 (referring to a "perforate screen for use as a strainer to prevent … foreign objects from proceeding into the urinal drain")]. The earliest urinal screens further confirm Impact's construction. [*See* U.S. Pat. 1,186,345 (**Ex. H**), at FIG. 1, 1:10-14 ("one of the main objects is to provide a screen which serves to prevent the passage of refuse of such size toward the drain pipe")].

The patents' own specification confirms that Fresh's construction ("used in a urinal") is too limiting: "The urinal screen 10 can be sized and shaped to fit into a urinal, toilet, or other bathroom appliance. . . . The frame 14 can be sized and shaped to fit over all or a portion of a drain of a toilet or urinal." [098 Pat., 3:66-4:4]. If used, it could be used in a "urinal, toilet, or other environment in which the urinal screen 10 is installed." [*Id*., 5:6-9; *see also id.*, 6:58-61 (referencing the installation surface of a urinal "or other fixture onto which the urinal screen 10 is installed") and 3:24-25 ("when the frame is set on a flat horizontal surface")].

Fresh's attempt to refer strictly to "urine pass[ing]" through the screen – again assuming usage – is also at odds with the patents, which refer to "urine **or other fluids** which pass … (e.g., **fluids** that pass through the openings 18 or around the perimeter of the frame 14)." [*Id*., 7:15-19]. Should the Court desire to refer to fluids, Impact is amenable to "a partition fit to deter objects from entering a urinal drain hole, *through which fluids may pass*."

B.    "Face"

| Fresh's Construction | Impact's Construction |
|---|---|
| Plain and ordinary meaning.  If further defined, a main side of a thing. | Planar surface of a solid. |

Here, the parties dispute whether a "face" is planar, *i.e.*, flat. "A urinal screen can include a frame. In some embodiments, the frame has a first face and a second face opposite the first face." [098 Pat., 1:26-28].  The specification further refers to the first face as "a first **plane** face" that is "passing through the frame when the frame is set on a flat horizontal surface." [*Id*., 3:21-26 (emphasis added)]. Every figure similarly shows the first and second faces as planar faces. Furthermore, various dictionary definitions provided by Fresh also define a "face" as a "planar surface of a solid." [*Face*, WEBSTER'S NEW COLLEGE DICTIONARY (3rd ed. 2008) (**Ex. I**), at FRESHPR0000843 ("[a] planar surface bounding a solid"); *Face*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2011) (**Ex. J**), at FRESHPR000837 ("[a] planar surface of a geometric solid")].

The specification never mentions Fresh's construction, which is "a main side of a thing." Fresh appears to have: (1) picked a different definition of "face" from the same reference sources relied upon by Impact above, to wit, "**[t]he most** significant or **prominent** surface of an object" (*see* Exs. I, J); and (2) modified the definition from "the most significant"/"the most prominent" to "**a main** side of a thing.  However, the urinal screen depicted in the patents-in-suit does not have "the most significant or prominent" side.

That Fresh's construction mentions the "side" of a thing only demonstrates the correctness of Impact's proposed construction.  The patents specifically state that "[t]erms such as "above," "below," "bottom," "top," "**side**," "higher," "lower," "upper," "over," and "under," **are defined with respect to the horizontal plane**." [098 Pat., 7:27-29 (emphasis added)].

6

"[A]re defined with …" is language signifying lexicography by the patentee. *Astrazeneca AB v. Mutual Pharm. Co.*, 384 F.3d 1333, 1339 (Fed. Cir. 2004) ("[t]he solubilizers suitable according to the invention are defined below" is lexicography). Such lexicography is consistent with the specification's statement that the first face is "a first plane face" "passing through the frame when the frame is set on a flat horizontal surface." [098 Pat., 3:21-26]. FIG. 5 illustrates the faces with respect to the horizontal plane:



FIG. 5

Consistent with the intrinsic evidence, the patented urinal screen has two planar faces. By including "sides" in its construction, Fresh ignores the patentee's own lexicography.

**C.   "Cells" is indefinite.**

| Fresh's Construction | Impact's Construction |
|---|---|
| Plain and ordinary meaning.  If further defined, small enclosed openings or spaces. | Indefinite. |

1.   *The Intrinsic Evidence Controverts any Plain, Ordinary Meaning.*

The meaning of "cells" varies.  For instance, in the urinal screen field, "cell" may refer to the cellular structure of the foamed plastic used in the urinal screen. [*See* U.S. Pat. Pub. 2010/0183694 (**Ex. K**), at ¶[0011]].  In this context, open cells and closed cells have different properties, which can affect a plastic's permeability to air and water, along with other attributes. [*See* SPI PLASTICS ENGINEERING HANDBOOK OF THE SOCIETY OF THE PLASTICS INDUSTRY, INC. (Berins M.L. ed. 1991) (**Ex. L**), at 541-542; Polymer Technologies, *Open vs. Closed Cell Foam: Understanding Permeability*, The Official Blog of Polymer Technologies, Inc. (August 24,

7

2018), https://blog.polytechinc.com/open-vs-closed-cell-foam (**Ex. M**)].



[Ex. M, at IMPACT000803].

Also, certain definitions refer to cells as small enclosed openings or spaces. [*Cell*, ASTM DICTIONARY OF ENGINEERING SCIENCE & TECHNOLOGY (10th ed. 2005) (**Ex. N**), at 91]. However, here, these various contexts and definitions are not helpful because the patents-in-suit use "cells" more broadly than a POSITA would expect.  In these patents, "cells" may refer to an enclosed opening or a solid cell lacking an opening. It would be error to adopt a construction based on a single disclosed type of cell (open cell) that precludes another disclosed embodiment of cell (solid cell).  *See Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187-88 (Fed. Cir. 1998) ("'[w]hile . . . claims are to be interpreted in light of the specification and with a view to ascertaining the invention, it does not follow that limitations from the specification may be read into the claims'") (internal quotation omitted).  This is true regardless of dictionary definitions.  "[C]ommon meaning, such as one expressed in a relevant dictionary, that flies in the face of the patent disclosure is undeserving of fealty." *Renishaw*, 158 F.3d at 1250.  Here, the patent disclosure trumps contradictory extrinsic evidence.

8

In the 098 Patent, Claim 19 uses "a plurality of interconnected **cells**," the "plurality of interconnected cells comprising at least a plurality of **perimeter cells** and a plurality of interior cells," and is silent on whether the cells may be open cells, solid cells, or both.  So, for example, consistent with the embodiment of FIG. 2, Claim 19 is addressed to a urinal screen with at least interconnected **open and solid cells** as the plurality of **perimeter cells** (regardless of whether the interior cells are open cells).  [098 Pat., FIG. 2, 4:63-65, 5:12-15].



Fresh will likely argue that the **interior** cells of Claim 19 are open cells, but that is of no moment.  The "**perimeter** cells" mentioned in claim 19 may include the solid cells 19 of FIG. 2. The frame 14 of FIG. 2 can include one or more "solid cells 19 positioned between and/or adjacent the openings 18 of the frame 14." [*Id.*, 5:12-15].  Claim 27 of the 098 further states that "at least some of the plurality of interconnected cells comprise a polygonal shape." This contemplates polygonal solid cells, as FIG. 2 shows solid cells 19 shaped as hexagons.  Thus, the patents-in-suit refer to open and solid cells. [*Id.*, 4:63-65, 5:10-27]. Thus, while the example of on (open cells 18) is consistent with Fresh's proposed construction, the other (solid cells 19) is not.  It would be error to accept Fresh's invitation to limit the construction of cells to open cells,

while omitting solid cells. *See Hill-Rom Servs. v. Stryker Corp.,* 755 F.3d 1367, 1371 (Fed. Cir. 2014) ("[W]e do not read limitations from the embodiments … into the claims.").

Furthermore, Claim 38 of the 098 reveals that the drafter understood how to limit the claims to open cells. Claim 38 does not state "cells" but rather, "a plurality of **openings** extending through the frame between the first face and the second face." The use of "cells" in some claims and "openings" in others reinforces that all cells are not necessarily openings. *Phillips*, 415 F.3d at 1314 (differences in claims terms used may aid in construction).

2. *The Specification Delimits the Scope of Cells.*

A POSITA reading the specification would understand that a cell may be a space (void) or a solid. [098 Pat., 4:63-65, 5:12-15]. A cell (*e.g.*, opening) can have a polygonal shape with a plurality of sides and corners. [*Id*., 3:29-30]. A cell may be any shape. [*Id*., 4:35-38]. Contrary to Fresh's proffered construction that a cell is "small," the specification teaches that a cell may be **any size**, including "large solid cells 15." [*Id*., 5:20-27]. A cell may or may not be similar to adjacent cells. [*Id*., 4:38-41]. A cell may be separate from or connected to adjacent cells. [*Id*., 4:63-65, 5:20-27; *see* Smith Dec., ¶ 51]. Here are potential cells culled from FIGURE 2:



10

[Smith Dec., ¶ 46].

The intrinsic evidence sets forth no meaningful boundary between cells and non-cells.  A POSITA would recognize that **(1) – (6)** above could all potentially constitute a cell.  [*Id.*, ¶¶ 46-47]. More specifically, the intrinsic evidence: **(1)** indicates "openings 18 (e.g., cells)" [098 Pat., 4:63-65]; **(2)** shows how posts can be connected a **side** or **corner** (*i.e.*, a solid part) of a cell [*id.*, 3:31-34]; **(3)** and **(4)** points out exemplary "solid cell[s] 19" [*id.*, 5:10-15]; **(5)** illustrates "intermediate solid cells 20" [*id.*, 5:20-21]; and **(6)** indicates "large solid cells 15" [*id.*, 5:24-26]. Thus, "[m]any variations are possible." [*Id.*, 5:26-27; Smith Dec., ¶ 47].  Due to the breadth of the specification, to a POSITA, virtually any element, open space or solid, any size, any shape, can be a cell.  The patents do not advise where to draw the line between cell and non-cell. [Smith Dec., ¶ 53].

> 3. *The Prosecution History Only Heightens the Confusion.*

The patentee ascribed to the Examiner's opinion that the Muderlak reference showing that interconnected open cells did **not** show "interconnected cells." [*See* 098 Pat. File History, Dec. 19, 2016 Office Action (**Ex. O**), at FRESHPR0000424; *id.*, March 17, 2017 Response to Office Action (**Ex. P**), at FRESHPR0000438].  Muderlak showed open cells interconnected by an intermediate solid structure:



FIG. 4

[U.S. Pat. Pub. 2014/0259344 (**Ex. Q**), at FIG. 4 (emphasis added); Smith Dec., ¶ 50]. Yet nothing would lead a POSITA to believe these would not be "interconnected cells." [Smith Dec., ¶ 51]. "They are voids, they have a size and shape, they are even similar to each other and they are interconnected." [*Id*.] The specification states that "connected" includes both direct connections and connections using intermediate structure. [*See* 098 Pat., 7:30-36]. Hence, "[a] POSITA reading the prosecution history therefore is left to question objectively what is and is not a cell, and how to differentiate between a cell and a non-cell." [Smith Dec., ¶ 51]. "The file history further obscures any possibility for a POSITA to reliably determine what is and is not a cell." [*Id*., ¶ 50].

4. *There is No Special Lexicography for "Cells".*

Only if the patentee either (a) clearly stated that its definition of "cells" excludes all solid cells or (b) manifestly and clearly disavowed the "solid cells" examples from the scope of "cells," could Fresh defensibly assert that a solid cell is not a "cell" in its patents. *See Hill-Rom Servs.*, 755 F.3d at 1371; *Cont'l Circuits LLC v. Intel Corp*., 915 F.3d 788, 797 (Fed. Cir. 2019). However, neither lexicography nor clear disavowal applies in this case.

Now that the patents are in litigation, Fresh wants to embrace only the embodiment of open cells in its patents, to the exclusion of the solid cells. *But see Nautilus*, 572 U.S. at 911 (disfavoring "post hoc" efforts to "ascribe some meaning to a patent's claims"). In response to the expert declaration of Fred Smith, P.E., Fresh offered the Randy Hurd, Ph.D., declaration, which asserts falsely that the patentee used special "lexicography" to permit a POSITA to understand that a solid cell is not a type of "cell." [Expert Declaration of Randy Hurd ("Hurd Dec.") (**Ex. R**), ¶ 36]. This Hurd testimony, which invents "lexicography" where there is none, should be rejected as *ipse dixit* testimony which contravenes the intrinsic evidence. *See, e.g.,*

12

*General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) (a district court has discretion in its gatekeeper function to exclude opinion evidence that is connected to existing data only by *ipse dixit* or where "there is simply too great an analytical gap between the data and the opinion proffered").

To act as lexicographer, a patentee must "**clearly** set forth a definition" of the disputed claim term. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (emphasis added); *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1381 (Fed. Cir. 2008); *see also Kara Tech. Inc. v. Stamps.com*, 582 F.3d 1341, 1347-48 (Fed. Cir. 2009). The standard for finding lexicography is "exacting." *GE Lighting Sols., LLC v. Agilight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014); *see also Route1 Inc. v. AirWatch LLC*, No. CV 17-331-RGA, 2018 WL 3574873, at *4 (D. Del. July 25, 2018).

In *Abbott Labs. v. Andrx Pharms., Inc.*, the Court contrasted phrases like "as used herein" with the mere use of an example that "does not . . . unambiguously signify that the description provided is definitional."  473 F.3d 1196, 1210-11 (Fed. Cir. 2007) (emphasis added); *see also Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1136 (Fed. Cir. 2007) (discussing indicators of lexicography used to avoid doubt as to whether a usage is definitional in nature); *3M Innovative Properties Co. v. Avery Dennison Corp.,* 350 F.3d 1365, 1369, 1371 (Fed. Cir. 2004) (stating "[X] means [Y]" is lexicography); *Astrazeneca*, 384 F.3d at 1339.

Judged by the "exacting" standard, the patents-in-suit contain no lexicography pertaining to cells. [*Compare* 098 Pat., 7:20-43 (defining other terms in the patents)]. These patents do not define "cells", but merely provide examples of cells. [Smith Dec., ¶ 44; *see Katz v. AT&T Corp.*, 63 F. Supp. 2d 583, 591 (E.D. Pa. 1999) ("[I]f a term is used in a variety of ways by the patentee in the specification, this may be indicative of the breadth of the term, rather than a limited

definition") (citation omitted)].  Absent clear and specific lexicography exempting a "solid cell" from a "cell," Fresh's reliance on Hurd's testimony is an impermissible attempt to contradict the intrinsic evidence.  *See Phillips*, 415 F.3d at 1318-19, 1324.

A POSITA cannot determine with reasonable certainty how to differentiate a cell from a non-cell.  [Smith Dec., ¶ 53].  The lack of boundaries and uncertainty inherent in the intrinsic evidence creates an impermissible "zone of uncertainty." *Nautilus*, 572 U.S. at 909; *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942) ("A zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims would discourage invention only a little less than unequivocal foreclosure of the field").  The Court should therefore construe "cells" as indefinite.

### D.     "Tessellation" and "Tessellation of openings"

| Fresh's Construction | Impact's Construction |
|---|---|
| An arrangement of openings closely fitted together. | *Tessellation*: a pattern capable of covering of an infinite geometric plane without gaps or overlaps by one or a few repeating congruent plane figures. Otherwise, indefinite. <br><br> *Tessellation of openings*: a pattern of openings comprising one or a few repeating shapes capable of covering of an infinite geometric plane without gaps or overlaps.  Otherwise, indefinite. |

A "tessellation" refers to a pattern of one or a few repeating shapes. [*See Tessellation*, MERRIAM-WEBSTER.COM DICTIONARY (updated May 1, 2020), https://www.merriam-webster.com/dictionary/tessellation (**Ex. S**), at IMPACT000943-44; *Tessellation*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1997) (**Ex. T**), at FRESHPR0000851 ("a covering of an infinite geometric plane without gaps or overlaps by a congruent plane figures of one type or a few types")].  The repeating shape(s) can cover an infinite plane without gaps or overlapping, to wit:

14



[*See Tessellation*, WOLFRAM MATHWORLD, https://mathworld.wolfram.com/Tessellation.html (visited April 26, 2020) (**Ex. U**)]. Citing FIG. 2, showing hexagons recurring *ad infinitum*, the specification teaches "a portion of the frame 14 forms a tessellation of openings 18." [098 Pat., FIG. 2, 4:66-67; *see also id*., 3:40-41].  Thus, Impact's construction "stays true to the claim language and most naturally aligns with the patent's description of the invention[.]" *See Phillips*, 415 F.3d at 1316.

 Fresh's construction, "arrangement of openings closely fitted together," does not address the *sine qua non* of a tessellation, that one or a few shapes is used repeatedly to cover the potentially infinite plane without gaps/overlap.  Fresh's construction also collapses any distinction between a tessellation and a "tessellations of openings." It should be rejected.

**E.**	**"[W]herein at least some of the plurality of interconnected cells comprise a polygonal shape"**

| Fresh's Construction | Impact's Construction |
|---|---|
| Plain and ordinary meaning. | Indefinite |

Fresh proposes a plain and ordinary meaning construction for this language in Claim 27 of the 098 Patent.  "[A]t least some of the plurality . . ." is used only in the patent claims, not in the specification. Hurd states that a POSITA "would understand this term to mean at least some **individual** cells of the plurality of cells comprise a polygonal shape."  [Hurd Dec., ¶ 50].

However, what Hurd fails to acknowledge is that "this [phrase] could [also] mean that some of the plurality of cells **collectively** form a polygonal shape. Both interpretations are consistent with the specification and the figures."  [Smith Dec., ¶ 54 (emphasis added)].  Two different constructions are tenable.



| Cells **individually** form a polygonal shape | Cells **collectively** form a polygonal shape |
|---|---|
| FIG. 4 | FIG. 2 |

The specification teaches that individual cells can be "polygons (e.g. triangles, rectangles, pentagons, hexagons, etc.)[.]"  [098 Pat., 4:35-37].  It also teaches that "[i]n some embodiments, the screen 10 has a polygonal … overall shape."  [*Id*., 4:9-10].

Claims 25, 27 and 28 provide:

25.    The urinal screen of claim 19, wherein the first cell, second cell, and third cell **each** comprise a polygonal shape.

27.    The urinal screen of claim 19, wherein at least some of the plurality of interconnected cells comprise a polygonal shape.

28.    The urinal screen of claim 19, wherein **each** of the plurality of interconnected cells comprises a polygonal shape.

[*Id*., 10:16-25 (emphasis added)].  Claim 2 also uses "each" to describe individual openings. [*Id*., 8:33-35].  Claim 27 is ambiguous and does not use "each" when referring to cells.  This suggests that the claim is not directed to the shape of the individual cells within the plurality of cells.  *See Phillips*, 415 F.3d at 1314 (different words used in different claims may point to different meanings).

Infirmity over whether Claim 27 can be evaluated based on cells collectively results in an impermissible zone of uncertainty regarding what type of screen designs fall within the scope of Claim 27.



| Cells **individually** form a polygonal shape | Cells **collectively** form a polygonal shape |
|---|---|
| Example 3 - Polygonal cell & Non-polygonal overall shape | Example 2 - Non-polygonal cell & polygonal overall shape |

[Smith Dec., ¶¶ 54-55; *see Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1373–74 (Fed. Cir. 2014) (holding claim language indefinite)].

**F.      "Post"**

| Fresh's Construction | Impact's Construction |
|---|---|
| Plain and ordinary meaning.<br><br>If further defined, an elongate element that serves as a support. | A protrusion.<br><br>Otherwise, indefinite. |

All claims use "post."  Here, the dispute is whether the patents-in-suit require a length-to-width ratio for the posts, or whether the posts are merely protrusions from the face of the urinal screen.  Fresh's construction using the word "elongate" suggests that a "post" must be long, a thinly-veiled attempt to avoid substantial prior art showing posts which are shorter than the posts of the preferred embodiment.

The patents-in-suit provide no measurements for the height or width of a post, and no guidance as to the height-to-width ratio of a post.  FIG. 5 shows exemplary posts; however, FIG. 5 is only "an embodiment of a urinal screen." [098 Pat., 3:58-5].  "Each of the posts in the first

17

plurality of posts 22a **can** be substantially identical to the each of the posts in the second plurality of posts 22b. For example, each of the posts **can** have the same height, width and/or overall shape." [*Id.*, 5:53-57 (emphasis added)]. "In some embodiments, one or more of the posts in the first plurality of posts 22a has a **different shape and/or height** than one or more of the posts in the second plurality of posts 22b." [*Id.*, 5:63-66) (emphasis added)].  "In some embodiments, the first plurality of posts 22a and/or the second plurality of posts 22b have a plurality of heights. For example, a percentage (e.g., 25%, 50%, 75% or some other percentage) of the posts 22 **can be shorter** than the remaining posts as measured from the first or second surfaces 26, 30 of the frame 14." [*Id.*, 5:66-6:4 (emphasis added)].  Some posts can be "**at least ⅓ shorter**" than other posts. [*Id.*, 6:12 (emphasis added)]. Finally, Fɪɢ. 6 indicates that "in some embodiments, one or more of the posts 22 extends from the frame 14 at a non-perpendicular angle." [*Id.*, 6:23-25].

The use of "post" in other patents provides further guidance. U.S. Pat. 10,087,612 (the "612 Patent" (**Ex. V**)) was listed on the face of the 924 Patent, and included in the IDS during prosecution of the 924 Patent, such that it is intrinsic evidence. [*See* Ex. B, at FRESHPR0000151]. Moreover, the inventors of the patents-in-suit also invented the 612 Patent, which is also owned by Fresh. [*See* Ex. V]. Fɪɢ. 10A of the 612 Patent shows what the patentee calls (at 9:11-16) "a pair of **posts/bosses/protrusions** 1004."



FIG. 10A

[Ex. V, at Fɪɢ. 10A, 9:11-16 (emphasis added)].  Judged from the plane of the surface from

which it protrudes, a POSITA reading the intrinsic evidence would know that a "post" is a "protrusion." [*See also* U.S. Pat. 10,267,027 (**Ex. W**), at 6:30-31 (describing "posts" of a urinal screen as "a plurality of posts (e.g., **nubs**, spikes or grass blades)") (emphasis added)].

### G.  "Reversible"

| Fresh's Construction | Impact's Construction |
|---|---|
| Plain and ordinary meaning.<br><br>If further defined, adapted to be reversed such that either side is usable as the top (e.g. side facing a user) or bottom (e.g. side facing urinal surface). | Plain and ordinary meaning.<br><br>If further defined, capable of being reversed. |

Only claims of the 924 Pat. use "reversible." [*See, e.g.*, 924 Pat., 7:65-8:26 (referring to "reversible urinal screen" in the preamble and again in the body of Claim 1)]. The parties agree to "plain and ordinary meaning." Dictionaries define "reversible" as able to be reversed. [*See* Ex. I (*Reversible*), at FRESHPR0000844; *Reversible*, COLLINS DICTIONARY (10th ed. 2009) (**Ex. X**), at FRESHPR0000886 ("capable of being reversed: a reversible decision"); *Reversible*, OXFORD DICTIONARY OF ENGLISH (3d ed. 2010) (**Ex. Y**), at IMPACT000796 ("able to be turned the other way around")]. The specification never uses the word "reversible."  The Court should construe "reversible" as "plain and ordinary meaning" or "capable of being reversed."

Fresh's attempt to add "such that either side is usable as the top (e.g. side facing a user) or bottom (e.g. side facing urinal surface)" should be rejected, as it attempts to use a mere characteristic of a preferred embodiment to narrow the scope of broader claim language.

### H.  "[A]long a perimeter of at least some of the plurality of openings, so as to surround the at least some of the plurality of openings"

| Fresh's Construction | Impact's Construction |
|---|---|
| Plain and ordinary meaning. | Indefinite |

One element of Claim 38 of the 098 Patent is "wherein a number of said plurality of first posts and a number of said plurality of second posts are positioned along a perimeter of at least some of the plurality of openings, so as to surround the at least some of the plurality of openings." [098 Pat., 11:15-19].  The infirmity of this language is that a POSITA cannot tell whether the perimeter refers to the perimeter of openings individually or collectively.  [*See* Smith Dec., ¶¶ 56-57].  "As illustrated in FIGS. 2 and 3, one **or more** of the openings 18 (e.g., cells) can have **a perimeter** which includes a plurality of sides (e.g., braces) 42 and corners 46." [098 Pat., 4:63-65 (emphasis added)].



| posts surrounding the perimeter of **individual** openings | posts surrounding the perimeter of **collective** openings |
|---|---|
|  |  |

Each interpretation is supported by the specification and figures.  [Smith Dec., ¶¶ 56-57].  Yet Hurd asserts that a POSITA would only interpret the plain and ordinary meaning of this term narrowly to encompass posts positioned solely along a perimeter of "at least some of the **individual** openings."  [Hurd Dec., ¶ 57 (emphasis added to highlight the substitution of "individual" for "plurality")].  While a POSITA could conclude that is one meaning for the claim language in question, it is not the only reasonable construction.  Addressing the alternative "collective" construction, Hurd falsely premises his position on the allegation that the patent uses "perimeter structure" to refer to **one** opening, while using "perimeter structures" to refer to

openings.  [*Id.,* ¶¶ 63-64].  In making that statement, Hurd contradicts the intrinsic evidence that a "perimeter structure" may form a collection of openings.  [098 Pat., 1:46-47 ("a perimeter structure forming one **or more of the plurality of openings**"), 1:56 ("the perimeter structure defining the **openings**") (emphasis added)].

The lone use of "surround[ ]" in the specification is likewise unclear on this matter: "In some embodiments, as illustrated in FIGS. 1 and 2, portions of the frame 14 include one or more solid or closed portions between or **surrounding** the openings 18."  [098 Pat., 5:10-12 (emphasis added)].  Looking at FIGURE 2, a solid portion of the frame surrounds the individual openings 18, and surrounds the openings collectively along the "perimeter of the frame."  [*Id.*, 7:19]. In summary, for the foregoing reasons, there is a zone of uncertainty regarding whether a POSITA would understand this claim language to cover posts surrounding a combination of two or more openings.  Smith Dec., par. 65.  The phrase is therefore indefinite.

**I.     "[A]t least some of the plurality of braces comprise contoured upper and lower surfaces"**

| Fresh's Construction | Impact's Construction |
|---|---|
| Plain and ordinary meaning.<br><br>If further defined, at least some of the plurality of braces have non-planar upper and lower surfaces. | Indefinite |

Claims 1 and 21 of the 924 Patent each recite "wherein at least some of the plurality of braces comprise contoured upper and lower surfaces to deflect urine when the reversible urinal screen is placed upon the urinal surface in either of the first or second orientations."  [924 Pat., 8:22-26 and 10:7-11].  Simply stated, it is not clear in the specification whether some of the braces individually must **each** have contoured upper and lower surfaces, or whether the claim is satisfied where some braces have contoured upper surfaces (but not contoured lower surfaces)

and other braces have contoured lower surfaces (but not contoured upper surfaces).

| Some of the plurality of braces **individually** comprise contoured upper and lower surfaces | Some of the plurality of braces **collectively** comprise contoured upper and lower surfaces |
|---|---|
| | 2 contoured upper surfaces<br><br><br>2 contoured lower surfaces |

[Smith Dec., ¶66].

By referring to upper "and/or" lower surfaces, the specification does not permit a POSITA to resolve the uncertainty of whether the claim is directed to a braces, some of which have only contoured upper surfaces, while others have only contoured lower surfaces:



"In some cases, the sides 42 and/or corners 46 of the openings 18 have contoured (e.g., convex) upper **and/or** lower surfaces." [098 Pat., 5:4-6].

FIG. 3

[*See* 098 Pat., 5:4-6].  A POSITA would understand in this context that a "side" refers to a brace.  [*Id.*, 3:65 ("a plurality of sides (e.g., braces) 42")].  Figure 3 shows sides 42 of a brace that has a contour on the visible side.  In view of the "and/or", a POSITA cannot reasonably exclude either the "individual" or "collective" constructions.  Because a zone of uncertainty exists as to whether

the claim language means that some of the braces collectively comprise contoured upper and lower surfaces regardless of whether the braces individually have contoured upper and lower surfaces, the language at issue is indefinite.  [*Id.*, ¶68].

Hurd provides a **third** potential construction:  he asserts that a POSITA would read this phrase to "mean at least one ***individual*** brace comprises contoured upper and lower surfaces." [Hurd Dec., ¶ 70 (emphasis in original)].  Hurd thinks a POSITA would conclude that the language at issue refers to **one single brace** having a contoured upper **and** lower surface, to wit:



Hurd's conclusion is based on two mistaken premises: (1) that the intrinsic evidence would compel a POSITA to believe that "some" means "one" [*id.*, ¶ 73]; and (2) that the intrinsic evidence requires a brace to have both contoured upper and lower surfaces.  These flaws will be addressed in turn.

*Some is not one*.  Here, the drafter used "at least some of the plurality of braces" rather than "at least one of the plurality of braces."  When the drafter wanted to refer to at least one of a plurality of articles, the drafter used "at least **one** of the plurality of [articles]."  [098 Pat., claims 1 and 6-10, at 8:8:27-62 (emphasis added)].  Further, the patents-in-suit consistently use "some" when followed by a set of plural articles to refer to "at least **two**." [*See, e.g.*, *id.*, 1:20-21 ("some case**s**"), 1:26 ("some embodiment**s**"), 1:34 ("some variant**s**"); *see also Difference Between Few and Some*, http://www.differencebetween.net/language/grammar-language/difference-between-few-and-some/ (visited July 20, 2020) (**Ex. Z**), at IMPACT000956 ("The word 'few' generally

indicates a number or a figure of five or less. On the other hand, 'some' indicates a larger quantity that ranges between five and ten."); *see* Erin Feldman, *Write Right: Couple, Few, Some, Several, Many* (May 22, 2013), https://www.writerightwords.com/write-right-couple-few-some-several-many/ (**Ex. AA**), at IMPACT000961 ("'Some' is understood as meaning more than 'few' but less than 'several'."); U.S. Patent No. 10,612,226 (**Ex. BB**), at 2:45-52 (Hurd's own patent, where he refers to "some case**s**" and "some aspect**s**") (emphasis added); *see Phillips*, 415 F.3d at 1314 ("[i]n some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges")].

   *A brace may not have contoured upper and lower surfaces*.  Hurd mistakenly states that a POSITA "would understand that such a phrase refers to an individual [brace] unless the context suggests otherwise. The context does not suggest a different reading here."  [Hurd Dec., ¶ 74]. As shown above, the context of the specification leaves the matter in question utterly open-ended by referring to upper "and/or" lower surfaces.  [*See* 098 Pat., 5:4-6].  To reach a contrary conclusion, Hurd actually **alters** the "and/or" statement to "and" to better fit his conclusion. [Hurd Dec., ¶ 75 ("[T]he specification discloses an embodiment that **requires** individual braces to have upper and lower concave surfaces. See '098 patent at 5:4-9 (In some cases, the sides 42 and/or corners 46 of the openings 18 have contoured (e.g., convex) upper **and** lower surfaces.)" (emphasis added)].  Hurd's false account of the specification impermissibly varies the terms of the intrinsic evidence to suit his otherwise unsupportable opinion.

   In sum, there is an impermissible zone of uncertainty regarding whether the claim language at issue refers to the upper and lower surfaces of individual braces, or the upper and lower surfaces of a collection of braces regardless of whether any individual braces possess contoured upper and lower surfaces.  Furthermore, Hurd's injection of a third potential

construction to a POSITA, suggesting that the claim language is satisfied by only one brace merely heightens the confusion.  This claim language is indefinite, and the Court should so hold.

Respectfully submitted this 4th day of August, 2020.

/s/ Steven G. Hill
Steven G. Hill (GA BAR 354658)
Martha Decker (GA BAR 420867)
HILL, KERTSCHER & WHARTON, LLP
3350 Riverwood Parkway, Suite 800
Atlanta, GA 30339
770-953-0995 (o)
770-953-1358 (f)
Email: sgh@hkw-law.com
        md@hkw-law.com

James Silk
Spengler Nathanson P.L.L.
900 Adams Street
Toledo, Ohio 43604
419-252-6260 (t.)
419-241-8599 (f.)
Emails: jsilk@snlaw.com

*Attorneys for Defendant Impact Products, LLC*

## CERTIFICATION OF PAGE LIMIT COMPLIANCE

I hereby certify that the foregoing Defendant Impact Products, LLC's Opening Claim Construction Brief adheres to the pages limitations set forth in Paragraph 4.4(c) of the Patent Local Rules of the Northern District of Ohio.

/s/ Steven G. Hill
Steven G. Hill
*Counsel for Defendant Impact Products, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically this 4th day of August, 2020. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

/s/ Steven G. Hill
Steven G. Hill
*Counsel for Defendant Impact Products, LLC*