# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

FRESH PRODUCTS, INC.,

       Plaintiff,

       v.

IMPACT PRODUCTS, LLC,

       Defendant.

Case No. 3:19-cv-02109-JZ

Hon. Jack Zouhary

## FRESH PRODUCTS, INC.'S OPENING CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

**Page No.**

I.      BACKGROUND ...................................................................................................... 1

     A.      The Patented Invention ................................................................................. 1

II.     LEGAL PRINCIPLES OF CLAIM CONSTRUCTION ........................................ 3

III.    THE DISPUTED CLAIM TERMS ........................................................................ 4

     A.      "urinal screen" (all asserted claims) ............................................................ 4

           1.      Legal Principles for Patent Claim Preambles ...................................... 5

           2.      "Urinal Screen" is a Claim Limitation ................................................. 5

     B.      "face" ('098 patent – claim 19) ...................................................................... 7

     C.      "cells" ('098 patent - claims 19, 20, and 27; '924 patent - claims 1, 5, 7, 21 and 28) ................................................................................................... 9

     D.      "tessellation"/"tessellation of openings" ('098 Patent - claim 20; '924 Patent - claims 1, 8, 9, 12, 13, 21 and 28) ...................................................... 13

     E.      "wherein at least some of the plurality of interconnected cells comprise a polygonal shape" ('098 patent – claim 27) ................................. 16

     F.      "post" ('098 patent – claims 19, 32, 38, 47, and 51; '924 patent – claims 1, 5, 7, 16, 18, 21, and 28) .................................................................. 17

     G.      "along a perimeter of at least some of the plurality of openings, so as to surround the at least some of the plurality of openings" ('098 patent – claim 38) ......................................................................................... 19

     H.      "reversible" ('924 patent – all asserted claims) ............................................ 20

     I.      "at least some of the plurality of braces comprise contoured upper and lower surfaces" ('924 patent– claims 1 and 21) ............................................ 21

IV.     CONCLUSION ....................................................................................................... 22

# TABLE OF AUTHORITIES

**Page No(s).**

*Acumed LLC v. Stryker Corp.*,
    483 F.3d 800 (Fed. Cir. 2007)....................................................................... 3

*AIA Eng'g Ltd. v. Maggotteaux Int'l S/A*,
    657 F.3d 1264 (Fed. Cir. 2011)................................................................... 12

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
    289 F.3d 801 (Fed. Cir. 2002)....................................................................... 5

*Cybor Corp. v. FAS Technologies, Inc.*,
    138 F.3d 1448 (Fed. Cir. 1998)..................................................................... 3

*Deere & Co., v. Bush Hog, LLC*,
    703 F.3d 1349 (Fed. Cir. 2012)................................................................ 5, 6

*Embrex, Inc. v. Serv. Eng'g Corp.*,
    216 F.3d 1343 (Fed. Cir. 2000)..................................................................... 3

*K-2 Corp. v. Salomon S.A.*,
    191 F.3d 1356 (Fed. Cir. 1999)..................................................................... 3

*Kara Tech. Inc. v. Stamps.com, Inc.*,
    582 F.3d 1341 (Fed. Cir. 2009)..................................................................... 8

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
    474 F.3d 1323 (Fed. Cir. 2007)..................................................................... 5

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91 (2011).................................................................................... 11

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014).................................................................................. 12

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ............................................... 3, 8

*Summit 6, LLC v. Samsung Electronics Co.*,
    802 F.3d 1283 (Fed. Cir. 2015)..................................................................... 4

*Takeda Pharm. Co. Ltd. v. Zydus Pharm. USA, Inc.*,
    743 F.3d 1359 (Fed. Cir. 2014)................................................................... 12

## TABLE OF AUTHORITIES
### (*Cont'd*)

**Page No(s).**

*Thorner v. Sony Computer Ent. Am. LLC,*
  669 F.3d 1362 (Fed. Cir. 2012) ................................................................................ 3, 4, 8

*Toshiba Corp. v. Imation Corp.,*
  681 F.3d 1358 (Fed. Cir. 2012) ........................................................................................ 9

*U.S. Surgical Corp. v. Ethicon, Inc.,*
  103 F.3d 1554 (Fed. Cir. 1997) .................................................................................... 3, 4

Fresh Products, Inc. ("Fresh Products") asserts that Impact Products, LLC infringes U.S. Patent Nos. 10,145,098 ("the '098 patent") and 10,501,924 ("the '924 patent").[1]  Fresh Products addresses herein the claim terms the parties dispute.

# I.  BACKGROUND

## A.  The Patented Invention

The Fresh Products '098 and '924 patents are directed to improved urinal screens.  The patents share a common specification.  A top view of an embodiment of the urinal screen is depicted in Figure 2 (reproduced below).



FIG. 2

The improved urinal screen includes a frame 14.  The frame includes what the patent refers to as braces that define openings or cells 18.  The patent explains that the openings can

---

[1] Fresh Products asserts infringement of claims **19**-20, 22, 27, 32, **38**-39, 47, 51, and 54 of the '098 patent and claims **1**-2, 4-5, 7-9, 12-13, 16, 18-20, **21**, 22, 26-27, **28**, 29, and 33 of the '924 patent.  The five asserted independent claims are bold and underlined.

have various shapes, including polygons and others.  Ex. 1 at 4:35-39.[2]  In the preferred embodiment shown above, the openings are hexagons.  The braces form the sides of the openings and intersect at corners.

As depicted in the side view of a preferred embodiment, Figure 5 (reproduced below), the urinal screen also includes posts 22a and 22b on the top and bottom of the frame, referred to as the first face and second face of the urinal screen frame.



FIG. 5

The posts extend from the braces or at corners where the braces intersect.  *See* Ex. 1 at Figs. 3 and 4.  The posts on one side support the frame above the surface of the urinal and the posts on the other side extend upwardly from the frame.  The urinal screen is reversible such that it is adapted to be flipped over and used in either orientation, which eliminates the possibility that someone incorrectly places the screen in a urinal.

The patented urinal screens provide a number of additional advantages, including, for example, when the urinal screen is placed in a urinal, the posts separate the frame of the urinal screen from the surface of the urinal and thereby reduce splashing.  The braces also can have contoured upper and lower surfaces to further reduce splashing.

---

[2] Because the patents share a common specification all further citations to the patent specification in column:line format are to the '098 patent (Ex. 1) unless indicated otherwise.

## II.  LEGAL PRINCIPLES OF CLAIM CONSTRUCTION

Claim construction is a question of law for the court to decide.  *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1455-56 (Fed. Cir. 1998).  The goal of construing patent claims is not to rewrite the claims, but to explain to the trier of fact, where necessary, how the terms chosen by the patentee would have been understood by one of ordinary skill in the art.  *See K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1365 (Fed. Cir. 1999).

Claim construction begins by considering the words of the claim.  *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 805 (Fed. Cir. 2007), citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*).  Claim terms "are generally given their ordinary and customary meaning."  *Phillips*, 415 F.3d at 1312.  This ordinary and customary meaning "is the meaning that the [claim] term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  *Phillips*, 415 F.3d at 1313.  In determining the ordinary and customary meaning of a claim term, courts look first to the intrinsic evidence of a patent, which includes the specification and the file history.  *Id*.

"The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims."  *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) (internal quotations omitted).  In many instances, however, elaboration is neither necessary nor helpful.  Claim construction "is not an obligatory exercise in redundancy" and where the claim language is clear, the Court need not "repeat or restate every claim term."  *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

There are two exceptions to the rule that claims should be given their ordinary meaning.  *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365-66 (Fed. Cir. 2012).  One is when patentees act as their own lexicographer and provide a definition for a term.  *Id.*  The other is

when patentees disavow the full scope of a claim term either in the specification or during prosecution.  *Id.* at 1366.

### III.  THE DISPUTED CLAIM TERMS

**A.**  **"urinal screen" (all asserted claims)**

| Fresh Products' Construction | Impact Products' Construction |
|---|---|
| Plain and ordinary meaning.<br><br>If further defined, a screen used in a urinal and through which urine passes. | A partition fit to deter objects from entering a urinal drain hole.<br><br>For '098 – claim 19 and dependents other than claim 22<br><br>Preamble term. Not limiting. |

"Urinal screen" is a straightforward and readily understood term.  There is no need for the Court to impose a definition.  Where, as here, the proper meaning of a claim term is understandable to the jury without explanation, no claim construction is necessary and none should be given.  *See U.S. Surgical*, 103 F.3d at 1568 ("The *Markman* decisions do not hold that the trial judge must repeat or restate every claim term in order to comply with the ruling that claim construction is for the court."); *Summit 6, LLC v. Samsung Electronics Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) ("Because the plain and ordinary meaning of the disputed claim term is clear, the district court did not err by declining to construe the term.").

If "urinal screen" were further defined, however, Fresh Products submits a urinal screen is simply "a screen used in a urinal and through which urine passes."

The parties mainly dispute whether "urinal screen" is a limitation at all for certain of the asserted claims.  Specifically, where the term only appears in the preamble of the claim, Defendant contends "urinal screen" is not a limitation.  This applies to claim 19 of the '098

patent and certain claims that depend therefrom.[3]  According to Defendant, these claims would cover something that is not a urinal screen.  That is incorrect as explained below.

### 1.    Legal Principles for Patent Claim Preambles

In general, a preamble is limiting if it is "necessary to give life, meaning and vitality to the claim."  *Deere & Co., v. Bush Hog, LLC*, 703 F.3d 1349, 1357 (Fed.  Cir.  2012).  "[C]lear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention."  *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808-09 (Fed.  Cir.  2002); *see also MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1328 (Fed.  Cir.  2007) (where preamble recited "method of immediately and positively precluding needlestick injury from a contaminated needle," the term "immediately" was a claim limitation where the patentee relied upon such feature to distinguish prior art during prosecution).

### 2.    "Urinal Screen" is a Claim Limitation

During prosecution of the '098 patent at issue here, Fresh Products relied on "urinal screen" to distinguish the claimed invention from the prior art.  The examiner issued an office action rejecting the pending claims and cited, *inter alia*, U.S. Patent No. 927,026 ("Clayton").  Ex. 3 at Page 3-7.  Clayton disclosed a floor covering for use in a restroom.  Ex. 4 at 1:12-16.  Fresh Products responded and distinguished Clayton by arguing that "Clayton [was] not in the same field of endeavor as . . . the present application[,]" and described the field of endeavor as

---

[3] All other asserted claims also refer to "urinal" and/or "urinal screen" in various ways in the body of the claim, i.e. after the transitional "comprising" term, in addition to the preamble. *See, e.g.*, Ex. 1, claim 22 ("A urinal system comprising: the screen of claim 19; and a urinal …;" *id.* at claim 38 (wherein when the urinal screen is set upon a surface in a urinal …;" Ex. 2, claims 1, 21, and 28 ("when the reversible urinal screen is placed upon the urinal surface in a first [or second] orientation …").

"apparatuses for use inside of a urinal to reduce splash and/or screen debris from entering a urinal drain."  Ex. 3 at Pages 18-19.

In a subsequent interview with the examiner, Fresh Products and the examiner agreed that "Clayton discloses a floor, *not a urinal screen*."  Ex. 3 (Summary of Interview) at Page 23 (emphasis added).  Because Fresh Products distinguished the prior art during prosecution on the basis the prior art did not disclose a "urinal screen," the preamble should be limiting here.

The "urinal screen" preamble of claim 19 should also be limiting because "urinal screen" is a critical feature of the invention, and therefore "give[s] life, meaning and vitality to the claim."  *Deere*, 703 F.3d at 1357.  The patents are entitled "Urinal Screen."  Ex. 1.  Every figure discloses an embodiment of a "urinal screen."  *Id.* at 3:52-61.  Every claim recites a "urinal screen."  *Id.* at 7:64-12:25; Ex. 2 at 7:64-12:55.  The abstract refers to a "urinal assembly."  Ex.1 at Abstract.  The "Technical Field," "Discussion of the Related Art," "Summary of the Inventions," and "Brief Description of the Drawings" sections all refer to a "urinal screen."  *Id.* at 1:11-3:61.  The "Detailed Description of the Inventions" is replete with references to a "urinal screen."  *Id.* at 3:65-7:62.  Finally, as previously discussed, the prosecution history of the '098 patent includes an explicit admission by the patentee that the "field of endeavor" for the claimed invention is "apparatuses for use inside of a urinal."  Ex. 3 at Page 18-19.

Defendant also acknowledges "urinal screen" is a claim limitation for all claims that further refer to a "urinal" or "urinal surface" in the body of the claim.  There is nothing to suggest the inventors somehow regarded claim 19 as uniquely directed to something broader than a "urinal screen."

The specification does sometimes allude to the possibility that the urinal screen could be used in other bathroom appliances, in addition to urinals.  In one instance, the specification says

that "contoured surfaces of the sides 42 and corners 46 can deflect fluid (e.g., urine) to reduce splash in the urinal, toilet, or other environment in which the urinal screen 10 is installed."  Ex. 1 at 5:6-9.  Elsewhere, the specification says "the urinal screen 10 is configured such that a plurality of posts 22 space the frame 14 from the installation surface of a urinal or other fixture onto which the urinal screen 10 is installed."  *Id.* at 6:58-61, *see also id.* at 3:66-4:8 ("The urinal screen 10 can be sized and shaped to fit into a urinal, toilet, or other bathroom appliance").  The suggestion that the urinal screen could be installed in a "urinal or other fixture" and a "toilet[] or other environment" is no indication that the term "urinal screen" should not limit the claimed inventions.  A toilet, for example, can serve as the functional equivalent of a urinal.  Perhaps the best indication that these statements do not broaden the invention to non-urinal environments is the use of the term "urinal screen" in each instance where some non-urinal application is arguably suggested.

In sum, "urinal screen" is used in accord with its plain meaning and would be readily understood by the jury.  The Court need not further define it.  If "urinal screen" were further defined, however, it is simply "a screen used in a urinal and through which urine passes."  And finally, "urinal screen" is a limitation of the claims, including claim 19 of the '098 patent and the claims that depend therefrom.

**B.**     **"face" ('098 patent – claim 19)**

| Fresh Products' Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning.  If further defined, a main side of a thing. | Planar surface of a solid. |

The patents use the term "face" consistent with its plain and ordinary meaning and a jury could readily determine what the first and second faces of a urinal screen frame were, e.g. the top

and bottom. If the Court does further define "face" for the jury, Fresh Products submits its construction, "a main side of a thing," is appropriate.

In the context of the patents, the first and second faces are simply the two main sides of the urinal screen frame. Claim 19 recites a urinal screen having a frame with a first face and second face opposite the first face. Ex. 1 at 9:31-34. Reciting the first and second faces provides context for describing the claimed posts on each side of the urinal screen – the first posts extend away from the first face and the second posts extend away from the second face. *Id.* at 9:58-63.

The patent's broad use of "face" referring to the two main sides of the frame is consistent with the ordinary meaning of "face" as reflected in common dictionaries. See Exs. 5 and 6 (defining "face" as "8. The most significant or prominent surface of an object, esp.: a. The surface presented to view : FRONT. b. a façade. c. The outer surface <on the *face* of the earth> d. A marked side <the *face* of a watch> e. The right side, as of fabric. F. an exposed, often precipitous surface of rock."); Ex. 7 (defining "face" as "8 the main side of an object, building, etc. or the front: *the face of a palace; a cliff face*").

Defendant requests construction of "face,' and proposes a "***planar*** surface of a solid." This proposed construction is incorrect because it reads an additional limitation into the claim, namely "planar." The Federal Circuit has repeatedly cautioned against reading limitations from the patent specification into the claims. *Phillips*, 415 F.3d at 1323. "The claims, not specification embodiments, define the scope of patent protection." *Kara Tech. Inc. v. Stamps.com, Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1367 ("It is the claims that define the metes and bounds of the patentee's invention. The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope.") (Internal citations omitted).

Accordingly, it is improper to limit the claims to the examples described in the specification. *See*, *e.g.*, *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1369 (Fed. Cir. 2012) ("It is not enough that the only embodiments, or all of the embodiments, contain a particular limitation.  We do not read limitations from the specification into claims.") (internal quotations and citations omitted).

In sum, Fresh Products submits "face" need not be construed and the jury could readily apply the plain and ordinary meaning.  If the Court does further define "face," it should be construed as "a main side of a thing."

**C.      "cells" ('098 patent - claims 19, 20, and 27; '924 patent - claims 1, 5, 7, 21 and 28)**

| Fresh Products' Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning.<br><br>If further defined, small enclosed openings or spaces. | Indefinite. |

The term "cells" in the context of the patent is used in its plain and ordinary meaning and a jury could readily determine what the "cells" of a urinal screen were without further elaboration by the Court.  If the Court were to further define "cells," it refers to the "small enclosed openings or spaces" of the urinal screen.  This plain meaning is consistent with the other language of the claims, the specification, and the ordinary meaning of "cell."

First, the overall language of the claims makes clear "cells" are the openings of the urinal screen.  Claim 19 of the '098 patent is directed to a "urinal screen" having "interconnected cells at least partially defined by a plurality of braces that intersect at corners." Per the specification, the braces define the sides of the openings of the urinal screen.  *See, e.g.*, Ex. 1 at 4:63-65. According to claim 19, the plurality of cells includes a "plurality of perimeter cells" and a "plurality of interior cells."  The claim further specifies that the plurality of interior cells includes first, second, and third cells with braces positioned between them. An example of a structure

resulting from the claim language is depicted below with reference to the preferred embodiment of the patent:



*Id.* at Fig. 3 (annotations added).

The independent claims of the '924 patent (claims 1, 21, and 28) each recite "a plurality of interconnected cells that form a tessellation of openings."  These claims further specify that "three or more braces" at least partially define the majority of the openings.

The specification explicitly uses the term "cell" as a type or example of an "opening."

> As illustrated in FIGS. 2 and 3 [reproduced below], one or more of the *openings 18 (e.g., cells)* can have a perimeter which includes a plurality of sides (e.g., braces) **42** and corners **46**. In some cases, all or a portion of the frame **14** forms a tessellation of openings **18** wherein a plurality of the sides **42** of the openings **18** are shared between two or more openings **18**. In some embodiments, each of the openings **18** shares at least one side and at least one corner with another opening.

Ex. 1 at 4:63-5:3 (emphasis added).



FIG. 2                    FIG. 3

*Id.* at Figs. 1 and 2.

The patent's use of the term "cells" is also consistent with the definition of "cell" in dictionaries.  For example, Webster's New College Dictionary defines "cell" as "a small enclosed cavity or space, as in a honeycomb."  Ex. 5; *see also* Ex. 8 (defining "cell" as "(MathSci) Small-volume unit in a mathematical coordinate system"); Ex. 7 (defining "cell" as "any small compartment: *the cells of a honeycomb*").

In sum, from the overall context of the claims, the specification, and the ordinary dictionary definition, "cells" is used consistent with its plain and ordinary meaning.  The Court need not construe "cells" for the jury because its plain meaning would be readily understood.  If the Court were to further elaborate, however, the term is appropriately construed as the "small enclosed spaces or openings" of the claimed urinal screen.

Defendant does not offer a construction of "cells."  Instead, Defendant alleges the term is indefinite.  This is an invalidity argument on which Defendant bears a clear and convincing evidence burden of proof.  *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011) (invalidity

-11-

defenses generally must be proven by clear and convincing evidence); *Takeda Pharm. Co. Ltd. v. Zydus Pharm. USA, Inc.*, 743 F.3d 1359, 1366 (Fed. Cir. 2014) (invalidity for indefiniteness must be proven by clear and convincing evidence) (*citing* Microsoft Corp., 564 U.S. at 95).  To prevail, Defendant would need to show the patent claims that use the term "cells," when read in light of the specification, do not inform a person of ordinary skill in the art of the scope of the claimed invention with "reasonable certainty."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).  Defendant cannot meet this burden.

During the exchange of positions leading up to claim construction briefing, Defendant provided a declaration from a retained witness, Mr. Fred Smith, an engineer who provides testimony in numerous court cases.  Ex. 14.  Mr. Smith opined the term "cells" was indefinite. *Id.* at ¶ 53.  Based on that declaration, it appears Defendant's invalidity argument is mainly premised on the specification's use of the word "cell" as part of the two word term "solid cell." *See id.* at ¶¶ 44-49; Ex. 1 at 5:10-32.  But it is the claims that define the invention of a patent. And the claims and specification make clear that "cells" standing alone, such as used in the claims, has a different meaning than "solid cell."

The two-word term "solid cell" is a coined term and does not mean that "cells" standing alone, as used in the claims, refers to something other than openings.  "Solid cell" is used in the specification to refer to a solid portion of the urinal screen that can be used to provide a surface for visual features, to increase the amount of fragrance associated with the urinal screen, or to facilitate removal of the urinal screen from the mold.   Ex. 1 at 5:10-32.  A person of ordinary skill would know that the inventors acted as their own lexicographer in using this coined term and defined "solid cell" separately and distinctly from the term "cell" when used by itself.  *See AIA Eng'g Ltd. v. Maggotteaux Int'l S/A*, 657 F.3d 1264, 1276 (Fed. Cir. 2011) (holding that

patentee acted as his own lexicographer to construe the term "solid solution" as synonymous with "ceramic composite" to avoid an "absurdity" that would result in a "contradiction in terms").

A person of ordinary skill would understand, with reasonable certainty, that the term "cells" is used in the patent claims consistent with its plain and ordinary meaning.  To further explain this and counter Defendant's proffered expert report, Fresh Products has also submitted the testimony of an expert, Dr. Randy Hurd, who rebuts Mr. Smith's assertions regarding the alleged indefiniteness of the Fresh Products' patent claims.  *See* Ex. 9 at ¶¶ 23-47.  Dr. Hurd, an expert with experience studying splash mechanics in varying contexts, including urinals, explains his opinion that the claims of the patents are sufficiently definite to one of skill in the art in view of, *inter alia*, 1) the specification's use the term "cell" as a type of opening; 2) a proper consideration of the claims as whole, including their use of "cells" consistent with the specification's use of "cell" as a type of opening; and 3) "solid cell" being used to refer to a concept the inventors defined separately and distinctly in the specification as compared to when "cells" is used standing alone in the claims.  *See id.*

**D.**    **"tessellation"/"tessellation of openings" ('098 patent - claim 20; '924 patent - claims 1, 8, 9, 12, 13, 21 and 28)**

| Fresh Products' Construction | Defendant's Construction |
| --- | --- |
| An arrangement of openings closely fitted together. | Tessellation: a pattern capable of covering of an infinite geometric plane without gaps or overlaps by one or a few repeating congruent plane figures<br>Otherwise, indefinite.<br><br>Tessellation of openings: a pattern of openings comprising one or a few repeating shapes capable of covering of an infinite geometric plane without gaps or overlaps<br>Otherwise, indefinite. |

"Tessellation" is used in the patents to refer to the closely fitted arrangement of the recited openings or cells of the urinal screen.  Independent claims 1, 21, and 28 of the '924 patent are directed to a urinal screen having "a plurality of interconnected cells that form a tessellation of openings."  Claim 20 of the '098 patent depends from Claim 19 and recites:  "The urinal screen of claim 19, wherein the plurality of interconnected cells form a tessellation."  Ex. 1 at 9:64-65.

The figures of the patent depict a preferred embodiment wherein the openings are in the shape of hexagons that are closely fit together and the openings share sides (formed by braces) with adjacent openings.  The specification describes the tessellation arrangement as follows:

> As illustrated in FIGS. 2 and 3 [reproduced below], one or more of the openings **18** (e.g., cells) can have a perimeter which includes a plurality of sides (e.g., braces) **42** and corners **46**. In some cases, all or a portion of *the frame **14** forms a tessellation of openings **18** wherein a plurality of the sides **42** of the openings **18** are shared between two or more openings **18***. In some embodiments, each of the openings **18** shares at least one side and at least one corner with another opening.

Ex. 1 at 4:63-5:3 (emphasis added).



FIG. 2                          FIG. 3

-14-

*Id.* at Figs. 2 and 3.

The patents use of "tessellation" is consistent with the plain and ordinary meaning of word.  *See, e.g.,* Ex. 10 ("An arrangement of shapes closely fitted together, especially of polygons in a repeated pattern without gaps or overlapping"); Ex. 11 ("1: MOSAIC; esp : a covering of an infinite geometric plane without gaps or overlaps by a congruent plane figures of one type or a few types"); and Ex. 12 (defining "tessellate" as "to lay out, inlay, or pave in a mosaic pattern or small, square blocks—*adj.* arranged in a mosaic pattern; tessellated").

Defendant's proposed construction is generally in line with the plain meaning but suffers several problems making it unsuitable.  First, Defendant proposes to limit the tessellation to only "*one or a few* repeating congruent plane figures."  This is not consistent with the specification, which provides the openings can have various shapes:

> The openings 18 can have various shapes, including, but not limited to, polygons (e.g., triangles, rectangles, pentagons, hexagons, etc.), ellipses, and/or some combination thereof. In some embodiments, each of the openings 18 has a substantially identical shape.  In some embodiments, one or more of the openings 18 has a different shape from one or more of the other openings.

Ex. 1 at 4:35-41.

Second, Defendant's proposed construction is overly abstract and more suitable for a geometry class rather than adapted to the context of the patents.  Defendant's construction refers to abstract "figures" that include openings, whereas the patents specify that it is the actual openings or cells that form the tessellation.  Further, Defendant's construction refers to an "infinite geometric plane," whereas the patent claims are directed to a physical object (urinal screen) that necessarily has a boundary.

In sum, Fresh Products submits that its proposed construction is consistent with the plain meaning of the claim language as informed by the patent specification and would be most understandable and useful to the jury.

-15-

E.    **"wherein at least some of the plurality of interconnected cells comprise a polygonal shape" ('098 patent – claim 27)**

| Fresh Products' Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning. | Indefinite. |

This is another instance where Defendant has proposed a term for construction only to make an invalidity argument.  Dependent claim 27 reads as follows:  "The urinal screen of claim 19, wherein at least some of the plurality of interconnected cells comprise a polygonal shape." Ex. 1 at 10:21-23.  Based on the Smith Declaration, Defendant apparently intends to argue claim 27 is invalid for indefiniteness on a second ground, i.e., in addition to the alleged indefiniteness of "cells."  This second indefiniteness argument is also groundless.

Claim 27, which is presumed valid, is straightforward, plain English and would be readily understood by one of skill in the art.   *See* Ex. 9 at ¶¶ 48-55.  The specification provides that individual cells of the urinal screen can be "various shapes, including, but not limited to, polygons, (e.g. triangles, rectangles, pentagons, hexagons, etc.) . . . ." Ex. 1 at 4:35-38. Independent claim 19 recites a plurality of interconnected cells, but does not specify a particular shape of the cells.  Dependent claim 27 simply requires that "at least some of the plurality of interconnected cells comprise a polygonal shape."  There is nothing unclear about the claim language – it simply narrows claim 19 to require some of the plurality of cells to have a polygonal shape.

Defendant attempts to manufacture ambiguity and apparently intends to argue one of skill would not know whether claim 27 means individual cells have a polygonal shape or non-polygonal cells somehow ***collectively*** form a polygonal shape.   To make the argument, Defendant's witness Mr. Smith offered the figure below where he drew lines that pass through

the center of various circular openings shown on a circular object to draw his own "polygonal shapes."



Example 6 - Non-polygonal cell
with some of the interconnected
cells are in a polygonal overall
shape

This contrived example used to manufacture an alleged ambiguity has no relation to the Fresh Products patents.  In the context of the claims and the specification, a person of ordinary skill would readily understand Claim 27 means at least some *individual* cells of the plurality of cells have a polygonal shape.  Ex. 9 at ¶ 50.  Claim 27, which is presumed valid, is not indefinite.

**F.**     **"post" ('098 patent – claims 19, 32, 38, 47, and 51; '924 patent – claims 1, 5, 7, 16, 18, 21, and 28)**

| Fresh Products' Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning. | A protrusion. |
| If further defined, an elongate element that serves as a support. | Otherwise, indefinite. |

The claims all recite "posts."  The posts on one side of the urinal screen support the frame of the urinal screen above the surface of the urinal and the posts on the other side of the urinal screen extend up toward the user.  For example, claim 19 of the '098 patent recites "a plurality of first posts each connected to a brace or corner of the frame and extending away from the first face of the frame" and an identical clause changing "first" to "second."  Ex. 1 at 9:58-60.  Claim

1 of the '924 patent recites "a plurality of posts to deflect urine when the reversible urinal screen is placed upon a urinal surface, the plurality of posts connected to the plurality of braces and positioned such that" a first set of posts support the braces of the urinal screen above the urinal surface and a second set of posts are positioned above the braces.  Ex. 2 at 8:6-9.

Fresh Products construction of "posts" as "an elongate element that serves as a support" is consistent with the specification's depiction of the posts, *see, e.g.*, Ex. 1, Fig. 5, and the function of the posts to deflect urine and support the frame of the urinal screen above the surface of the urinal.  *Id.* at 6:58-7:19.

Fresh Products construction of "posts" is also consistent with the the ordinary meaning of "post" as reflected in dictionaries.  *See, e.g.*, Ex. 11 ("a piece (as of timber or metal) fixed firmly in an upright position esp. as a stay or support: PILLAR, COLUMN"); Ex. 13 ("*n.* a strong, usually square or cylindrical piece of wood, metal etc., fixed or meant to be fixed in an upright position, and serving as a support"); and Ex. 12 ("a piece of wood, metal, etc., usually long and square or cylindrical, set upright to support a building, sign, fence, etc."; "anything like this in shape or purpose").  While the dictionaries generally refer to posts in the context of construction, such as a wooden or metal post that would support a beam, a more generic "elongate element" is appropriate in the context of the urinal screen here.

Defendant's proposed "construction" simply changes "post" to "protrusion."  It is not "claim construction" to simply change one word, which the inventors chose to describe their claimed invention, to another, which the inventors did not choose.  And further, "protrusion" has a quite different connotation from "post" and is not a word used to refer to an upright support structure such as the "posts" described in the patents.

In sum, Fresh Products submits "posts" need not be construed and the jury could readily apply the plain and ordinary meaning.  If the Court does further define "posts" it should be construed as "an elongate element that serves as a support."

**G.**    **"along a perimeter of at least some of the plurality of openings, so as to surround the at least some of the plurality of openings" ('098 patent – claim 38)**

| Fresh Products' Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning. | Indefinite. |

This is another instance where Defendant has proposed a term for claim construction only to make an invalidity argument.  Claim 38 of the '098 patent is directed to a urinal screen having a frame with a first face and a second face and a plurality of openings extending through the frame between the first face and the second face. Ex. 1 at 10:65-11:2.  "[A] plurality of first posts extend[] from the first face of the frame and a plurality of second posts extend[] from the second face of the frame." *Id.* at 11:3-6.

The claim further specifies that "a number of said plurality of first posts and a number of said plurality of second posts are positioned *along a perimeter of at least some of the plurality of openings, so as to surround the at least some of the plurality of openings*." *Id.* at 11:15-19 (emphasis added).   Defendant contends the emphasized portion of this clause renders the claim indefinite.  Not so.

The language of the claim is straightforward.   A person of ordinary skill would understand the plain and ordinary meaning of this term encompasses posts positioned along a perimeter of at least some of the openings, so as to surround at least some of the openings. *See* Ex. 9 at ¶ 57.  This is consistent with the specification, which shows posts extending from the mid-points of the sides of the openings (Fig. 4) or the corners where the sides of the openings meet (Fig. 3) so as to surround the openings. Ex. 1 at 5:33-46.

In the context of the claims and the specification, a person of ordinary skill in the art would readily understand the meaning of claim 38.  Claim 38, which is presumed valid, is not indefinite.

**H.    "reversible" ('924 patent – all asserted claims)**

| Fresh Products' Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning. | Plain and ordinary meaning. |
| If further defined, adapted to be reversed such that either side is usable as the top (e.g. side facing a user) or bottom (e.g. side facing urinal surface). | If further defined, capable of being reversed. |

The claims of the '924 patent are all directed to a "reversible urinal screen."  The parties agree "reversible' is used in the patent consistent with its plain and ordinary meaning, but have a slight disagreement regarding what that plain and ordinary meaning is.

A urinal screen is a relatively small object and therefore is inherently capable of being turned over or reversed.  In the context of the '924 patent claims, reversible encompasses more than just being capable of being turned over, but also adapted to be used in either orientation. Fresh Products captures that concept in its proposed construction "adapted to be reversed such that either side is usable as the top (e.g. side facing a user) or bottom (e.g. side facing urinal surface)."

Fresh Products' proposed construction is consistent with the claim language as whole. For example, each independent claim of the '924 patent (claims 1, 21 and 28) refers to the urinal screen deflecting urine with the urinal screen placed upon the urinal surface in both a first and second orientation.  Ex. 2 at 5:6-21, 9:44-10:6, 10:59-11:20.  Thus, to the extant the Court elaborates on the plain and ordinary meaning of "reversible," Fresh Products submits its proposed construction should be adopted.

I.      **"at least some of the plurality of braces comprise contoured upper and lower surfaces" ('924 patent– claims 1 and 21)**

| Fresh Products' Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning. <br><br> If further defined, at least some of the plurality of braces have non-planar upper and lower surfaces. | Indefinite. |

Defendant again proposed this term for construction only to make an invalidity argument. Claims 1 and 21 of the '924 patent include the clause "wherein at least some of the plurality of braces comprise contoured upper and lower surfaces to deflect urine when the reversible urinal screen is placed upon the urinal surface in either of the first or second orientations."  Ex. 2 at 8:22-26 and 10:7-11, respectively.

Defendant appears to make two arguments for indefiniteness:  (1) the term could encompass a single brace, or it could require multiple braces; and (2) the term may or may not encompass a first brace having a contoured upper surface, and a second brace having a contoured lower surface. Ex. 14 at ¶ 66.

First, the term "at least some of a plurality" means "at least one." A "plurality" means "at least two," and therefore "some of a plurality" would necessarily encompass some quantum less than the minimum amount required to form a plurality. Therefore, the term here cannot require that more than one brace comprise contoured upper and lower surfaces.

Second, a person of ordinary skill would not interpret the term "upper and lower surfaces" to refer to the upper surface of one thing and the lower surface of another.  One of skill would understand that such a phrase refers to an individual component unless the context suggests otherwise.  The context does not suggest a different reading here.  See Ex. 9  at ¶ 74.

Furthermore, the specification discloses an embodiment that includes individual braces having upper and lower concave surfaces. *See* Ex. 1 at 5:4-9 ("In some cases, the sides 42 and/or corners 46 of the openings 18 have contoured (e.g., convex) upper and lower surfaces").

In sum, claims 1 and 21 are not indefinite and the term "at least some of the plurality of braces comprise contoured upper and lower surfaces" should be accorded its plain and ordinary meaning.

## IV.  CONCLUSION

For the foregoing reasons, Fresh Products respectfully requests the Court adopt its proposed constructions for the claim terms at issue.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: November 5, 2013

  s/ *Joseph F. Jennings*

Joseph F. Jennings (*pro hac vice*)
Adam R. Aquino (*pro hac vice*)
2040 Main Street, Fourteenth Floor
Irvine, California 92614
(949) 760-0404

EASTMAN & SMITH LTD.

Carrie L. Urrutia (0073874)
Emilie K. Vassar (0084076)
One SeaGate, 24th Floor
P.O. Box 10032
Toledo, OH 43699-0032
Telephone: (419) 241-6000
Fax: (419) 247-1777
Email: CLUrrutia@eastmansmith.com
Email: EKVassar@eastmansmith.com

Attorneys for Plaintiff
FRESH PRODUCTS, INC.

## **CERTIFICATE OF SERVICE**

A copy of the foregoing has been electronically filed on August 4, 2020. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and parties may access this filing through the Court's system.

/s/ Joseph F. Jennings
Attorney for Plaintiff
Fresh Products, Inc.

33055495

-1-