# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

FRESH PRODUCTS, INC.,

        Plaintiff,

   v.

IMPACT PRODUCTS, LLC,

        Defendant.

Case No. 3:19-cv-02109-JZ

Hon. Jack Zouhary

## FRESH PRODUCTS, INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

**Page No.**

I.     RESPONSIVE ARGUMENT........................................................................................ 1

    A.    "urinal screen" (all asserted claims) ..................................................... 1

    B.    "face" ('098 patent – claim 19)............................................................. 3

    C.    "cells" ('098 patent - claims 19, 20, and 27; '924 patent - claims 1, 5, 7, 21 and 28) ....................................................................................... 5

    D.    "tessellation"/"tessellation of openings" ('098 patent - claim 20; '924 patent - claims 1, 8, 9, 12, 13, 21 and 28)............................................. 10

    E.    "wherein at least some of the plurality of interconnected cells comprise a polygonal shape" ('098 patent – claim 27)...................................... 111

    F.    "post" ('098 patent – claims 19, 32, 38, 47, and 51; '924 patent – claims 1, 5, 7, 16, 18, 21, and 28) ......................................................... 12

    G.    "along a perimeter of at least some of the plurality of openings, so as to surround the at least some of the plurality of openings" ('098 patent – claim 38)................................................................... 14

    H.    "reversible" ('924 patent – all asserted claims) ................................... 15

    I.    "at least some of the plurality of braces comprise contoured upper and lower surfaces" ('924 patent– claims 1 and 21)................................... 16

II.    CONCLUSION.................................................................................................. 17

# TABLE OF AUTHORITIES

**Page No(s).**

*Acumed LLC v. Stryker Corp.*,
  483 F.3d 800 (Fed. Cir. 2007)...................................................................6

*AIA Eng'g Ltd. v. Maggotteaux Int'l S/A*,
  657 F.3d 1264 (Fed. Cir. 2011)................................................................9

*Dow Chem. Co. v. Nova Chems. Corp.*,
  809 F.3d 1223 (Fed. Cir. 2015)................................................................6

*Hoechst Celanese Corp. v. BP Chems. Ltd.*,
  78 F.3d 1575 (Fed. Cir. 1996)..................................................................3

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
  474 F.3d 1323 (Fed. Cir. 2007).................................................................2

*Medrad v. MRI Devices Corp.*,
  401 F.3d 1313 (Fed. Cir. 2005)...............................................................12

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898 (2014)..................................................................................5

*Pause Tech., LLC v. TiVo Inc.*,
  419 F.3d 1326 (Fed. Cir. 2005).................................................................6

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005).................................................................3

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996)..................................................................3

# OTHER AUTHORITIES

35 U.S.C. §112.............................................................................................6

35 U.S.C. §282.............................................................................................5

M.P.E.P. §2173 .......................................................................................5, 6

# I.  RESPONSIVE ARGUMENT

## A.    "urinal screen" (all asserted claims)

| Fresh Products' Construction | Impact Products' Construction |
|---|---|
| Plain and ordinary meaning.<br><br>If further defined, a screen used in a urinal and through which urine passes. | A partition fit to deter objects from entering a urinal drain hole.<br><br>For '098 – claim 19 and dependents other than claim 22<br><br>Preamble term. Not limiting. |

The parties dispute several issues: (1) whether a "urinal screen" deters objects from entering the urinal drain; (2) whether a "urinal screen" is a screen *used* in a urinal such that urine passes through it or is merely a partition *fit* for use in a urinal; and (3) whether "urinal screen" is even a limitation at all for claim 19 of the '098 patent and certain dependent claims, *i.e.* whether these claims encompass something that is not used in a urinal.

Fresh Products submits the term "urinal screen" is used in accord with its plain meaning and would be readily understood by the jury.  This obviates the need to address issues (1) and (2).  If "urinal screen" were further defined, however, the issues are easily resolved.

First, deterring objects from passing through the urinal screen into the drain is implied from the name "urinal *screen.*"  For example, a window screen deters insects from entering a house.  Thus, Fresh Products proposed using "screen" in the definition if the term were further defined.  This should sufficiently address the issue. However, Fresh Products sees no harm to a construction that refers to deterring objects explicitly.  But changing "screen" to "partition" as Defendant proposes would be unhelpful because it changes a well understood specific term to a less common vague term.  And "partition" is not supported by the patent specification, which consistently uses screen.

As to the second issue, whether a "urinal screen" is a screen *used* in a urinal such that urine passes through it or it is merely a partition *fit* for use in a urinal, Defendant appears to use this as another way to interpret the claims to cover something that is not a urinal screen.   A urinal screen is something used in a urinal, rather than another type of object that would merely fit in a urinal. Interestingly, the prior art patents Defendant cites all disclose devices used in a urinal.  *See* Defendant's Opening Brief (Dkt. 62) ("Def. Br.") at 4.  Further, as described in Fresh Products' opening brief, the applicant distinguished the claimed invention from a cited prior art reference during prosecution because it was not a urinal screen.  Fresh Products' Opening Brief (Dkt. 63) ("FP Br.") at 6.  There was no discussion of the additional issue of whether such device could fit into a urinal even if it was not a urinal screen.  *See* Ex. 3 at 18-19.[1]

As to the third issue, whether "urinal screen" is a limitation at all, Defendant fails to address the prosecution history.  As explained in Fresh Products' opening brief, during prosecution of the '098 patent at issue here, Fresh Products relied on "urinal screen" to distinguish the claimed invention from the prior art.  FP Br. at 5-6.   An applicant who relies upon a preamble term to distinguish the claimed invention from the prior art indicates the preamble is used to define the claimed invention and it should therefore be treated as a claim limitation.  *See, e.g., MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1328 (Fed. Cir. 2007).

In sum, "urinal screen" is used in accord with its plain meaning and would be readily understood by the jury.  The Court need not further define it.  If "urinal screen" were further defined, however, it is simply "a screen used in a urinal and through which urine passes."  Adding "while also deterring the passage of objects" would also be correct and is implicitly in "screen."

---

[1] Numbered exhibits are attached to the Declaration of Joseph F. Jennings (Dkt. 63-1) and lettered exhibits are attached to Defendant's opening claim construction brief (Dkt. 62).

And finally, "urinal screen" is a limitation of the claims, including claim 19 of the '098 patent and the claims that depend therefrom.

**B.       "face" ('098 patent – claim 19)**

| Fresh Products' Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning.<br><br>If further defined, a main side of a thing. | Planar surface of a solid. |

Defendant blatantly seeks to read a limitation into claim 19 of the '098 patent and require that the recited first and second face be "planar." The Federal Circuit has repeatedly cautioned against reading limitations from the patent specification into the claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005). And here, Defendant's proposed limitation is not even present in the preferred embodiment of the specification. Defendant's proposed construction is erroneous for numerous reasons.

The proposed construction initially should be rejected because it would not even encompass the preferred embodiment. The frame of the patented urinal screen is made up of braces that define openings. The patent specification explains that the braces of a preferred embodiment have contoured surfaces. *See* Ex. 1 at 5:4-9, Figs. 1-5. Thus, the surfaces of the top and bottom face in the preferred embodiment are not planar. The frame of the preferred embodiment is like a waffle if the depressions of the waffle went all the way through the waffle. Any construction that excludes the preferred embodiment, such as proposed by Defendant here, is "rarely, if ever, correct." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996); *see also Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1581 (Fed. Cir. 1996) ("[I]t is unlikely that an inventor would define the invention in a way that excluded the preferred embodiment, or that persons of skill in this field would read the specification in such a way.").

Defendant argues, without citation to anything, that "[e]very figure similarly shows the first and second faces as planar faces." Def. Br. at 6. That is not true. The figures, at least as best a two-dimensional drawing can show a three-dimensional object, show the preferred embodiment with braces having contoured surfaces. Figure 1 shows a perspective view and plainly shows upper surfaces of the braces are not planar. Figures 2 through 4 show top views of the urinal screen and the braces include lines showing different elevations, i.e., a contour, of the braces.

Figure 5 also shows the surfaces of the frame are not planar, although Defendant attempts to show otherwise. Defendant draws straight lines on the side view of Figure 5 and contends this illustrates the first and second faces are planar. Def. Br. at 7. But Defendant's added straight lines do not make it so. Although not simple to make out in a side view, the actual Figure 5 shows the contoured upper and lower surfaces of the braces that make up the frame. A blown-up portion is shown below.



Ex. 1, FIG. 5 (annotated).

-4-

Defendant attempts to justify reading "planar" into the claims by referring to a statement in the patent specification that discusses the proportion of the frame that is solid versus open in an embodiment of the invention.  Def. Br. at 6 (citing specification at '098 patent at 3:21-26).  In this description, the specification defines a reference plane: "a first plane face of the frame is a plane passing through the frame when the frame is set on a flat horizontal surface."  Ex. 1 at 3:24-26.  This is simply a way to provide a reference for how one would measure the portion of the screen that is solid versus open.  Moreover, the specification explicitly states that the description is in reference to "some configurations."  *Id.* at 3:21.  It is not limiting the invention as claimed.

In sum, "face" need not be construed, and the jury could readily apply the plain and ordinary meaning.  If the Court further defines "face," it should be construed as "a main side of a thing."  Reading "planar" into the claims as Defendant proposes would be error.

**C.  "cells" ('098 patent - claims 19, 20, and 27; '924 patent - claims 1, 5, 7, 21 and 28)**

| Fresh Products' Construction | Defendant's Construction |
| --- | --- |
| Plain and ordinary meaning.<br><br>If further defined, small enclosed openings or spaces. | Indefinite. |

The '098 patent was examined and issued by the PTO and therefore enjoys a presumption of validity.  35 U.S.C. §282.  That examination included an assessment of whether the claims are sufficiently definite.  *See, e.g.*, M.P.E.P. §2173.

A claim may be found invalid for indefiniteness only "if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).  Therefore, definiteness (1) is evaluated from the

perspective of one of ordinary skill in the art, (2) requires a determination of whether one of ordinary skill in the art would understand the scope of the claim when it is read in light of the specification, and (3) is evaluated in light of the knowledge extant in the art at the time the patent application was filed. *Dow Chem. Co. v. Nova Chems. Corp.*, 809 F.3d 1223, 1225 (Fed. Cir. 2015) (citing *Nautilus*, 572 U.S. at 908.).

Defendant's indefiniteness defense based on "cell" should be rejected. The patents use the term "cell" as an opening consistent with its plain and ordinary meaning. In construing claims, one starts with the language of the claims. *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 805 (Fed. Cir. 2007), *citing Phillips*, 415 F.3d at 1312 (*en banc*). And the claim language is interpreted in view of the claim as a whole. *Pause Tech., LLC v. TiVo Inc.*, 419 F.3d 1326, 1331 (Fed. Cir. 2005); *see also* M.P.E.P. §2173.02.II ("In reviewing a claim for compliance with 35 U.S.C. §112(b), second paragraph, [the definiteness requirement], the examiner must consider the claim as a whole ….").

Claim 19 of the '098 patent is directed to a "urinal screen" having "interconnected cells at least partially defined by a plurality of braces that intersect at corners." Ex. 1 at 9:35-36. Per the specification, the braces define the sides of the openings of the urinal screen. *See id.* at 4:63-65. There is no confusion from the claim language that the cells, which are defined by braces that intersect at corners, are openings and not solid portions.[2]

Likewise, the claims of the '924 patent are crystal clear, each reciting "a plurality of interconnected cells that form a tessellation of openings." Ex. 2, claims 1, 21 and 28. These claims further specify that "three or more braces" at least partially define the majority of the openings.

---

[2] The parties agree "braces" are to be construed a "a rod or strut."

Plainly, the claimed interconnected cells are not solid.  *Id.*  Defendant makes no argument at all regarding the claims of the '924 patent.

Defendant argues claim 19 gives no guidance whether the claimed "cells" are openings or solid portions, but Defendant fails to address the actual language of the claims as a whole. Defendant seems to acknowledge the interior cells of claim 19 are openings per the language of the claims (Def. Br. at 9) but contends one of skill would not know whether the claimed "perimeter cells" were solid rather than openings.  But the claimed perimeter cells, like the interior cells, are also "interconnected cells at least partially defined by a plurality of braces that intersect at corners." Interconnected cells defined by braces intersecting at corners must be openings as shown in the specification.  Defendant makes no argument how interconnected cells defined by braces that intersect at corners could be solid.

Consistent with the claims, the specification explicitly uses the term "cell" as a type or example of an "opening."  Ex. 1 at 4:63-65 ("one or more of the *openings 18 (e.g., cells)* can have a perimeter which includes a plurality of sides (e.g., braces) 42 and corners 46.") (emphasis added).  Defendant glosses over this usage in the specification.  Nowhere in the specification does the patent use the term "cell" standing alone to refer to anything other than an opening.

Defendant actually starts its indefiniteness argument by citing, not the claims or even the Fresh Products patents, but rather a handbook on plastic materials (Ex. L) and a different patent (Ex. K), which, unlike the Fresh Products patents, discloses a urinal filter made of foam.  These documents use the term "cell" in the context of material properties, e.g., open or closed cell foams. Def. Br. at 7.  But the cited definition and the other patent have nothing to do with the Fresh Products patents where "cell" is used to describe the structure of a thing (a urinal screen), not the

-7-

properties of the material used to form the thing.  One of skill therefore would not view a definition directed to material properties as helpful in the context of the patent.  Ex. 9 at ¶ 41.

Defendant acknowledges the plain and ordinary meaning of "cell" as an opening or space, but then argues "cells" in the Fresh Products patents "may refer to an enclosed opening or a solid cell lacking an opening."  Def. Br. at 8.  Defendant does not even attempt to justify the position in light of the actual claim language.

Defendant argues against the plain and ordinary meaning based on the term "solid cell," which appears in a single paragraph in the specification but *not* the claims.  The two-word term "solid cell" is used in the specification to refer to a solid portion of the urinal screen that can be used to provide a surface for visual features, to increase the amount of fragrance associated with the urinal screen, or to facilitate removal of the urinal screen from the mold.  Ex. 1 at 5:10-32. And none of the claims of the two Fresh Products patents uses the term "solid cells" as a subset of cells.

The "solid cell" term is used in the specification as a coined term.  One reading the claims and specification as a whole would not conclude it somehow means "cells" standing alone, as used in the claims, refers to something other than openings.  Ex. 9 at ¶ 36.  A person of ordinary skill would know that the inventors acted as their own lexicographer in using this coined term and defined "solid cell" separately and distinctly from "cell" when used by itself.  *Id.*

Defendant makes various arguments the patentee was not adopting its own definition for "solid cell."  The arguments fall flat for numerous reasons.  First, Defendant acknowledges that the plain meaning for "cell' is an opening.  Thus, "solid cell" is a contradictory term, which certainly shows the applicants were adopting a meaning for that two-word term different from the plain meaning.  In arguing against lexicography, Defendant suggests the definition must be

explicit.  Not true.  For a patentee to use lexicography, "the specification need not reveal such a definition explicitly, but may do so by implication." *AIA Eng'g Ltd. v. Maggotteaux Int'l S/A*, 657 F.3d 1264, 1276 (Fed. Cir. 2011) (citation omitted) (holding that patentee acted as lexicographer to construe the term "solid solution" as synonymous with "ceramic composite" to avoid an "absurdity" that would result in a "contradiction in terms").

Finally, Defendant refers to the prosecution history for support.  Def. Br. at 11-12.  But the prosecution history does nothing to suggest the claimed cells are not openings.  The prior art Muderlak reference was described as not having "interconnected cells."[3]  Defendant disputes that Muderlak fails to show "interconnected cells."  In this regard, the openings in Muderlak are certainly more spaced than what is depicted in the Fresh Products patents.  Whether they are interconnected or not would be a disputed issue of fact potentially addressed in a prior art challenge, but that has no bearing on whether the claimed interconnected cells are openings or not.

In sum, a person of ordinary skill would understand, with reasonable certainty, that the term "cells" is used in the patent claims consistent with its plain and ordinary meaning.  The relevant claims are not indefinite.  If "cells" is further defined, it should be construed as "small enclosed openings or spaces."

---

[3] Defendant erroneously states Muderlak was "argued as not cells" in its labelling of Muderlak's Figure 4.  Def. Br. at 11.

D.     **"tessellation"/"tessellation of openings" ('098 patent - claim 20; '924 patent - claims 1, 8, 9, 12, 13, 21 and 28)**

| Fresh Products' Construction | Defendant's Construction |
|---|---|
| An arrangement of openings closely fitted together. | Tessellation: a pattern capable of covering of an infinite geometric plane without gaps or overlaps by one or a few repeating congruent plane figures<br>Otherwise, indefinite.<br><br>Tessellation of openings: a pattern of openings comprising one or a few repeating shapes capable of covering of an infinite geometric plane without gaps or overlaps<br>Otherwise, indefinite. |

The parties generally agree the patents' use of "tessellation" is consistent with its plain and ordinary meaning, and it encompasses an arrangement of shapes closely fitted together.  Defendant proposes to limit the tessellation to using only "one or a few" shapes or figures.  This appears in some dictionaries, but not others.  The Court should not adopt this aspect of the construction because it is not consistent with the specification, which provides the openings can have various shapes and the shapes of some openings can be different from others:

> The openings 18 can have various shapes, including, but not limited to, polygons (e.g., triangles, rectangles, pentagons, hexagons, etc.), ellipses, and/or some combination thereof. In some embodiments, each of the openings 18 has a substantially identical shape.  In some embodiments, one or more of the openings 18 has a different shape from one or more of the other openings.

Ex. 1 at 4:35-41.

Second, Defendant faults Fresh Products for referring to openings in its proposed constructions.  But this puts the construction in the proper context for the patents.  *See, e.g.*, *id.*, claim 20 ('plurality of interconnected cells [as recited in claim 19] form a tessellation") and Ex. 2, claims 1, 21, and 28 ("a plurality of interconnected cells that form a tessellation of openings").

Defendant's alternative construction for "tessellation," referring to abstract "figures," fails to acknowledge it is the actual openings or cells, which are openings, that form the tessellation.

In sum, Fresh Products submits that its proposed construction is consistent with the plain meaning of the claim language as informed by the patent specification and would be most understandable and useful to the jury.

**E.    "wherein at least some of the plurality of interconnected cells comprise a polygonal shape" ('098 patent – claim 27)**

| Fresh Products' Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning. | Indefinite. |

The claim term, "wherein at least some of the plurality of interconnected cells comprise a polygonal shape," should be accorded its plain and ordinary meaning and does not render dependent claim 27 of the '098 patent indefinite.  Claim 27 depends from claim 19, which recites a plurality of interconnected cells.  Claim 19 does not specify a particular shape of the cells. Dependent claim 27 simply means that some of the plurality of interconnected cells comprise a polygonal shape."  There is nothing unclear about the claim language – it simply narrows claim 19 to require some of the plurality of cells to have a polygonal shape.

Defendant initially attempted to manufacture an ambiguity by drawing lines from the center of various openings and suggesting the claim may refer to the shape created by such lines. *See* Ex. A at ¶54 (Example 6).  But that interpretation would not be a limitation at all.  Such a shape, where the center point of each opening is connected to the center point of other openings, will *always* be a polygon.  Thus, claim 27 would add nothing to claim 19, i.e., it would not further narrow claim 19 in any way.

Defendants also draw a line around the entire urinal screen and suggest the patent may mean the "cells collectively form a polygonal shape."  Def. Br. at 16.  But the specification

-11-

describes this in relation to the shape of the urinal screen:  "In some embodiments, *the screen* 10 has a polygonal, elliptical, circular, or other overall shape."  Ex. 1 at 4:9-10 (emphasis added).  The specification never calls out a collection of some or all openings having a particular shape.  It simply refers to the shape of the screen.  When the patentee wanted to refer to the shape of the screen in the claims, they did so explicitly.  *See, e.g.*, Ex. 2, claim 22 ("the reversible urinal screen of Claim 21, where the reversible urinal screen comprises a generally circular shape."), claim 23 ("the reversible urinal screen of Claim 21, where the reversible urinal screen comprises a generally hexagonal shape.").

The alleged uncertainty Defendant contrives in attempt to make claim 27 indefinite is unreasonable and overly imaginative.  Defendant's indefiniteness argument should be rejected.

### F.  "post" ('098 patent – claims 19, 32, 38, 47, and 51; '924 patent – claims 1, 5, 7, 16, 18, 21, and 28)

| Fresh Products' Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning.<br><br>If further defined, an elongate element that serves as a support. | A protrusion.<br><br>Otherwise, indefinite. |

The specification uses "post" consistent with its plain and ordinary meaning.  Defendant notes that the specification contemplates posts of different sizes to support its construction as merely a "protrusion," which would encompass anything that "merely protru[des] from the face of the urinal screen." Def. Br. at 17.  But no one would consider a structure that protrudes, however slightly, as a "post."  The urinal screen posts described in the patents are plainly elongate elements consistent with the plain meaning of the term.

Defendant's appeal to non-suit patents is irrelevant and unpersuasive.  In *Medrad v. MRI Devices Corp.*, the Federal Circuit construed a claim term differently in one patent from a separate,

unrelated patent.  401 F.3d 1313 (Fed. Cir. 2005).  There, the Court reasoned that "the manner in which [a] term is used in [one] patent may dictate a definition that differs from the definition that would be given to the same term in a different patent with a different specification or prosecution history[,]" particularly when "involving different technology."  *Id.* at 1318.

Here, Defendant cites U.S. Patent No. 10,087,612 (the "'612 patent") to support a broad definition of "post."  Def. Br. at 18-19.  But that patent is irrelevant to what "post" means in the instant patents.  The '612 patent discloses a shield disposed *beneath* a urinal to prevent a user's clothes or shoes from being soiled.  Ex. V at Abstract.  The shield includes mats, which can be rolled up and supported by cantilevered "posts/bosses/protrusions 1004" (similar to a toilet paper holder) as shown below.  *Id*. at 9:13.



*Id.*, FIGS. 10A and 10B.

That posts, bosses, and protrusions could each work in the context of the '612 patent is not evidence that the terms are synonymous in all applications.  If anything, the '612 patent confirms that "posts" are different from "protrusions" because the two are disclosed as alternatives. Furthermore, the prosecution history of the '098 patent makes clear that the applicant viewed structures disposed "beneath and **<u>outside</u>** of a urinal" as "not analogous art to . . . the ['098 patent]." Ex. 3 at 19(emphasis in original).  Therefore, the '612 patent is not analogous to the patents at suit here, and a person of ordinary skill would not look to such art to interpret the asserted claims.

-13-

The term "post" is used extensively in the specification, claims, and prosecution history of the patents at suit, and such uses are consistent with its plain and ordinary meaning. There is no need to cherry-pick citations from obscure and irrelevant references to justify a broader construction of a well-understood term.

In sum, "post" should be accorded its plain and ordinary meaning.  If further defined, it should be construed as "an elongate element that serves as a support."

G.     **"along a perimeter of at least some of the plurality of openings, so as to surround the at least some of the plurality of openings" ('098 patent – claim 38)**

| Fresh Products' Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning. | Indefinite. |

Claim 38 of the '098 patent is directed to a urinal screen having a frame with a plurality of openings extending through the frame and posts extending from the first and second face of the frame.  Ex. 1 at 10:65-11:6.  The claim further specifies that "a number of said plurality of first posts and a number of said plurality of second posts are positioned *along a perimeter of at least some of the plurality of openings, so as to surround the at least some of the plurality of openings*." *Id.* at 11:15-19 (emphasis added).  Defendant contends the claim is indefinite because allegedly one of skill cannot tell if the highlighted clause means the posts surround a collection of openings but not any individual opening.  To make its point, Defendant alters Figure 4 and labels the altered Figure 4 as "posts surrounding the perimeter of collective openings."  Def. Br. at 20.  But that figure is not in the patent.  It is made up by Defendant.  And in any event the posts surround a plurality of individual openings in the altered Figure 4, so it is immaterial if the posts also surround new "collective openings" Defendant created.

Defendant critiques Fresh Products' expert report on the expert's reference to when the specification uses the singular "perimeter structure" vs. "perimeter structures."  But the alleged

contradictory usages are not contradictory at all.  Reading the full sentences rather than the snippets, it is clear the language is describing arrangements such as in Figure 4 where posts extend from the mid-points of each side of each opening and Figure 3 where posts extend from each corner where the sides of the openings meet. Ex. 1, 1:44-47 and 1:52-56.

Defendant also takes issue with the word "surround."  That is a straightforward, well understood word and entirely consistent with the figures of the specification. *See, e.g*., Ex. 1, FIG. 4 (posts at mid-point of each side of each opening) and FIG. 3 (posts at each corner where the sides of the openings meet).  Defendant attempts to create confusion where there is none by referring to another portion of the specification relating to solid or closed portions of the frame, rather than the positioning of the posts around the openings. Def. Br. at 21.  One of skill would plainly understand what it means for the posts to be positioned along a perimeter of at least some of the plurality of openings, so as to surround the at least some of the plurality of openings. *See* Ex. 9 at ¶¶ 56-69.

## H.    "reversible" ('924 patent – all asserted claims)

| Fresh Products' Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning. | Plain and ordinary meaning. |
| If further defined, adapted to be reversed such that either side is usable as the top (e.g., side facing a user) or bottom (e.g., side facing urinal surface). | If further defined, capable of being reversed. |

The parties agree "reversible" is used consistent with its plain and ordinary meaning, but have a fairly nuanced disagreement as to what that meaning is.  Defendant contends it is sufficient that something be merely "capable" of being reversed.  Yet any urinal screen, which is a relatively small object, is capable of being reversed or turned over.  But many urinal screens are designed for a single orientation with a recognized top and bottom.  For that reason, Fresh Products proposes

that if the Court further elaborates on the plain meaning, "reversible" should be construed to mean "adapted to be reversed such that either side is usable as the top (e.g., side facing a user) or bottom (e.g., side facing urinal surface)."  This concept of being adapted to be used in either orientation is consistent with the claim language as Fresh Products explained in its opening brief.  Specifically, each independent claim of the '924 patent (claims 1, 21 and 28) refers to the urinal screen deflecting urine with the urinal screen placed upon the urinal surface in both a first and second orientation. Ex. 2 at 5:6-21, 9:44-10:6, 10:59-11:20.  It is also consistent with how "reversible" is used to refer to other objects, e.g., a reversible jacket is one that is designed for wearing when it is turned inside out.  Virtually any jacket, however, could be turned inside out, yet not be designed to be worn in the inside-out orientation.

In sum, to the extent "reversible" is further defined, it should be construed as "adapted to be reversed such that either side is usable as the top (e.g., side facing a user) or bottom (e.g., side facing urinal surface)."

**I.**     **"at least some of the plurality of braces comprise contoured upper and lower surfaces" ('924 patent– claims 1 and 21)**

| Fresh Products' Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning. <br><br> If further defined, at least some of the plurality of braces have non-planar upper and lower surfaces. | Indefinite. |

Defendant attempts to manufacture another ambiguity to argue the clause "at least some of the plurality of braces comprise contoured upper and lower surfaces" renders claims 1 and 21 of the '924 patent invalid for indefiniteness.  Defendant first refers to the specification, which uses "and/or."  Def. Br. at 22, citing '098 patent at 5:4-6.  But the claims use only "and" - "braces

comprise contoured upper *and* lower surfaces."  Thus, the claim language requires the braces in question have a contoured upper and lower surface.  That the specification is broader is immaterial.

Defendant points out that Dr. Hurd's report inaccurately quoted the specification as using "and" like the claim, rather than "and/or."  Def. Br. at 24.  That oversight was immaterial.

The rest of the claim language also confirms there is no ambiguity in the claim language. The full clause recites "wherein at least some of the plurality of braces comprise contoured upper and lower surfaces to deflect urine when the reversible urinal screen is placed upon the urinal surface in either of the first or second orientations."  The contoured surfaces of the braces deflect urine "when the reversible urinal screen is placed upon the urinal surface *in either of the first or second orientations*."  Ex. 2 at 8:24-26 (emphasis added).  This is consistent with reading the claim as Fresh Products does - the braces have non-planar upper and lower surfaces.

Finally, Defendant faults Fresh Products' expert for "reading some of a plurality" to refer to one brace, as allegedly inconsistent with the plain meaning of "some."  Def. Br. at 23-24.  While Dr. Hurd's reading was consistent with reading "plurality" as two or more and "some" being something less than that, it is ultimately irrelevant.  Fresh Products proposes the term be used in accord with its plain and ordinary meaning.  Defendant merely contends the plain meaning of "some" is more than one.

## II.  CONCLUSION

For the foregoing reasons, Fresh Products respectfully requests the Court adopt its proposed constructions for the claim terms at issue and also reject Defendant's attempt to summarily invalidate various claims as indefinite.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  September 3, 2020

 s/ *Joseph F. Jennings*
Joseph F. Jennings (*pro hac vice*)
Adam R. Aquino (*pro hac vice*)
2040 Main Street, Fourteenth Floor
Irvine, California 92614
(949) 760-0404

EASTMAN & SMITH LTD.

Carrie L. Urrutia (0073874)
Emilie K. Vassar (0084076)
One SeaGate, 24th Floor
P.O. Box 10032
Toledo, OH 43699-0032
Telephone: (419) 241-6000
Fax: (419) 247-1777
Email: CLUrrutia@eastmansmith.com
Email: EKVassar@eastmansmith.com

Attorneys for Plaintiff
FRESH PRODUCTS, INC.

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing has been electronically filed on September 3, 2020. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and parties may access this filing through the Court's system.

/s/ *Joseph F. Jennings*
Attorney for Plaintiff
Fresh Products, Inc.

33435058

-1-