**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| FRESH PRODUCTS, INC., | Case No. 3:19-cv-02109-JZ |
| Plaintiff, | Hon. Jack Zouhary |
| v. | **Jury Trial Demanded** |
| IMPACT PRODUCTS, LLC, | |
| Defendants. | |

**DEFENDANT IMPACT PRODUCTS, LLC'S
<u>RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>**

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................ii-iv

A.    Urinal Screen .......................................................................................1

    1.  For claim 19, "urinal screen" is a preamble term, not a claim
        limitation … ................................................................................1

    2.  For claims where "urinal screen" appears in the body of the
        claim, Impact's proffered construction is correct … .........................3

B.    Face ......................................................................................................5

C.    Cells ....................................................................................................6

D.    "Tessellation" and "Tessellation of openings" ........................................16

E.    "[W]herein at least some of the plurality of interconnected cells
    comprise a polygonal shape" ................................................................18

F.    "Post" ..................................................................................................19

G.    "Reversible" .........................................................................................22

H.    "[A]long a perimeter of at least some of the plurality of openings,
    so as to surround the at least some of the plurality of openings" .............23

I.    "[A]t least some of the plurality of braces comprise contoured upper
    and lower surfaces……………………………………………………………..24

## TABLE OF AUTHORITIES

### *Cases*

*AIA Eng'g Ltd. v. Maggotteaux Int'l S/A*,
    657 F.3d 1264 (Fed. Cir. 2011)..............................................………14-16

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
    811 F.3d 1334 (Fed. Cir. 2016).........................................................20

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*,
    340 F.3d 1298 (Fed. Cir. 2003)...........................................................4

*Applied Med. Resources Corp. v. U.S. Surgical Corp.*,
    448 F.3d 1324 (Fed. Cir. 2006)....................................................9, 20

*Artic Cat v. GEP Power Products, Inc.*,
    919 F.3d 1320 (Fed. Cir. 2019)...........................................................4

*Astrazeneca AB v. Mutual Pharm. Co.*,
    384 F.3d 1333 (Fed. Cir. 2004)...........................................................6

*Bayer CropScience AG v. Dow AgroSciences LLC*,
    728 F.3d 1324 (Fed. Cir. 2013)....................................................10, 11

*Dealertrack, Inc. v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012)..........................................................10

*Edwards Lifesciences LLC v. Cook Inc.*,
    582 F.3d 1322 (Fed. Cir. 2009)..........................................................10

*ePlus, Inc. v. Lawson Software, Inc.*,
    700 F.3d 509 (Fed. Cir. 2012).............................................................7

*Georgetown Rail Equip. Co. v. Holland L.P.*,
    867 F.3d 1229 (Fed. Cir. 2017).............................................................3

*Innovative Display Techs. LLC v. Acer Inc.*,
    2:13-CV-522-JRG, 2014 WL 4230037 (E.D. Tex. Aug. 26, 2014) .........................12

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
    13-CV3-1668-LPS, 2016 WL 4363485 (D. Del. Aug. 12, 2016)..............................12

*Intellectual Ventures I LLC v. T-Mobile USA, Inc*.,
    902 F.3d 1372 (Fed. Cir. 2018)..................................................................................12

*Interval Licensing LLC v. AOL, Inc*.,
    766 F.3d 1364 (Fed. Cir. 2014) ...........................................................................10, 12

*Johnson Worldwide Ass. v. Zebco Corp.*,
    175 F.3d 985 (Fed. Cir. 1999)..................................................................................11

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996)..................................................................................................10

*Maytag Corp. v. Electrolux Home Prods., Inc.*,
    411 F. Supp. 2d 1008 (N.D. Iowa 2008).....................................................................4

*Medrad, Inc. v. MRI Devices Corp.*,
    401 F.3d 1313 (Fed. Cir. 2005)..................................................................................7

*Nautilus, Inc. v. Biosig Instruments, Inc.,*
    572 U.S. 898 (2014) …………………………………………………….............12, 13, 16

*Nite Glow Indus., Inc. v. Cent. Garden & Pet Co.*,
    No. 12-CV-4047-KSH, 2016 WL 1259969 (D.N.J. Mar. 30, 2016) ........................12

*Nystrom v. Trex Co.*,
    424 F.3d 1136 (Fed. Cir. 2005)................................................................................11

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
    521 F.3d 1351 (Fed. Cir. 2008)..................................................................................3

*Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc*.,
    429 F.3d 1364 (Fed. Cir. 2005)................................................................................10

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)..............................................................................7, 9

*Renishaw PLC v. Marposs Societa' per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998)................................................................................11

*Schriber-Schroth Co. v. Cleveland Trust Co.*,
    311 U.S. 211 (1940)....................................................................................................6

*Summit 6, LLC v. Samsung Electronics Co.*,
    802 F.3d 1283 (Fed. Cir. 2015)................................................................................3

*Thorner v. Sony Computer Ent. Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012)................................................................................6

*Uni-Sys., LLC v. United States Tennis Ass'n Nat'l Tennis Ctr. Inc.*,
    No. 17-CV-147-KAM, 2020 WL 3960841 (E.D.N.Y. July 13, 2020) .....................12

*United States v. Adams*,
    383 U.S. 39 (1966)...................................................................................................7

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)................................................................................15

### *Statutes and Other Authority:*

§ 112...........................................................................................................................12

*Manual of Patent Examining Procedure*, § 2141.01(a)........................................................2

For its claim construction response brief, Impact shows the Court as follows:

**A.    Urinal screen**

| Fresh's Construction | Impact's Construction |
|---|---|
| Plain and ordinary meaning. If further defined, a screen used in a urinal and through which urine passes. | For '098 – claim 19 and dependents other than claim 22, Preamble term. Not limiting.<br><br>For all other claims, a partition fit to deter objects from entering a urinal drain hole. |

Here, two issues require resolution.  First, for claim 19 and its dependent claims (except for claim 22), "urinal screen" is merely a preamble term.  Preamble terms generally are not regarded as claim limitations.  In this case, Fresh asserts that "urinal screen" is a claim limitation even in claims where it only appears in the preamble.  Second, where "urinal screen" appears in the body of claims, Fresh asserts that it is a readily understood term not requiring construction.  However, Fresh's apparent "ordinary meaning" of urinal screen is a screen used in a urinal and through which urine passes, which is different from Impact's construction of a partition fit to deter objects from entering a urinal drain hole.  These constructions reveal a disagreement as to whether a urinal screen must be used in a urinal, or whether it is sufficient to be fit for such use.

**1.    For claim 19, "urinal screen" is a preamble term, not a claim limitation.**

Fresh points out that "[c]lear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation."  [Dkt. 63 (Fresh Op. Brief), at 9 (emphasis added) (note that for convenience, page citations throughout this brief are to the CM/ECF-stamped page numbers)].  However, Fresh has not shown "clear reliance" on the preamble term "urinal screen" to distinguish the invention from the prior art.  Instead, Fresh merely points out that one reference used as part of a prior art combination – Clayton – was not

analogous prior art pursuant to Section 2141.01(a) of the *Manual of Patent Examining Procedure* ("MPEP"). [Dkt. 63-4, at 19].

During prosecution, Fresh faced an obviousness rejection based on the combination of the prior art Muderlak and Clayton patent references. [*Id*. at 4]. The Examiner stated that <u>Muderlak</u>, not Clayton, taught a urinal screen to satisfy that claim limitation in claims where it existed as a limitation:

> 4.      Regarding Claim 1, Muderlak shows a urinal screen as shown in Fig.3,
>
> comprising: a frame having: a first face (18'); a second face opposite the first face; and

[*Id*.].  The Examiner never asserted that Clayton was a "urinal screen" for purposes of this prior art combination. [*Id*. at 5 ("Clayton shows a floor covering.")].  Given Muderlak's obvious teaching of a urinal screen, Fresh never asserted that the preamble of claim 19 acted as a claim limitation which was not satisfied by the prior art in question. Instead, it argued that the combination of Muderlak with Clayton was "improper" because "Clayton is not analogous art" [*id*. at 16] and because there was no motivation to combine Clayton with Muderlak.  [*Id*. at 16-17].

The argument that Clayton is not analogous art is not rooted in a comparison of claim limitations to the elements of prior art references.  Instead, Section 2141.01(a) of the MPEP sets forth two ways that an applicant may disqualify a reference as non-analogous: (1) show that the reference is not from the same field of endeavor; and (2) show that the reference is not pertinent to the same problem faced by the inventor.  [*Id*. at 19].  Fresh argued to these standards, not to a point-by-point comparison of the prior art combination with the individual claim elements of the individual claims (and not by invoking the preamble of claim 19 as if it was a limitation of the claim). In fact, Fresh pointed out that by making its arguments, it was not conceding any arguments or disclaiming any claim scope.  [*Id*. at 23].  Despite the implication of Fresh's argument, a "field

of endeavor" is plainly not the same thing as asserting that a given preamble acts as a claim limitation, especially to avoid prior art.

The Examiner Interview is similarly unavailing because "urinal screen" appears in the body of numerous claims, where the parties agree it acts as a claim limitation. The Examiner never stated that a "urinal screen" in the preamble of claim 19 formed the basis of its decision that claim 19 was patentable. To the contrary, the Examiner noted other reasons for allowing the claims. [*Id.* at 24].

In short, Fresh did not argue that "urinal screen" in the preamble of claim 19 is a limitation not met by the combination of Muderlak and Clayton. Therefore, Fresh did not express "<u>clear reliance on the preamble</u>" of claim 19 within the meaning of the applicable case law.

Fresh sought and received numerous claims relating to its "urinal screen." Without ascribing unusual importance to the preamble term, claim 19 recites elements of a partition that is fit to screen objects to the extent it is used in a urinal. "Urinal screen" does not breathe life into claim 19 (or any of its dependents except for claim 22, which uses "urinal screen" in the body of the claim), which describes a structurally complete invention without the inclusion of the preamble. Here, claim 19 defines "a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1238 (Fed. Cir. 2017) (quotation omitted).

### 2. For claims where "urinal screen" appears in the body of the claim, Impact's proffered construction is correct.

Fresh cites *Summit 6, LLC v. Samsung Electronics Co*., 802 F.3d 1283, 1291 (Fed. Cir. 2015) for the proposition that "[b]ecause the plain and ordinary meaning of the disputed claim term is clear, the district court did not err by declining to construe the term." However, "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty

to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *accord Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1311 (Fed. Cir. 2003) (finding that the district court erred by declining to interpret the disputed term "substantially horizontal").

Moreover, arguing "ordinary meaning" applies does not mean that the Court should not supply the jury with such ordinary meaning. One district court explained why it is often necessary for parties advocating for the plain or ordinary meaning to explain such meaning:

> It has been this court's experience that parties in patent cases rarely agree on the "ordinary meaning [of patent terms] as understood by a person of skill in the art," so that asserting that such a meaning should apply, without further construction, merely begs the question of what that meaning is.

*Maytag Corp. v. Electrolux Home Prods., Inc.*, 411 F. Supp. 2d 1008, 1037-38 (N.D. Iowa 2008).

Here, Impact compares the parties' constructions:

Fresh's proffered construction relies on the screen's use: in a urinal. "[T]he rule against giving invention-defining effect to intended-use preamble language reflects a longstanding substantive aspect of the patent statute— specifically, the 'well settled' fundamental principle 'that the recitation of a new intended use for an old product does not make a claim to that old product patentable.'" *Artic Cat v. GEP Power Products, Inc.*, 919 F.3d 1320, 1328 (Fed. Cir. 2019) (quotation omitted).

Here, the claim and specification describe a screen that is "fit" to deter objects from entering a urinal drain hole.  [098 Pat., 3:66-4:8 ("The urinal screen 10 can be sized and shaped to <u>fit</u> into a urinal, toilet, or other bathroom appliance") (emphasis added)].  This is consistent with a structural definition of an apparatus claim, as well as a POSITA's understanding of the term from the prior art of record during prosecution and the specification. Given the language of the specification about different potential uses of a "urinal screen," and the "fluids" that may pass

4

through a urinal screen (not limited to urine), it would be improper to limit "urinal screen" based on the manner of use (or a specific fluid, for that matter) rather than its structure.

For these reasons, the Court should hold that "urinal screen" in the preamble of claim 19 and its dependent claims (other than claim 22) is not a separate claim limitation. The Court should further hold that where "urinal screen" is a limitation, its construction is "a partition fit to deter objects from entering a urinal drain hole."

**B.    Face**

| Fresh's Construction | Impact's Construction |
|---|---|
| Plain and ordinary meaning. If further defined, a main side of a thing. | Planar surface of a solid. |

Without any explanation, Fresh argues that the patents use "face" consistent with the plain and ordinary meaning, and that a jury could determine first and second faces without construction. [Dkt. 63, at 11-12]. In context of the patents' intrinsic evidence, however, the term "face" should not be left to a jury as simply "plain and ordinary meaning." As set forth in Impact's opening brief, the use of "a first plane face" should inform the jury's consideration of the term "face". [*See* Dkt. 62 (Impact Op. Brief), at 12-13]. Fresh fails to explain why plain and ordinary is sufficient given the context in which the term is used in the patents.

In the alternative, Fresh posits that the terms first and second "faces" are "simply the two main sides of the urinal screen frame", arguing that the terms provide context for the claimed posts which "extend away" from the faces. [Dkt. 63, at 12]. However, the fact that claimed posts "extend away" from the faces does not support a construction of a face as a "main side of a thing"; in fact, there is no corollary between the posts "extend[ing] away" from the face and Fresh's argument that a face is the "a main side of a thing".

Fresh's sole criticism of Impact's construction is that "planar" improperly injects a limitation from the patents' specification into the claims, contrary to the general proposition that the claims – not the specification embodiments – define the scope of patent protection.  [*Id.*, at 12-13]. However, Fresh fails to explain how the use of "planar" impermissibly limits "face" beyond its intended scope. Fresh cannot refute that, as discussed in Impact's opening brief, the dictionary definitions readily support a construction including "planar surface". [Dkt. 62, at 12].  A "planar surface" is not a limitation of the term "face", but rather consistent with the term in the context of the patent. Further, as Fresh acknowledges, an exception exists where the patentee explicitly redefines the term.  [*Id.* (quoting *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365-66 (Fed. Cir. 2012)); *see Astrazeneca AB v. Mutual Pharm. Co.*, 384 F.3d 1333, 1339 (Fed. Cir. 2004)].  Here, the patentee did precisely that by referring to the first face as "a first plane face" that is "passing through the frame when the frame is set on a flat horizontal surface", and by depicting the first and second faces as planar faces. [*See* 098 Pat., 3:21-26].  While the foregoing references alone would not be enough to constitute lexicography, they must be read in the context of the patentee's explicit definition of "sides" with respect to the horizontal plane. Taken together, these references affirm Impact's proffered construction – "planar surface of a solid" – while rejecting Fresh's construction as a "main side of a thing". [098 Pat., 7:27-29].

## C.    Cells

| Fresh's Construction | Impact's Construction |
|---|---|
| Plain and ordinary meaning.  If further defined, small enclosed openings or spaces. | Indefinite. |

"Plain and ordinary meaning" in a vacuum is irrelevant; only plain and ordinary meaning in the context of the intrinsic evidence matters.  *Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 217 (1940) ("The claims of a patent are always to be read or interpreted in light of its

specifications."); *United States v. Adams*, 383 U.S. 39, 49 (1966) ("[I]t is fundamental that claims are to be construed in the light of the specifications and both are to be read with a view to ascertaining the invention.").  The Federal Circuit emphasized this point in *Phillips*:

> Properly viewed, the "ordinary meaning" of a claim term is its meaning to the ordinary artisan after reading the entire patent.  Yet heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification.

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (*en banc*).  Fresh tacitly concedes this point, asserting that "cells" "<u>in the context of the patent</u> is used in its plain and ordinary meaning[.]"  [Dkt. 63 at 13 (emphasis added)].  Where, as here, the context of the patent reveals confusion, and a lack of objective boundaries by which a claim term is limited, the result is a determination of indefiniteness. "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc*., 700 F.3d 509, 517 (Fed. Cir. 2012).

Fresh likens the "plain meaning" of "cells" to "small enclosed openings or spaces" of the urinal screen.  Fresh's proffered construction fails to read "cells" "in the context of the written description and the prosecution history." *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history").  In this case, as shown below, the patents read in their entirety reject any size-based limit ("small"), reject a limit of "enclos[ure]," and above all, reject the idea that cells are limited to "openings or spaces."

Fresh asserts that "the overall language of the claims makes clear 'cells' are the openings of the urinal screen."  [Dkt. 63, at 13].  Again, Fresh is incorrect.  Claim 19 of the 098 Patent states in relevant part "a frame having … a plurality of interconnected cells at least partially defined by

7

a plurality of braces that intersect at corners, the plurality of interconnected cells comprising at least a plurality of perimeter cells and a plurality of interior cells[.]" A POSITA reading the 098 Patent would see that the perimeter cells of FIGURE 2 include both solid and open cells:



Predictably, Fresh tries to divert the Court's attention away from the "perimeter cells" which include **both** open cells **18** and solid cells **19**, by focusing instead on the "interior cells."  [Dkt. 63, at 13-14].  That is of no moment – "interior cells" are not the only "cells" at issue in the claim.

Fresh also points out that "braces define the sides of the openings of the urinal screen." [*Id*. at 13].  However, claim 19 does not state that every "cell" is defined by such braces.  To the contrary, there are "a plurality of interconnected cells at least <u>partially</u> defined by a plurality of braces."  [098 Pat., claim 19, at 9:35-36 (emphasis added)].  The reference to braces defining sides of certain cells of the urinal screen cannot redefine "cell" in a way that excludes solid cells from the scope of "perimeter cells" in claim 19.

Independent claim 38 of the 098 Patent does not refer to "cells", but to "a plurality of <u>openings</u> extending through the frame between the first face and the second face."  The use of "openings", rather than "cells", suggests a different scope for cells than merely openings.  *See*

8

*Applied Med. Resources Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333, n.3 (Fed. Cir. 2006) (noting the different terms presumptively have different meanings).

Next, Fresh points to claims 1, 21 and 28 of the 924 Patent, providing "a plurality of interconnected cells that form a tessellation of openings." [Dkt. 63, at 14]. Again, this language does not show that "cells" cannot include solid cells. FIGURE 2 shows frame 14's interconnected cells forming a tessellation of openings, and in FIG. 2, "solid cells **19** [are] positioned between and/or adjacent the openings 18" of the frame:

> As illustrated in <u>FIGS. 2</u> and 3, one or more of the openings **18** (e.g., cells) can have a perimeter which includes a plurality of sides (e.g., braces) **42** and corners **46**. <u>In some cases, all or a portion of the frame **14** forms a tessellation of openings **18** wherein a plurality of the sides **42** of the openings **18** are shared between two or more openings **18**</u>. In some embodiments, each of the openings **18** shares at least one side and at least one corner with another opening.
>
> * * * * *
>
> In some embodiments, as illustrated in <u>FIGS. 1 and 2</u>, <u>portions of the frame **14** include one or more solid or closed portions between or surrounding the openings **18**. For example, the frame **14** can include one or more solid cells **19** positioned between and/or adjacent the openings **18** of the frame **14**</u>.

[098 Pat., 4:63-5:15 (emphasis added)].

Fresh also stated that "[t]hese [924 Patent] claims further specify that 'three or more braces' at least partially define <u>the majority</u> of the openings." [Dkt. 63, at 14 (emphasis added)]. Again, this language is consistent with the arrangement of FIG. 2, including solid cells.

Plus, the "claims, of course, do not stand alone. Rather, they are part of a fully integrated written instrument, . . . consisting principally of a specification that concludes with the claims. For that reason, claims must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (internal quotations omitted).

The specification states that "<u>in some configurations</u>, the plurality of interconnected cells form a tessellation." [098 Pat., 3:41-42 (emphasis added).] Hence, assuming *arguendo* that certain

9

claims of the 924 Patent require interconnected <u>open</u> cells, as Fresh asserts, that does not mean that the phrase "interconnected cells" must exclude the solid perimeter cells shown in FIG. 2.  That the "perimeter cells" of claim 19 of the 098 Patent can include solid and/or open cells proves this point.

While Fresh points out that the specification identifies a "cell" as an example of an "opening" [Dkt. 63, at 14], Fresh cannot deny that it simultaneously identifies solid cells. [098 Pat., 5:10-27]. Fresh seeks to avoid examining cells in the context of the entire patent, instead fixating on the lone passage that, when read in a vacuum, feigns support for its position.  The Supreme Court has foreclosed Fresh's approach. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389 (1996) ("[A claim] term can be defined <u>only</u> in a way that comports with <u>the instrument as a whole</u>.") (emphasis added).  This means open and solid cells.

To be clear, the specification's lone reference to "openings (<u>e.g.</u>, cells)" is not lexicography.  The use of "i.e." in the specification may, in some cases, "signal[ ] an intent to define the word to which it refers . . .[.]" *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1334 (Fed. Cir. 2009); *but see Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1326 (Fed. Cir. 2012) ("i.e." was not definitional where a contrary holding would result in eliminating embodiments described in the specification); *Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc*., 429 F.3d 1364, 1373 (Fed. Cir. 2005) (statement "saccharides (i.e., sugars)" was not lexicography given "the context of the entire patent").  Fresh has not shown, and Impact has been unable to find a Federal Circuit precedent holding that "e.g." can serve as an indication of lexicography. *See Interval Licensing LLC v. AOL, Inc*., 766 F.3d 1364, 1373 (Fed. Cir. 2014).  ("[W]e decline to cull out a single "e.g." phrase from a lengthy written description to serve as the exclusive definition of a facially subjective claim term."); *see also Bayer CropScience AG v. Dow AgroSciences LLC*, 728

10

F.3d 1324, 1330 (Fed. Cir. 2013) ("The specification's second reference to 'biological activity' actually works against Bayer's argument. In the same column, the patent refers to 'coding for a protein which has the biological activity of the protein encoded by tfda, e.g., its 2,4–D– monooxygenase activity.' The use of "e.g.," rather than "i.e.," strongly suggests that there is more than one "biological activity."). That a cell can exemplify an opening (an open cell) does not preclude solid cells from also exemplifying other cells, given that they too are discussed in the specification.  *See Johnson Worldwide Ass. v. Zebco Corp.*, 175 F.3d 985, 991 (Fed. Cir. 1999) (recognizing that "[v]aried use of a disputed term in the written description demonstrates the breadth of the term rather than providing a limited definition.") (emphasis added).

"[Fresh] is not entitled to a claim construction divorced from the context of the written description and prosecution history." *Nystrom v. Trex Co.*, 424 F.3d 1136, 1144-45 (Fed. Cir. 2005) (rejecting patentee's effort to select dictionary definition to define an ordinary meaning of "board" inconsistent with the specification). While Fresh asserts that its proffered "ordinary meaning" aligns with dictionary definitions of "cell" [Dkt. 63, at 15 (reciting the definition of cell as "a small enclosed cavity or space")], its dictionary definitions are inconsistent with the solid cells embodiments of cells as described in the patents and therefore "fl[y] in the face of the patent disclosure [and are] undeserving of fealty." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

Fresh's proffered construction and dictionary definitions are problematic for other reasons as well, further proving the claims' indefiniteness.  In addition to emphasizing that the "cells" must be "openings" or "spaces" (contrary to the specification), Fresh also states that each such opening is a "small opening," a relative term in a case where the patents teach no objective size limitations for a cell.

11

"Claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention." *Interval Licensing LLC*, 766 F.3d at 1370-71.  A patent does not satisfy the definiteness requirement of § 112 merely because "a court can ascribe <u>some</u> meaning to a patent's claims." *Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 911 (2014) (emphasis in original). The intrinsic must provide objective boundaries for the POSITA. *See id*. at 911-12, n.8 (indicating that there is an indefiniteness problem if the claim language "might mean several different things and 'no informed and confident choice is available among the contending definitions'") (internal quotations omitted).

Applying the case law to Fresh's proffered construction of "cells," "small opening" is "a term of degree that is purely subjective and depends 'on unpredictable vagaries of any one person's opinion is indefinite.'" *Intellectual Ventures I LLC v. T-Mobile USA, Inc*., 902 F.3d 1372, 1381 (Fed. Cir. 2018) (quotations omitted). Here, the intrinsic evidence fails to provide meaningful boundaries differentiating a "small opening" from a "large opening." *See Uni-Sys., LLC v. United States Tennis Ass'n Nat'l Tennis Ctr. Inc.*, No. 17-CV-147-KAM, 2020 WL 3960841, at *28-30 (E.D.N.Y. July 13, 2020) (rejecting plaintiff's proposed plain and ordinary meaning construction of "very small side load" as indefinite); *Nite Glow Indus., Inc. v. Cent. Garden & Pet Co.*, No. 12-CV-4047-KSH, 2016 WL 1259969, at *9-10 (D.N.J. Mar. 30, 2016) (the term "small" is "relative and not indicated in the claim or specifications"); *Intellectual Ventures I LLC v. AT&T Mobility LLC*, 13-CV3-1668-LPS, 2016 WL 4363485, at *17 (D. Del. Aug. 12, 2016), *aff'd in part, vacated in part, remanded sub nom. Intellectual Ventures*, 902 F.3d 1372 ("small" held indefinite); *Innovative Display Techs. LLC v. Acer Inc.*, 2:13-CV-522-JRG, 2014 WL 4230037, at *26 (E.D. Tex. Aug. 26, 2014) ("quite small deformities" held indefinite).

The patents read in their entirety provide the requisite clear and convincing evidence that undermines Fresh's proffered construction of "cells." The patents provide no objective criteria for the size of a cell, and contradict Fresh's position that cells must be "openings." "Cells" does not inform a POSITA of the scope of the claimed invention with "reasonable certainty." *Nautilus*, 572 U.S. at 901.

Fresh relies on Dr. Hurd's testimony that he reads "solid cells" as a "coined term." [Dkt. 63, at 16]. However, a search of "solid cell" in the USPTO's searchable patent database reveals more than **650** issued patents since 1976 that use the term "solid cell." [*See* USPTO Patent Full-Text and Image Database, results for "solid cell", available at http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF&u=%2Fnetahtml%2FPTO%2Fsearch-adv.htm&r=0&p=1&f=S&l=50&Query=%22solid+cell%22&d=PTXT].  Some plastics and foams known in the art may have a cellular structure having "solid cells":



Fig. 5

[U.S. Patent No. 9,210,962 (to Ho) (**Exhibit 1**), at Fɪɢ. 5, 7:29-64 (emphasis added), 11:13-15, 4:65-5:2].  Dr. Hurd provides no facts in support of his contention that "solid cells" is a made-up term, and fails to explain the methodology he used to arrive at such a conclusion.

13

The specification does not define "cell" or disavow solid cell from the definition of cell. The fact that Fresh and Dr. Hurd are forced to rely on the exacting standard of inventor lexicography underscores the weakness of their position. [Dkt. 63, at 16-17 (stating in part that a POSITA "would know that the inventors acted as their own lexicographer in using this coined term")]. Neither Fresh nor Dr. Hurd offer any facts in support of this position or offer any explanation for why, if "cells" or "solid cells" were the subject of any lexicography, they are not included as defined terms in the portion of the specification containing special definitions. [*See* 098 Pat., 7:20-43 (defining other terms in the patents)]. It is black letter law that absent clear and specific lexicography exempting a "solid cell" from a "cell," Fresh's reliance on Dr. Hurd's testimony is an impermissible attempt to contradict the intrinsic evidence. Here, no evidence of lexicography exists.

Fresh's reliance upon *AIA Eng'g Ltd. v. Maggotteaux Int'l S/A*, 657 F.3d 1264 (Fed. Cir. 2011), is unavailing. *AIA* was not an indefiniteness case. There, no one argued that any term lacked objective boundaries. In *AIA*, the district court held that replacing "homogeneous solid solution" in original claim 1 with "homogeneous ceramic composite" in reissue claims 1 and 12 impermissibly broadened the scope of the claims of a reissued patent. The Federal Circuit affirmed the district court's construction of "homogeneous ceramic composite" in the reissue claims as "an aggregation of relatively consistent grains of at least Al2O3 and ZrO2, wherein each of the Al2O3 and ZrO2 retains a distinct composition and/or crystal structure." 657 F.3d at 1274-75.

The Federal Circuit next examined "homogeneous solid solution" and determined that it is synonymous with "homogeneous ceramic composite." *Id*. at 1275-76. "[T]he intrinsic evidence reveals that the patentee acted as his own lexicographer and used "homogeneous solid solution" as a synonym for "homogeneous ceramic composite." *Id*. at 1276. This conclusion was largely

14

driven by the language of the claim itself, which required a "homogeneous solid solution of 20 to 80% of Al2O3 and 80 to 20% of ZrO2," which, like the "homogeneous ceramic composite" of claims 1 and 12 of the reissued patent, requires both Al2O3 and ZrO2 in the same claimed proportions.  *Id*. (emphasis added). This contrasts with the instant case, where the claims do not dictate a definition of "cells" that excludes solid cells.

In *AIA*, the only instance of "solid solution" in the specification stated that the "inserts" in the "composite wear component" are "made of a ceramic material, itself composite, consisting of a solid solution or homogeneous phase of 20 to 80% of Al2O3 and 80 to 20% of ZrO2."  The specification did not otherwise indicate that "solid solution" required a single, uniform crystalline structure, which is what the experts had indicated was the import of the term, were it divorced from the context of the patent.  The court noted that rigidly confining "solid solution" to the meaning a POSITA would ascribe it outside the context of the patent would give rise to a "contradiction in terms" within the patent itself, and render the only disclosed embodiment of the invention "inoperable."  *Id*. at 1276-79.  Thus, the holding in *AIA* was that "homogenous solid solution" was lexicography meaning "homogeneous ceramic composite", given the plain language of the claim and the lone embodiment of the specification.

The lexicography by implication in *AIA* is not applicable in this case.  Only when a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, is the term capable of being defined "by implication." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Because cell is not always used in the patents to mean open cells, there can be no definition by implication on this record.  In fact, just as the reference to "solid solution" in the specification in *AIA* could not be given its well-understood meaning divorced from the context of the patent in *AIA*, here the reference to "cells"

15

in the specification cannot be given the dictionary definition ascribed by Fresh because to do so would conflict with the context of the patents as a whole, including the embodiment showing solid cells in FIG. 2.  Here, neither the claims nor the patents' specification is necessarily and inherently contradictory or inoperable due to the references to open cells and closed cells within the meaning of *AIA*.  Like other cases holding claim terms indefinite, the claims using "cells" simply lack the adequate objective boundaries required by *Nautilus* and its progeny.

### D.     "Tessellation" and "Tessellation of openings"

| Fresh's Construction | Impact's Construction |
|---|---|
| An arrangement of openings closely fitted together. | *Tessellation*: a pattern capable of covering of an infinite geometric plane without gaps or overlaps by one or a few repeating congruent plane figures. Otherwise, indefinite.<br><br>*Tessellation of openings*: a pattern of openings comprising one or a few repeating shapes capable of covering of an infinite geometric plane without gaps or overlaps.  Otherwise, indefinite. |

Only Impact's construction of "tessellation" and "tessellations of openings" captures the meaning of the term "tessellation", as set forth in various dictionary definitions.  Fresh's argument in support of its construction suffers from several defects.

First, Fresh suggests that the "specification describes the tessellation arrangement".  [Dkt. 63, at 18].  But while the specification recites an embodiment where "all or a portion of the frame 14 forms a tessellation of openings 18" [098 Pat., 4:63-5:3], the specification drawings provide as much, if not more, support for Impact's construction as for Fresh's construction.

Second, the dictionary definitions – including those relied upon by Fresh – support Impact's construction, not Fresh's construction.  [*See* Dkt. 63, at 19; Dkts. 63-11 (defining tessellation as shape closely fitted together, "especially of polygons in a repeated pattern without gaps or overlapping"), 63-12 (defining tessellation as "a covering of an infinite geometric plane without gaps or overlaps by a congruent plane figures of one type or a view types")].  Contrary to

16

Fresh's suggestion, Impact is simply proposing the plain definition of the term that was selected (but never defined or even described) by the patentee.

Third, Fresh construes both "tessellation" and a "tessellation of openings" as the same thing: "an arrangement of openings closely fitted together".  In doing so, Fresh improperly eliminates any distinction between the two terms, disregarding the patentee's use of different terms in claims 1, 21 and 28 of the 924 Patent ("tessellation of openings"), as opposed to claim 20 of the 098 Patent ("tessellation").

Fourth, Fresh's criticisms of Impact's constructions are without merit.  Impact limits tessellation to "one or a few repeated congruent plane figures" based on the plain meaning as reflected in the dictionary definition (Dkt. 63-12), but support is also found in the specification's description of openings in the patent; specifically, that in some embodiments, each opening is the same shape, but in other embodiments (none of which is expressly described as being a tessellation), "one or more" openings has a different shape from "one or more" other openings. [098 Pat, at 4:35-41]. And while Fresh criticizes Impact's proffered construction as overly complex, it is Fresh's construction which includes terms that will not aid the jury, but instead will lead to further questions from the jury (*e.g.* what does it mean for openings to be "closely fitted"?). "Closely fitted" is a term of degree, subject to indefiniteness for reasons shown above with respect to "small."  The intrinsic evidence provides no guidance on how closely fitted openings need to be.  Thus, should the Court favor Fresh's construction, it should determine that the terms at issue are indefinite because the patents fail to provide the requisite objective boundaries.

Impact submits that its proposed construction is consistent with the plain meaning of the term "tessellation" and "tessellation of openings", in the context of the embodiments depicted in the patents.

E.    **"[W]herein at least some of the plurality of interconnected cells comprise a polygonal shape"**

| Fresh's Construction | Impact's Construction |
|---|---|
| Plain and ordinary meaning. | Indefinite |

In its opening brief, Impact showed that "at least some of the plurality …" as used in various claim language has created infirmity regarding separate, defensible "individual" and "collective" constructions.  Here, Fresh asserts that a POSITA could read the language to mean that some individual cells comprise a polygonal shape, while ignoring significant intrinsic evidence which shows clearly and convincingly that a POSITA could also potentially read this language to mean that some cells collectively combine to form a polygon. [Dkt. 62, at 22-23]. Fresh singles out Example 6 from the Smith Declaration and calls it a "contrived example used to manufacture an alleged ambiguity" in claim 27.  [Dkt. 63, at 21].  At the same time, Fresh and Dr. Hurd opt not to discuss the far more obvious Example 2 discussed in Impact's opening brief.  [Dkt. 62, at 23]. The specification teaches that "[i]n some embodiments, the screen 10 has a polygonal … overall shape."  [098 Pat., 4:9-10 (emphasis added)].  The screen is comprised of individual cells, but the specification states that they can be of non-polygonal shapes.  [*Id.*, 4:35-38 (various shapes, including, "but not limited to" polygons)].  Because of this language, the "collective" construction is viable, meaning that a zone of uncertainty exists as to whether the "plain and ordinary" scope of this language is meant to refer to the individual or the collective.

**F.** **"Post"**

| Fresh's Construction | Impact's Construction |
|---|---|
| Plain and ordinary meaning. | A protrusion. |
| If further defined, an elongate element that serves as a support. | Otherwise, indefinite. |

In any effort to overcome prior art, Fresh urges for a construction that is limited to only certain embodiments of "post" in the patents.  Impact's construction, on the other hand, is consistent with all embodiments of "post" in the patents and other intrinsic evidence.

"*Serves as a support*": in its brief, Fresh argues that Claim 1 of the 924 Patent recites a plurality of posts to deflect urine, such that "a first set of posts support the braces of the urinal screen above the urinal surface and a second set of posts are positioned above the braces." [Dkt. 63, at 22 (citing 924 Pat., 8:6-9)].  However, Claim 1 discloses posts much more broadly than Fresh's discussion.  Claim 1 discloses:

> a plurality of posts to deflect urine . . . positioned such that:
> when the reversible urinal screen is placed upon the urinal surface in a <u>first orientation</u>, a first plurality of tips of the plurality of posts <u>support</u> the plurality of braces above the urinal surface, and a second plurality of tips of the plurality of posts are positioned above the plurality of braces, and
> when the reversible urinal screen is placed upon the urinal surface in a <u>second orientation</u>, the second plurality of tips of the plurality of posts <u>support</u> the plurality of braces above the urinal surface, and the first plurality of tips or the plurality of posts are positioned above the plurality of braces . . .

[924 Pat., 8:6-21 (emphasis added)].

The portion of Fresh's construction of a "post" containing "serves as a support" is consistent with only some posts disclosed by Claim 1; specifically, the "first plurality" in the first orientation, and the "second plurality" in the second orientation.  The remaining posts disclosed in Claim 1 are not disclosed as "supports".  Thus, in the claims, only certain posts "serve as a support".  Construing "posts" to serve as support would render the explicit references to "support"

19

in the claims superfluous. *See Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1340 (Fed. Cir. 2016) (reiterating that claim interpretations that render other claim language superfluous are disfavored). Other independent claims of the 098 Patent do not require the posts to support. [*See, e.g.*, 098 Pat, Claim 19 (posts "connected to a brace or corner of the frame and extending from away from the first face of the frame . . .")].

As depicted in FIGURE 5, the disclosed posts below the braces and above the urinal surface (highlighted in red below) "support the plurality of braces", whereas the remaining posts "are positioned above the plurality of braces" (*see* 924 Pat., 8:14-15, 20-21):



These latter posts do not "support" the braces.  *See Applied Med. Resources*, 448 F.3d at 1333, n.3 ("different terms in the claims connotes different meanings").

"*Elongate element*":  Fresh claims that "elongate element" is a "more generic" definition "appropriate in the context of the urinal screen." [Dkt. 63, at 22].  First, the phrase "elongate element" will not aid a jury. It does not provide guidance as to how "elongated" the post must be, nor will the phrase "elongate element" impart any meaning to a jury.  Based on the foregoing authorities relating to terms of degree, Fresh's construction would necessarily result in an indefinite construction of "post" due to a lack of objective boundaries relating to the size or dimensions of a post.  The specification provides that some posts may have a "different shape

20

and/or height" than other posts, and that posts may have a plurality of heights, with a percentage of the posts being taller than the remaining posts: "[i]n some cases, each post is at least . . . ½ taller . . . than at least one of the 3 closest posts".  [098 Pat., 5:63-6:18].  The patents countenance posts of varying lengths, widths and shapes.

Finally, as discussed in Impact's opening brief, in another patent referenced as part of the intrinsic evidence of the 924 Patent, the inventors of the asserted patents disclosed a "post" which was wider than it is long, in relation to the surface from which it protrudes. [*See* Dkt. 62-22 (612 Pat, FIG. 10A)].  Thus, a POSITA (including the inventors themselves) would view "post" as a protrusion from a base, regardless of size or dimension.

Fresh argues that "protrusion" does not refer to an "upright support structure".  However, as discussed above, there is no reason why a protrusion would not provide the requisite support as set forth in those claims which require certain posts to be supportive.  The patents themselves do not disclose posts as "support structures", *per se*, but rather as protrusions of various angles, shapes, widths, and heights that "extend away" from a face of the screen.

Fresh's purported plain and ordinary meaning of "post" is not consistent with the scope of "posts" disclosed in the patents and other intrinsic evidence, but rather is narrowly focused on only one disclosed embodiment of posts.  Impact respectfully requests that the Court adopt its proposed construction for a "post".

21

**G.**     **"Reversible"**

| Fresh's Construction | Impact's Construction |
|---|---|
| Plain and ordinary meaning. | Plain and ordinary meaning. |
| If further defined, adapted to be reversed such that either side is usable as the top (e.g. side facing a user) or bottom (e.g. side facing urinal surface). | If further defined, capable of being reversed. |

Fresh argues that its construction is "consistent with the claim language as whole", referring to independent claims disclosing a first orientation and second orientation.  [Dkt. 63, at 24].  However, this proposed construction is not merely "consistent" with the claim language.  For example, claim 1 of the 924 Patent discloses a "reversible urinal screen" with posts positioned such that the urinal screen functions in a first orientation (924 Pat., 8:10-15) and a second orientation (*id.*, 8:15-21).  By construing "reversible" be mean "usable as the top . . . or bottom", Fresh is, at a minimum, instructing a jury in a way that is repetitive given the other aspects of at least some of the asserted claims.  The construction of "reversible" need not and should not explain the usability of the urinal screen when other elements are plainly devoted to explaining the first and second orientations of the screen where usability is an issue.

To the extent the Court deems construction of the term necessary, Impact's construction of reversible ("capable of being reversed") is consistent with the claim language as a whole, and will aid the jury without repeating other elements of the claims unnecessarily, and without importing characteristics of the preferred embodiment into broader claim language.

22

H.      "[A]long a perimeter of at least some of the plurality of openings, so as to surround the at least some of the plurality of openings"

| Fresh's Construction | Impact's Construction |
|---|---|
| Plain and ordinary meaning. | Indefinite |

Consider normal usage: If the subject was building a wall "along a perimeter of at least some of the plurality of houses in a neighborhood, so as to surround the at least some of the plurality of houses," a person could reasonably conclude that this statement refers to building a wall around the subdivision of houses or a portion thereof (collectively), rather than building walls around each of two or more houses individually. Fresh only gives half of the story – a confident account of the individual-based construction – with regard to this language of claim 38 of the 098 Patent. Yet in light of the intrinsic evidence, the language at issue has two confident constructions: surrounding the perimeter of individual cells with posts, *or* surrounding the perimeter of a collection of cells with posts.

By replacing "plurality" with "individual" in the claim language at issue, Fresh makes the case for the "individual" construction.  However, despite the exchange of each party's positions and evidence in support preceding the opening claim construction briefs, Fresh opted to ignore the considerable intrinsic evidence marshalled by Impact suggesting the latter "collective" construction.  FIGURE 4 is not determinative of the issue because it offers separate support for both individual and collective constructions (*e.g.*, posts surround the perimeter of a collection of cells). Meanwhile, other intrinsic evidence points to the latter collective construction.  "Surround" is used to refer to surrounding a collection of cells, insofar as a solid portion of the frame (in FIG. 2) surrounds the open cells collectively along the "perimeter of the frame."  [098 Pat., 7:19]. Likewise, a "perimeter structur**e**" may form a collection of openings.  [*Id*., 1:46-47 ("a perimeter structur**e** forming one or more of the plurality of openings"), 1:56 ("the perimeter structure

23

defining the opening**s**") (emphasis added)]. Dr. Hurd's attempt to rule out the viability of the "collective" construction is tripped up by his reliance on the demonstrably <u>false</u> premise that the patent uses "perimeter structu**re**" (in the singular tense) <u>only</u> to refer to one opening.  [Hurd Dec. (Dkt. 62-18), ¶¶ 63-64].  Therefore, again, the POSITA is left with two viable constructions and a concomitant zone of uncertainty.

**I.**     **"[A]t least some of the plurality of braces comprise contoured upper and lower surfaces"**

| Fresh's Construction | Impact's Construction |
|---|---|
| Plain and ordinary meaning.<br><br>If further defined, at least some of the plurality of braces have non-planar upper and lower surfaces. | Indefinite |

As Impact's opening brief foreshadowed, Fresh defends the purported definiteness of this claim language by asserting the dubious proposition that "the term 'at least some of a plurality' means 'at least one.'" [Dkt. 63, at 25]. This supposition stems from the proposition that a "plurality" generally means <u>at least two</u>, and "some" of the plurality is less than the plurality.  [*Id.*] <u>This premise is flawed because in both claims 1 and 21, there are at least three braces in the</u> <u>plurality of braces</u>.  [924 Pat., 8:3, 9:37 ("<u>three</u> or more braces of a plurality of braces") (emphasis added)].   Here again, Fresh conveniently ignores the intrinsic evidence which contradicts its position.

Next, relying on paragraph 74-75 of Dr. Hurd's Declaration, Fresh states that a POSITA would not interpret "upper and lower surfaces" to refer to the upper surface of one thing and the lower surface of another: "[t]he context does not suggest a different reading here." [*Id.*] Impact's opening brief showed that Dr. Hurd and Fresh are wrong on this point. Specifically, by referring to sides (e.g., braces) having contoured upper "**and/or**" lower surfaces, the patents' context leaves

the issue utterly open-ended and indefinite. [098 Pat., 5:4-6; *see also id.* at 3:65 ("a plurality of sides (e.g., braces) 42")].  To reach a contrary conclusion, Dr. Hurd substantively altered the "and/or" statement in the patents to simply "and." [Hurd Dec., ¶ 75].  Fresh compounds this error by repeating the false assertion in its opening brief.  [Dkt. 63, at 26].

| Hurd Dec., ¶ 75 | 75.  Furthermore, the specification discloses an embodiment that requires individual braces to have upper and lower concave surfaces. *See* '098 patent at 5:4-9 (In some cases, the sides 42 and/or corners 46 of the openings 18 have contoured (e.g., convex) upper and lower surfaces."). |
|---|---|
| Fresh Op. Brief [Doc. 63 at 26] | Furthermore, the specification discloses an embodiment that includes individual braces having upper and lower concave surfaces. *See* Ex. 1 at 5:4-9 ("In some cases, the sides 42 and/or corners 46 of the openings 18 have contoured (e.g., convex) upper and lower surfaces"). |

The actual language from the specification describes contoured "upper and/<u>or</u> lower surfaces":

5

openings **18** are shared between two or more openings **18**.
In some embodiments, each of the openings **18** shares at
least one side and at least one corner with another opening.
   In some cases, the sides **42** and/or corners **46** of the
openings **18** have contoured (e.g., convex) upper and/or  5
lower surfaces. The contoured surfaces of the sides **42** and
corners **46** can deflect fluid (e.g., urine) to reduce splash in
the urinal, toilet, or other environment in which the urinal
screen **10** is installed.

[098 Pat., 5:1-9 (emphasis added)].  The use of "and/or" rather than "and" reveals the zone of uncertainty identified in Impact's opening brief.  The fact that Fresh and Dr. Hurd rewrote the specification language to suit their argument merely underscores the correctness of Impact's position.

Respectfully submitted this 3rd day of September, 2020.

/s/ Steven G. Hill
Steven G. Hill (GA BAR 354658)
Martha Decker (GA BAR 420867)
HILL, KERTSCHER & WHARTON, LLP
3350 Riverwood Parkway, Suite 800
Atlanta, GA 30339

25

770-953-0995 (o)
770-953-1358 (f)
Email: sgh@hkw-law.com
      md@hkw-law.com

James Silk
Spengler Nathanson P.L.L.
900 Adams Street
Toledo, Ohio 43604
419-252-6260 (t.)
419-241-8599 (f.)
Emails: jsilk@snlaw.com

*Attorneys for Defendant Impact Products, LLC*

## CERTIFICATION OF PAGE LIMIT COMPLIANCE

I hereby certify that the foregoing Defendant Impact Products, LLC's Responsive Claim Construction Brief adheres to the pages limitations set forth in Paragraph 4.4(c) of the Patent Local Rules of the Northern District of Ohio.

*/s/ Steven G. Hill*
Steven G. Hill

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically this 3rd day of September, 2020. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

*/s/ Steven G. Hill*
Steven G. Hill

*Counsel for Defendant Impact Products, LLC*

26