1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF OHIO
2                          WESTERN DIVISION

3

4

FRESH PRODUCTS, INC.,              Case No. 3:19-CV-2109
5                                  Toledo, Ohio
            Plaintiff,
6

7      vs.                         **TUESDAY, NOVEMBER 10, 2020**

8

IMPACT PRODUCTS, LLC,
9
            Defendant.
10

11

12   TRANSCRIPT OF VIDEO CLAIM CONSTRUCTION HEARING PROCEEDINGS

13              BEFORE THE HONORABLE JACK ZOUHARY

14           UNITED STATES SENIOR DISTRICT JUDGE

15

16

17

18

19

Official Court Reporter:   Stacey L. Kiprotich, RMR, CRR
20                         United States District Court
                           1716 Spielbusch Avenue, Suite 120
21                         Toledo, Ohio 43604
                           (419) 213-5520
22

23

24

Proceedings recorded by mechanical stenography, transcript
25   produced by computer-aided transcription.

```
 1

 2    APPEARANCES:

 3

 4    For Plaintiff:          Joseph F. Jennings, Esquire
                              Ed Schlatter, Esquire
 5                            Knobbe Martens Olson & Bear
                              2040 Main Street, 14th Floor
 6                            Irvine, California 92614

 7

 8
      For Defendant:          Steven G. Hill, Esquire
 9                            Martha L. Decker, Esquire
                              Jerry Liu, Esquire
10                            Hill, Kertscher & Wharton
                              3350 Riverwood Parkway, Suite 800
11                            Atlanta, Georgia 30339

12
                              James P. Silk, Jr., Esquire
13                            Spengler Nathanson
                              900 Adams Street
14                            Toledo, Ohio 43604

15

16

17

18

19

20

21

22

23

24

25
```

1                    **Tuesday, November 10, 2020**

2                          -   -   -

3              (Proceedings commenced at 10:06 a.m.)

4                          -   -   -

5                    THE COURT:  We're here on Case Number

6    19-cv-2109, captioned Fresh Products versus Impact Products.

7         This is a claims construction hearing scheduled for

8    today.  We have received from the parties a briefing,

9    including an amended agreed-upon construction and an amended

10   disputed terms and proposed constructions.  This is

11   reflected on the docket as Document Number 68.

12        And counsel have also been kind enough to share with

13   each other and with the Court PowerPoint presentations to

14   aid in our discussion today.

15        And I understand arguing on behalf of plaintiff will

16   be Joe Jennings.

17        And arguing on behalf of defendant will be Steven

18   Hill.

19        We have a number of other folks who are listening in,

20   or listening and watching in, and I have provided the court

21   reporter with a listing of those folks for her to include in

22   her transcript record.

23        An apology from me at the outset:  You may find me

24   interrupting you during your remarks, and that's because I

25   prefer a give-and-take discussion as opposed to an

1    appellate-type discussion, and so to encourage a polite

2    cross fire, I may pause you in your statement and ask the

3    other side to comment on what they've just heard.  And you

4    should feel free in your discussion, when you're advocating

5    a certain position, now that you have also seen and shared

6    with each other the other side, to comment on why the other

7    side, you believe, is wrong in its interpretation.

8         So, with that, it's my understanding that Issue Number

9    1 before us deals with the phrase "urinal screen."  And why

10   don't we have Joe go first and see where he takes us.

11              MR. JENNINGS:  Okay.  Thank you, Your Honor.

12   So the parties, that was part of the recently filed updated

13   claim construction joint statement, the parties agree on

14   what the term "urinal screen" means.  And they have just a

15   single dispute left, and that is whether "urinal screen"

16   acts as a limitation of certain other claims, and that's

17   Claim 19 of the '098 patent and certain claims that depend

18   from Claim 19 that don't recite a "urinal" or "urinal

19   screen" after the "comprising" clause, so basically the body

20   of the claim.

21        And the defendants argue that "urinal screen" is not a

22   limitation of Claim 19.  So, in other words, Claim 19, in

23   their view, would cover something that is not a urinal

24   screen.

25        And the Federal Circuit has given us some guidance of

1    when there is a preamble in a patent claim of limiting the

2    claim.  And some of that guidance says that, well, if it's

3    argued during prosecution, that it's going to be a

4    limitation of the claim, and that's specifically what we

5    have here.

6         And in our slide, we highlight the issue on Slide 1;

7    and then in Slide 2, we show one of the prior art references

8    that was discussed during the prosecution of the '098

9    patent, and that's this Clayton reference that disclosed a

10   sanitary flooring that's used, you know, in a urinal room

11   under a urinal, but on the floor.

12        And on Slide 3, we've highlighted there how the

13   applicants distinguished Clayton, and the applicants argued

14   that Clayton was not even in the same field of reference,

15   the same field of endeavor as the patented invention; and so

16   the applicants argued that the examiner shouldn't even

17   consider Clayton as relevant prior art in examining the

18   claims of the patent.

19        You can just imagine, Your Honor, if we were asserting

20   this patent against someone who was selling flooring for a

21   urinal, essentially that's what the defendants would say, is

22   that we could assert Claim 19 against someone who is selling

23   flooring for use in a urinal because the claim would be

24   broad enough to cover that flooring, and we argued just the

25   opposite during prosecution.  And I think if we did, you

1    know, make that assertion, the defendant in such a case

2    would have a very good position to come before you and say,

3    "Wait a second.  They can't contend that Claim 19 covers us.

4    They told the patent office the exact opposite."  So for

5    that purpose, Claim 19 should be limited to a "urinal

6    screen."

7        And then on the next slide, the Federal Circuit has

8    also told us that, well, "A preamble is limiting where it

9    gives life, meaning and vitality to the claim."  And in some

10   cases maybe that's helpful, maybe it's not.

11        But in this case, if you look through the patent, no

12   one can come to the conclusion that the patent is directed

13   to anything other than a "urinal screen."  The patent is

14   entitled "urinal screen."  Every claim recites "urinal

15   screen."  Every figure discloses an embodiment of a "urinal

16   screen."  Each section of the patent discusses a "urinal

17   screen," and the "Detailed Description" is just replete with

18   references to "urinal screen."  And I don't think anyone of

19   skill in the art could reasonably read this patent and think

20   it was directed to something other than a "urinal screen."

21        So for that reason, Claim 19, like all the other

22   claims at issue here, and the few pending claims that are at

23   issue here from 19 should be limited to a "urinal screen,"

24   which is what the defendants (inaudible) --

25                  THE COURT:  Your voice trailed off at the end,

1    Joe, and our reporter couldn't get it, and I couldn't hear

2    it either.

3                MR. JENNINGS:  Okay.  So let me just conclude,

4    Your Honor, we contend that Claim 19 and the claims that

5    depend therefrom, even if they don't recite "urinal" in the

6    body of the claim after "comprising," should be limited to a

7    "urinal screen."

8          And unless the Court has any questions about that, I

9    will accede to my friend on the other side.

10               THE COURT:  Steven, you are up.

11               MR. HILL:  Okay, Your Honor.  Thank you, Joe.

12         If you can turn to Slide 3 of our slide deck, Your

13   Honor, you will see that we have contrasted Claim 19 of the

14   '098 patent with Claim 38 of the '098 patent, and the reason

15   for doing that is to illustrate the principle of law that

16   the Federal Circuit articulated in the *Catalina Marketing*

17   *versus Coolsavings* case.  That was a case that involved a

18   series of independent claims, some of which cited preamble

19   language, both in the preamble and in the body of the claim,

20   which is what independent Claim 38 does with respect to

21   "urinal screen" and the other claims where the language only

22   appeared in the preamble, which is akin to Claim 19 of the

23   '098, which only says "urinal screen" in the preamble of the

24   claim, but never in the body of the claim.

25         The Federal Circuit held in *Catalina Marketing* that

1    that was a pivotal difference in terms of whether the

2    preamble is necessary to breathe life into the claim.

3         The general rule cited by the Federal Circuit, as this

4    Court is aware, is that the preamble is not limiting.  It's

5    especially held to be not limiting where the body of the

6    claim recites a structurally complete invention.  Now, there

7    is a detailed discussion in the *Catalina Marketing* case that

8    specifically says that there's a difference between a

9    structurally complete invention and preamble language that

10   goes more towards the use of the article rather than the

11   structure of the art.

12             THE COURT:  Let me pause you for a second,

13   because both the reporter and I missed something you said a

14   sentence ago.

15        You said "It's especially held to be not limiting

16   where the body of the claim recites a," and then we kind of

17   lost you.

18             MR. HILL:  In an otherwise structurally

19   complete invention.

20        In other words, if can look at Claim 19 and you look

21   at what follows the word "comprising" to begin the body of

22   the claim, that recites "a frame having: a first face; a

23   second face; and a plurality of interconnected cells," and

24   goes into in an especially amount of detail regarding the

25   nature of the screen, how it is structured.

1          Federal Circuit has said where that is the case on

2     where the preamble term only goes into the use of the

3     structure and not the structure itself, not adding

4     additional structure, it's improper to hold that the

5     preamble is limiting.  That discussion can be found in the

6     *Catalina Marketing* case, among others.

7               THE COURT:  What patent then -- sorry.  My

8     apologies.  I told you this might happen.

9          Page 4 of plaintiff's lists a number of areas where

10    "urinal screen" is used and argues that it is quite clear

11    that it's meant to be something in the urinal, not on the

12    floor.  What do you say to that argument?

13               MR. HILL:  Again, the references in each face

14    are references to "urinal screen" as a screen that is used

15    in a urinal.  It goes more to the use rather than the

16    structure, and that is consistent with the *Catalina

17    Marketing* holding, which is that when the preamble term in

18    question is only adding usage, but is not adding new

19    structure, then it's not limiting.

20         Now, I would like to address Mr. Jennings' point that

21    in the prosecution history there is argument based upon

22    "urinal screen" as a limitation.  Technically, Mr. Jennings'

23    argument is incorrect.  The prosecution history reflects

24    that the combination of prior art references that were being

25    used to mount the examiner's obvious mischallenge was the

1    combination of Muderlak and Clayton.  The argument was never

2    made that the preamble of any claim was not satisfied by

3    that combination of art.  And the reason, as the Court can

4    see in our Slide 5, is because Muderlak teaches a urinal

5    screen for those claims where urinal screen is in fact a

6    limitation.

7          So the case law dealing with when the prosecution

8    history signals that the preamble is a limitation is where

9    the preamble is called out as being a limitation of the

10   claim that is not satisfied by the prior art references in

11   whole or in part, depending on whether it's an anticipation

12   rejection, or whether it's an obviousness rejection.  But

13   you have to argue that the preamble limitation is not

14   satisfied in the prosecution in order for the preamble to

15   become a limitation under that line of cases.  That's not

16   what happened here.  What happened here was that they

17   argued, without with respect to any individual claim of the

18   '098 patent, that Clayton was non-analogous art.

19         Now, to address Mr. Jennings' point about, well,

20   doesn't that mean then that Claim 19, if you accept our

21   argument, could be asserted against a flooring, the answer

22   to that question is no.  That was based on an entirely

23   different principle than a claim construction.  It's based

24   on the principle of prosecution history estoppel, which is

25   different than a claim construction disclaimer, which is

1    what is necessary in order to breathe the life into the

2    claim.

3         Now, I might add that there is no Federal Circuit

4    authority that we've been able to find, nor that Fresh has

5    pointed this Court to, that shows that when a reference is

6    singled out and argued to be non-analogous as to the patent

7    as a whole, that that type of prosecution history

8    argumentation is adequate to transform a preamble from a

9    non-limiting term to a term that breathes life into the

10   claim and, therefore, has to be viewed as an additional

11   limitation.

12        So that concludes my argument, unless the Court has

13   questions.

14             THE COURT:  Joe, let me ask you to comment on

15   *Catalina*, which your opponent describes and highlights that

16   there is a pivotal difference which you are ignoring; also

17   comment on Muderlak and/or Clayton; and also comment, if you

18   can, on the argument that prosecution history is something

19   different than claim estoppel.

20             MR. JENNINGS:  Yes, Your Honor.  So *Catalina*

21   *Marketing* just sets forth the standard for when is a term in

22   a preamble limiting, and we all agree that "urinal screen"

23   in this claim appears only in a preamble.  And so we look to

24   the guidance of the Federal Circuit for when is a preamble

25   limiting, and one of the main points here is the prosecution

1    history of this patent.

2         And I think we actually, I mean, defendants just

3    admitted that the claims don't cover flooring.  They claim

4    that it's a different theory for why it doesn't cover

5    flooring; but if the claim doesn't cover flooring, then

6    "urinal screen" has to be a limitation.  And "urinal screen"

7    gets to be a limitation here particularly because we argued

8    that it was a distinction over this Clayton reference.  So

9    it was a combination of Muderlak and Clayton, and Muderlak

10   was a urinal screen, and the examiner was combining Muderlak

11   with the flooring to come up with the claimed invention.

12   But what we argue to the examiner during prosecution was you

13   can't even consider Clayton within the field of prior art to

14   examine these claims because it's flooring; it's not in the

15   same field of endeavor.  Now, if our claims covered

16   flooring, by definition Clayton would be within the same

17   field of endeavor, but we argued against that.

18        And so there's no case law that suggests you have to

19   argue that the combination that the examiner asserts does

20   not, in fact, disclose the preamble term.  What we argued

21   was dismiss Clayton entirely, it's not even analogous art to

22   be considered, and obviously rejection because it's not

23   within the field of endeavor that the claims covered it by

24   definition is in the field of endeavor.

25        Did I address the points that you wanted me to

1     address, Your Honor?

2                 THE COURT:  Yes.  Anything else you want to

3     add?

4                 MR. JENNINGS:  No.  Thank you, Your Honor.

5                 THE COURT:  Any final words, Steven, before we

6     move on?

7                 MR. HILL:  Just to re-emphasize, Your Honor,

8     in the prosecution history, the argument of non-analogous

9     art is flawed for two reasons:

10         One, it's not made with respect to Claim 19

11    particularly, much less the preamble limitation of Claim 19,

12    because it's not an attempt to actually differentiate the

13    prior art combination because Muderlak is a part of that

14    prior art combination.

15         And, two, there is simply no case law that has

16    evaluated the prosecution history arguments and said that

17    they mandate -- they cause a preamble term to rise to the

18    level of a claim limitation, except in those cases where the

19    preamble is being singled out and the argument is being made

20    that the combination of prior art references that fails

21    because it does not teach that preamble ultimately.  That's

22    what those cases say.  That's all.

23                THE COURT:  Okay.  Let's go on and talk about

24    "face."

25                MR. JENNINGS:  Okay, Your Honor.

1           THE COURT:  I understand Fresh argues the

2     plain and ordinary meaning.  But if something further needs

3     to be said, you have called it "a main side of a thing," and

4     Impact's definition is "planar surface of a solid."

5           MR. JENNINGS:  Yes, Your Honor.  And so we've

6     highlighted on our Slide 5 the parties' positions as you've

7     just accurately set forth, and the main issue there is this

8     word "planar," and that's something that the defendants are

9     reading into the claim.  I don't think anyone would think

10    that the plain and ordinary meaning of "face" is "planar."

11    We cited a variety of dictionary definitions.  None say that

12    it needs to be "planar."  Those are in our opening brief at

13    Page 8.

14        And so this is sort of a cardinal sin of claim

15    construction here, that they're reading a limitation into

16    the claim that's not supported by the language of the claim;

17    and then they double down in that not only are they reading

18    a limitation into the claim, but they are reading a

19    limitation that would exclude the preferred embodiment of

20    the claim here.

21        So the preferred embodiment, and if we turn to our

22    Slide 6, we just highlighted some of the language from the

23    specification that discusses how these braces -- so the

24    braces form the sides of the cells or openings.  And the

25    patent specification talks about the braces being contoured,

1    and the contour is advantageous to another feature that

2    helps limit splashing in these devices.

3        And then if you look at the figures, and -- so we have

4    the next slide where we've reproduced Figure 1 and Figure 3

5    there from the patent specification.  And it's not easy to

6    see because these are two-dimensional drawings and you're

7    trying to show a three-dimensional object, but you can see

8    that there are contours shown consistent with the

9    description in Figure 1; and then if you look at the top, so

10   Figure 3 is a top view that shows all these braces that

11   connect at the corners that define the openings.

12       And they have the lines in -- you have the outer lines

13   in those braces, defining the outside edge of the braces,

14   and then the more faint lighter lines in the center.  So

15   that's showing the contour of that structure.

16       If Your Honor may be familiar with like a contour map,

17   where your hiking and there's various lines that show the

18   different elevations of the area that you may be hiking,

19   that's what those lines are showing.  They are showing a

20   contour in a two-dimensional standpoint --

21           THE COURT:  Sorry.  Go ahead.  We did obtain

22   from one of you the actual product, and so I was just asking

23   if one of my friends here would bring it in because, yes,

24   we've touched it, we've held it, we've turned it, we've done

25   all those things to it.  So I have an idea of what you're

1    talking about, and it is easier to understand when you have

2    the actual product, as opposed to a drawing on a piece of

3    paper, but I get your point is my point.  Go ahead.

4                    MR. JENNINGS:  And we have this double bagged

5    because they're great in the urinal; not so great in the

6    office.

7                    THE COURT:  I can tell you that we had that

8    discussion a couple times, yes.

9                    MR. JENNINGS:  Okay.  And, finally, on Slide

10   8, you know, we contrasted the actual Figure 5, which we've

11   blown up a portion of and what defendants did in their brief

12   with Figure 5, and they drew these two straight lines on the

13   right side in green and red.  And if you look at this side

14   view of Figure 5 and you see the lines, it's showing the

15   contour as best somebody can do in a two-dimensional

16   drawing.

17        So we've got the description; we've got the figures.

18   It's the preferred embodiment of the patent.  And defendants

19   want to read this limitation in to support a

20   non-infringement argument.  And like I said, reading a

21   limitation into the claim is a cardinal sin, but then

22   doubling down to exclude the preferred embodiment, which the

23   Federal Circuit says is rarely ever correct.

24        So I'm not sure if Your Honor has any questions.

25                    THE COURT:  So if this product is

1    reversible -- in other words, I could use it either way, I

2    could flip it and use it either way -- can you have a main

3    side of a thing when you have two faces?

4                 MR. JENNINGS:  A main side?  I think they are

5    each -- I get the point.  They are each main sides because

6    there's a top and a bottom that are either -- I mean, that's

7    one of the advantages.  These people, the janitors, they may

8    put them into the urinal, might put them one way or the

9    other and it just doesn't matter to us.  It works either

10   way.

11                THE COURT:  Okay.  Steven, you are up.

12                MR. HILL:  Thank you, Your Honor.  Starting on

13   Column 3, Lines 24 through 26 of the '098 patent, it refers

14   to "a first plane face where the plane passes through the

15   frame when the frame is set on a flat horizontal surface."

16   And even in their construction, if you read "a main side of

17   a thing," well, what is a side in this patent?

18        We show on Slide 9 of our presentation, in the lower

19   right-hand corner, there is a box there that reprises Column

20   7, Lines 27 through 29.  It says that "Terms such as," and

21   there is a series of terms, including the word "side," and

22   it says "are defined with respect to the horizontal plane."

23        Now, we do need to address the argument about Figure 5

24   because it is not our intent to contradict the

25   specification, and I readily concede that it would not be

1    our view that a construction that is at odds with the

2    specification is the correct construction.

3         However, if you look at Figure 5 and their Slide 8,

4    and you look at the enlargement, you still see the planar

5    line that extends out and becomes where the Number 34 is on

6    the far right-hand side of Figure 5.  It's an extension of

7    what is intended to be this straight line, and you can trace

8    that straight line all the way across.

9         What Mr. Jennings is pointing to is an unmarked,

10   unidentified straight -- extra straight line that appears

11   above the straight line that we're pointing to when we say

12   that it's planar.

13        Now, it may be -- it's simply impossible to know what

14   the intent of the drafters did.  That was not numbered and

15   it's not explained, and it may be that because this is the

16   top perspective, that may be a brace behind the brace that

17   has the planar line going across it.  It's simply

18   indeterminate, and too thin a reed upon which to base the

19   construction, given the plain language elsewhere in the

20   specification regarding this, and given that Number 34 on

21   Figure 5 extends straight out from the plane on each of the

22   two surfaces of the frame.  Column 6, Lines 31 through 33

23   also say that the frame thickness is measured as the

24   distance between these first and second sides.  Here, it's

25   indicated by Number 34.

1          So for those reasons, as well as what we show on our

2     Slide 10, which is where we take Fresh's dictionary

3     definition to task, because if you look at definition Number

4     8, it gives a definition of face as "The most significant or

5     prominent surface of an object."  What they did with their

6     construction is they took that and they ran with it.  And

7     instead, because it doesn't fit the facts of this patent,

8     they said "a main side of a thing," because they recognize

9     that there is no "most significant or prominent surface."

10         On the other hand, if you look at the definition that

11    follows on Number 9, it's "A planar surface bounding a

12    solid."  And I would submit to the Court that that is

13    actually the dictionary definition that most comports with

14    these references in the specification, and for that reason,

15    we submit that "face" in this case is a reference to "a

16    planar surface."

17              THE COURT:  Reply?

18              MR. JENNINGS:  Yes, Your Honor.  First, you

19    know, what we're doing here in claim construction is to

20    assist the trier of fact, the jury, in assessing whether or

21    not the accused device infringes or not.  And our position

22    on "face" is that it has a plain and ordinary meaning.  A

23    jury is going to know what the face of this accused urinal

24    screen is without us further elaborating.

25         But if we are going to further elaborate, I do think

1   we captured the essence of "face."  You've called out, you

2   know, "a main side."  It might not be, you know, entirely

3   accurate because it is reversible, so there would be two

4   main sides in a urinal screen of this sort.

5        But the main issue is we can't read "planar" into it

6   because it's going to exclude the preferred embodiment, and

7   it's a limitation just not supported by any semblance of the

8   word "face."

9        Now, I want to turn your attention, Your Honor, to our

10  slide, which I didn't address in the opening, our Slide 9,

11  where we've highlighted the language from the patent

12  specification that the defendants focus on, and this is in

13  the '098 patent, Column 3, Lines 21 to 26.  And what that is

14  referring to is it's referring to a reference point.  So the

15  specifications in that portion is trying to define what

16  portion -- when you're looking at this urinal screen, what

17  portion of that urinal screen is going to be the open area

18  versus the structure of the urinal screen.  And in doing

19  that, it says "the perimeter structures of the plurality of

20  openings occupy less than one fifth of a surface area of the

21  frame as measured parallel to a first plane face of the

22  frame, wherein the first plane face of the frame is a plane

23  passing through the frame."

24        So, clearly, that's a hypothetical reference, "face"

25  that passes through the urinal, the frame of the urinal, so

1    that the applicant can describe the portion that's solid

2    versus open when you're looking down on the urinal screen.

3    That's not suggesting that the device has a flat surface on

4    the top, which is contrary to the teaching that it should be

5    contoured.

6          And with reference to Figure 5, yes, even if you've

7    got a contoured surface, that frame is going to have a

8    thickness, and that's what 34 is indicating is the thickness

9    of the frame.  So even if that top surface of the braces are

10   curved, and therefore would not fall within this planar face

11   that defendants urge, it's still going to have a thickness.

12   And that 34 frame thickness is being called out to discuss

13   the relative length of the posts that extend out from the

14   frame as compared to the thickness of the frame.

15         So unless the Court has any further question, that's

16   what I have on "face."

17              THE COURT:  Let's go on to "cells."

18              MR. JENNINGS:  Okay.  So our Slide 10 sets

19   forth the parties' positions on "cells."  And the defendants

20   don't propose a construction for "cells," but actually argue

21   that "cells" renders any claim in which the word appears

22   indefinite.

23         And we submit that "cells," when you read the patent,

24   read the claims, it's clear to one of skill in the art that

25   a cell is consistent with its plain and ordinary meaning of

1    "small enclosed opening or space."

2              THE COURT:  So when I think of cells in this

3    product, my gut reaction is it's the little holes.

4              MR. JENNINGS:  And that's what the patent

5    says, that's what the patent discloses, and when you read

6    the claims, there is no other way to read the claims.

7         Defendants focus on the word "cells" in the abstract

8    and try to manufacture an invalidity argument to basically

9    knock out virtually every claim of the two patents based on

10   this argument that the word "cell" is indefinite, but they

11   never really actually address the language of the claim as a

12   whole.  And after all, that's what the argument is, they are

13   saying the claimed invention is invalid for indefiniteness

14   based on the word "cell."

15        And so on our Slide 11, if you look at some exemplary

16   claims, so Claim 19 of the '098 patent, Claim 19 of the '098

17   patent calls out "a plurality of interconnected cells at

18   least partially defined by a plurality of braces that

19   intersect at corners."  And so if we look at the

20   specification, the braces are the sides of the openings, and

21   the claim says "the interconnected cells are at least

22   partially defined by a plurality of braces that intersect at

23   corners."

24        And, you know, I was thinking about this over the

25   weekend, Your Honor, and I tried to illustrate it, and I've

1       got some demonstrative things here.  And I was thinking we

2       agree that braces are a rod or a strut; right?  So I've got

3       some wooden pieces of what could be a curtain rod or

4       something.  And if we think of braces being joined at a

5       corner and defining the interconnected cells, there's no way

6       that interconnected cell can be anything other than an

7       opening, and its entirely consistent with the specification,

8       and we'll get to that.

9            So Claim 21 of the '924 patent calls out "a plurality

10      of interconnected cells that form a tessellation of

11      openings," again, consistent with cells being openings.  And

12      then it goes on in the next paragraph, "wherein a perimeter

13      of each of a majority of openings of the tessellation of

14      openings is at least partially defined by three or more

15      braces."  And, again, the specification talks about the

16      braces being joined at corners, defining the cells or

17      openings.

18           And then on our next slide, Slide 12, I want to focus

19      the Court's attention on the left side of that slide.  The

20      specification says "As illustrated in Figures 2 and 3, one

21      or more of the openings 18, for example cells,

22      can have a perimeter which includes a plurality of sides,

23      for example, braces 42 and corners 46."

24           So "cells" is an example of an opening for the

25      specification.  It's shown in the figures.  It's consistent

1    with the language of the claim as a whole, and we can't

2    just, you know, pluck a word out of a claim and argue that

3    that word is indefinite without considering the full scope

4    of the claim and the claim language as a whole.

5         And so we cited the Court a number of cases in our

6    response brief at Page 6, that you have to address the claim

7    language as a whole in addressing indefiniteness, and the

8    examiners themselves are instructed to do so per the

9    M.P.E.P., and defendants fail to do that.

10        And "cells" are the openings in this device.  Now,

11   they take -- they call us out for saying they are small

12   openings.  And I think in the context of the patent,

13   plainly, the patent is designed and the invention is

14   designed to screen things from the urinal drain and to allow

15   urine to go through, and inherently it's going to be small.

16   And so we think the plain and ordinary meaning of "cells"

17   would be sufficient for the jury.  But if we are going to,

18   you know, put a finer point on it, it's a small opening

19   basically as we proposed.

20             THE COURT:  Steven, you've been accused of

21   plucking.  How do you respond?

22             MR. HILL:  I didn't pluck, Your Honor.  It was

23   in the specification the whole time in Column 5.  In Column

24   5, if the Court will turn to our Slide 12, you will see that

25   "cells," according to the specification, are not limited to

1    little holes, but are also can be solid cells.  And if you

2    look at the frame on the left-hand side of that slide and

3    you look at the perimeter on the lower half of the screen,

4    you'll see a plurality of interconnected cells that is

5    formed by alternating solid and open cells.

6         Now, it may be -- you know, the Federal Circuit has

7    said, look, the fact that you can ascribe a meaning to a

8    term doesn't save it from the indefiniteness inquiry.  But

9    the question is when you --

10             THE COURT:  Sorry.  The reporter lost you for

11   a second.  I was helping her out.

12             MR. HILL:  Oh.  No problem.  Thank you,

13   Your Honor.

14        Yeah.  My point here is that while openings

15   certainly -- small openings certainly can be consistent with

16   cells in the intrinsic evidence, they are not exclusively

17   consistent with cells in the intrinsic evidence because the

18   patent contemplates solid cells as well as openings.  And

19   when you read further in the patent, the description of

20   these cells, there is no size, no specific boundaries

21   relating to size, material, shape, and, in fact, it says it

22   can be any of those.

23        So when it says that it can be both open and closed,

24   now you're talking about cells being used in the patent in a

25   way that is not consistent with a basic dictionary

1    definition usage or technical dictionary definition usage.

2    It is what the Federal Circuit described in *Interval*

3    *Licensing* as, at best, muddled, and that's how we see this.

4    To do what Fresh's asking you to do and restrict cells to

5    only the open cells that are described in the specification

6    is to violate what Mr. Jennings just called when we were

7    arguing over "face," the cardinal rule that you don't

8    construe a claim term more narrowly than all of its

9    embodiments.  That's a cardinal sin of claim construction,

10   is to limit a term based on one disclosed embodiment and

11   ignore all of the other embodiments that are inconsistent

12   with the proffered construction.

13        If you look at Slide 14, Slide 14 shows that not only

14   are little openings described as cells 18, but there are

15   references to cells that have sides and corners, and the

16   sides are solid.  And that would be shown, for example, in

17   the Number 2; right?  And then you have interior cells like

18   Number 3 that are solid hexagons, who have perimeter cells

19   at Number 4, also hexagons.  And I might add, these

20   hexagons, they have sides and corners.  If you refer to the

21   portion of the '098 patent that is shown in Fresh's slide

22   presentation at Slide 12, this becomes important because the

23   language of the claim is "a plurality of interconnected

24   cells."  The only portion of the specification that

25   describes what a plurality of interconnected cells is is

1      Column 3, Lines 27 through 40.

2           So what it says an interconnected cells is or

3      interconnected cells are is each cell has to have a

4      polygonal shape, sides and corners.  And you can look at the

5      embodiment of Figure 2, and you can see that both the both

6      interconnected solid cells and open cells, they each have a

7      polygonal shape, they're hexagonal, they have sides, and

8      they have corners.

9                   THE COURT:  She lost you after "they have

10     sides and they have."  They have what?

11                   MR. HILL:  Corners.

12                   THE COURT:  Corners.  Thank you.

13                   MR. HILL:  No problem.

14           And then if you look down farther in that same

15     paragraph on Fresh's Slide 12, it says that in some cases,

16     each of the interconnected cells shares at least one side

17     and at least one corner with another interconnected cell.

18     And, again, you can see, looking at number -- looking at the

19     cells along the perimeter of the lower half of the preferred

20     embodiment, that each of these solid cells and opening

21     cells, they have sides.  They have corners that are

22     connected between the two of them.

23           So the idea that is rampant in Fresh's argument is

24     that plurality of interconnected cells, as used in Claim 19,

25     excludes any solid cells, and that we don't see that to be

1      the case.  If you look at our Slide 19, you can see where on

2      the fourth limitation after the preamble, it says "a

3      plurality of interconnected cells," and if you look at the

4      highlighted solid cells with the open cells in between them,

5      that is an example of a plurality of interconnected cells.

6      The language even goes on to specify that the plurality of

7      interconnected cells comprises both a plurality of perimeter

8      cells and a plurality of interior cells.

9           Now, on the lower half of the perimeter, none of the

10     open cells are actually connected to each other.  They are

11     only connected to solid cells.  So the perimeter cells are

12     contemplating that they can be open and solid cells

13     interconnected to each other.

14          The fact that the language of the claim also says "at

15     least partially defined," the plurality is at least

16     partially defined by braces that intersect at corners; but

17     those braces are intersecting at corners of solid cells,

18     hoping to define the plurality of interconnected cells.  So

19     there's no contradiction there.

20          In their brief, they argue that the plurality of

21     interior cells language mandates that we're only talking

22     about open cells; however, that argument completely fails to

23     account for the fact that the claim also refers explicitly

24     to these perimeter cells as being part of the plurality of

25     interconnected cells.  And so for that reason, the claims do

1    not mandate that a cell is an open cell as opposed to a

2    solid cell; that it's the intrinsic evidence viewed as a

3    whole contemplates it.

4         There is no lexicography.  There is no special

5    definition of cell anywhere in the patent.  Both

6    embodiments, both open and closed cell are contemplated.

7    There is no language of disclaimer in this patent.  Those

8    are high bars.  The Federal Circuit case law has

9    intentionally said that lexicography and disclaimer are high

10   bars.  They are not met.

11        And we show in our brief that notwithstanding their

12   expert's suggestion that the phrase "solid cell" is somehow

13   a coined term that's unique, that in actuality solid cell is

14   terminology that was used in 650 patents that preceded the

15   '098 patent, including a '962 patent that we showed in our

16   brief.  So the expert analysis of the issue really is just

17   an attempt to contradict certain parts of the intrinsic

18   evidence.

19        The dictionary definitions that are being relied upon,

20   the Federal Circuit has been clear that if they are not

21   consistent with the entirety of the intrinsic evidence, then

22   they "fly in the face of the patent disclosure," and they

23   are "undeserving of fealty," and that's the *Renishaw* case

24   that we cited in our brief, as well the *Nystrom* case from

25   the Federal Circuit from our brief.  And so for those

1   reasons, because of the way that the drafter described

2   "cells" in the patent, he described open and solid cells;

3   but in the claims, he didn't claim "open cells."  Instead,

4   he claims "cells," and that is what gives rise to the

5   indefiniteness, because it's not clear to a person of

6   reasonable skill in the art that that term "cell" mandates a

7   limitation that it be only an open cell.

8              THE COURT:  So tell me whether one could read

9   this and the word "cell" would cover or assume to be an

10  opening; if you use "solid cell," it's a closed opening or a

11  closed cell; if you use "perimeter cell," you know where its

12  location is in the product.  Is there a way that you can

13  make it consistent; in other words, the phrase or the

14  adjective either describing the shape or the location, or

15  whether it's solid helps identify what you're talking about?

16  But generically speaking, a "cell," everyone understands

17  what it is.  And in this product, it is all those openings,

18  whether they are open or closed, or located on a perimeter,

19  or whether they are a particular shape, et cetera.

20         What's wrong with what I just said?

21             MR. HILL:  Well, fundamentally, the way that

22  "cell" is used in the intrinsic evidence does not comport

23  with the plain and ordinary meaning from dictionary

24  definitions and that jurors would bring in.

25         I have no problem accepting in the abstract that a

1    dictionary definition of "cell" as a small opening would be

2    correct.  The problem comes when the intrinsic evidence

3    contradicts that narrow of a construction by adding the idea

4    of these solid cells.  At that point now to give a plain and

5    ordinary meaning base construction is essentially to elevate

6    a dictionary definition type of understanding of what a cell

7    is over the embodiments described in the patent

8    specification, which is the exact -- I mean, that stands

9    *Phillips* on its head, because what *Phillips* said is you do

10   exactly the opposite:  You derive the specification -- or

11   you derive the meaning from the specification, which is

12   often the best source of information about what a term

13   means, and to the extent that the dictionary definitions are

14   to the contrary, you set those to the side.

15                 THE COURT:  Well, let's hear from. . .

16                 MR. JENNINGS:  Your Honor.

17                 THE COURT:  Yeah.  One second, Joe.  Talk to

18   me a little bit about that this apparent contradiction

19   between opening and solid.

20                 MR. JENNINGS:  Yes.  And I want to start with,

21   first, going back to the language of the claims.  And

22   focusing on Claim 19 first, it's "a plurality of

23   interconnected cells at least partially defined by a

24   plurality of braces that intersect at corners."  And so if

25   it's solid, it's not being defined by a brace, which is a

1   rod or a strut that intersects at a corner.  And the

2   patent, as we talked about, shows that "cells" is an example

3   of an opening, an opening, for example, cells.  That's on

4   our Slide 12 from the specification, Column 4.

5       And then if we go to the portion of the specification

6   that the defendants rely upon, and this is in our Slide 15,

7   where the specification does talk about the solid portions

8   and uses this term "solid cells 19," but those "solid cells

9   19" are not defined by braces that intersect at corners.

10  And as we explained in our briefing, as our expert also

11  explained in his declaration, that's a coined term that the

12  applicant used.  When "cells" is used alone, it's referring

13  to an opening.  "Cells" is used alone in the claims, and the

14  cells in the claim, for example Claim 19, are defined by

15  braces that intersect at corners, consistent with an

16  opening.  But in the specification here, the applicants use

17  this term looking for some way to refer to the solid

18  portions and use the term "solid cells."

19      Now, we're not looking to rely upon lexicography for

20  interpretation of the word "cells" standing alone.

21  Defendants acknowledge that the plain meaning of cells

22  standing alone is a small opening.  The specification refers

23  to cells standing alone as an opening.  The example shows

24  cells that are openings.  Now, even in Figure 3 they

25  highlight some perimeter cells that are solid portions.  But

1    there's also the other side of that same figure where all

2    those perimeter cells are open.  So in this particular

3    example, or in this paragraph of the specification, the

4    applicants are using this two-word term, which is sort of a

5    contradiction of terms, if you think of it as a not only

6    cells are open, and then it applies the adjective "solid" to

7    make a two-word term that is sort a contradiction.  And we

8    pointed out in the *AIA Engineering* case to Your Honor about

9    the Federal Circuit construing a term consistent with

10   another term to avoid this sort of contradiction.

11        And so the applicant is using contradictory words here

12   in a coined fashion to refer to the solid portions.  But if

13   you look at the claims, Claim 19, the cells there in the

14   claim are defined by braces that intersect at corners.

15        In the '924 patent, the cells form a tessellation of

16   openings, "A plurality of interconnected cells that form a

17   tessellation of openings."  So we got to look at the claim

18   language.

19        And then also, if we look at Claim 21, Claim 21 also

20   refers to, in the third paragraph and then at the end of the

21   claim, "a solid portion positioned between at least some of

22   the openings of a tessellation of openings."

23        Now, if the applicant was using the word "cells" in

24   the claims, you would have expected the applicant to say

25   "We're uncertain if the interconnected cells are solid

1    cells," but, no, the applicant didn't say that.  The

2    applicant referred separately to "solid portion," not using

3    its coined term from the specification of "solid cells."  So

4    the claims are consistent with the cells, as claimed, being

5    openings.

6         And the defendants provided some search results in

7    their response, that apparently there are 600 patents where

8    the word "cell" comes after the word "solid," but we have no

9    idea what the context of that is, and we don't try to

10   interpret a word in one patent because of what might appear

11   in another patent.  We don't even know what those patents

12   are or what they could possibly be referring to.

13        But it's pretty plain and clear that in this patent,

14   that solid cell is a coined term used differently than what

15   "cell" is used in the claims themselves.

16             THE COURT:  We can segue right into

17   "tessellation of openings," if you wish.  I don't know if

18   there is anything more to say on this topic, but, Steven, if

19   you do, you can.  If not, why don't you go first on

20   "tessellation of openings."

21             MR. HILL:  Okay.  Well, actually if I may make

22   a short remark to "closed cells" that transitions right into

23   the "tessellation of openings" because I've already

24   addressed Claim 19.  It doesn't say that it is purely

25   defined by the braces.  It says that the plurality of

1    interconnected cells is at least partially defined to show

2    that there is nothing in Claim 19 that excludes a plurality

3    of cells, that includes a plurality of interconnected

4    perimeter cells, that includes some solid cells, and I won't

5    belabor that point.

6         Mr. Jennings indicated that there was a reference in

7    Claim 21 of the '924 patent, which is shown on their Slide

8    11, that the interconnected cells form a tessellation of

9    openings, and that is true.  The claim also says "solid

10   portion."  The question is why not say "solid cells" there?

11        If you look at Column 5, Lines 10 through 12, it

12   equates solid portion.  It uses the language of "solid or

13   closed portions" in connection with the description of

14   "solid cells."  So there's no basis for drawing a

15   distinction between a "solid portion" and a "solid cell"

16   because the terms are used interchangeably in the

17   specification.

18        The "tessellation of openings," we really haven't

19   decided what a "tessellation of openings" is referring to

20   yet.  If a "tessellation of openings" is referring to, as

21   plaintiffs suggest, an arrangement of openings that are

22   closely fitted together, then, again, there's nothing in

23   this claim that excludes some solid cells from being a part

24   of that plurality of interconnected cells.  Because if you

25   look at, for example, the alternating open cells and closed

1    cells on the perimeter of Figure 2, would we not agree that

2    those openings are closely fitted together, even though they

3    may not be directly connected to one another and have a

4    single solid cell in between them?  I would suggest that the

5    contrary is true.  And if you read the claim language that

6    continues on Claim 21, it talks about the perimeter of each

7    of a majority of openings of the tessellation of openings

8    being partially defined by three or more braces.  Again,

9    that leaves room for the possibility that the minority of

10   the plurality of interconnected cells can still be solid

11   cells.

12        On "tessellation," the difference here, if I could

13   summarize how I see Fresh's argument, is that they've used a

14   geometric term in the claim, but they don't want a geometric

15   construction of the term.  Instead, they want a construction

16   of the term that basically any urinal screen is going to

17   satisfy.  So they propose "an arrangement of openings

18   closely fitted together."  Well, what urinal screen is not

19   going to have multiple openings on it?  And Mr. Jennings has

20   already conceded that because we're talking about screens

21   that have to fit into a urinal, they are necessarily small.

22   So because they are small, those openings are going to be

23   closely fitted together under any reasonable usage of the

24   term "closely fitted," I would think.

25        And so this is really not much of a construction at

1    all.  It's really not more of a limitation than just having

2    urinal screen in the claim, which is already in all of the

3    claims that tessellation and tessellation openings appear.

4         On the other hand, if you look at our Slide 21, this

5    is the dictionary definition that we took from Fresh's

6    production of dictionary definitions for claim construction.

7    And, of course, hexagons are known in geometry.  In the

8    world of geometry, hexagons are know to be an example of a

9    polygon that will tessellate.  And by "tessellate," what I

10   mean is they can hypothetically be interconnected to one

11   another on all sides expansively to infinitely cover a

12   single geometric plane.

13        Now, we know that that is a definition or a

14   construction that Fresh is criticizing in their slide

15   presentation throughout as being too abstract.  But if you

16   look at Claim 22, it's really not that abstract because it's

17   already happening in the screen itself.  Figure 3 shows

18   these interconnected hexagons, and they are extending out in

19   every direction of the plane.  All "tessellate" means is

20   that that could continue ad infinitum, and that is exactly

21   consistent with what mathematical and geometrical sources on

22   tessellation say it is.

23        I want to skip ahead to our Slide 24 because these are

24   all examples of prior art screens that we identified in our

25   invalidity contentions.  And I'm not sure what the basis

1    would be under Fresh's view of tessellation as "an

2    arrangement of openings closely fitted together."  All of

3    these show openings on a urinal screen.  The only one of

4    these that Fresh admitted showed a tessellation or a

5    tessellation of openings is the one on the far right.

6         So what I would like to understand from Mr. Jennings

7    is what is the basis under Fresh's proposed construction of

8    having these openings fitted together in a small space, what

9    is the basis for saying that these prior art screens are not

10   all meeting that construction?  My concern is that "closely"

11   may be a weasel word that the plaintiffs intend to try to

12   use to somehow say that certain urinal screens with multiple

13   openings are tessellated and others are not.  If we can get

14   past that, then maybe we'll be able to reach an agreement

15   relating to the construction of this term.

16              THE COURT:  Well, let's find out.  What's

17   wrong with the dictionary definition, Joe?

18        Joe, you are muted.  Sorry.  We didn't hear a word you

19   said.  I'm sure it was eloquent, but we missed it.

20              MR. JENNINGS:  Okay.  All right.  So our

21   proposed construction comes from the dictionary, Exhibit 10

22   that we cited, "an arrangement of shapes closely fitted

23   together," and then the dictionary went on, it says

24   "especially polygons in a repeated pattern without gaps or

25   overlapping," and we didn't view the "especially" as really

1    defining.

2          But the construction that they propose isn't much

3    different.  "Closely" comes right from the dictionary

4    definition of a tessellation.

5          Their suggestion that their prior art is "closely

6    fitted together," well, maybe that's an issue of fact for a

7    jury to decide.  We don't need to construe the claims to the

8    nth degree so that there is ultimately no fact issue for a

9    jury to decide when comparing the claims to the accused

10   device or the prior art.  And so I think the parties'

11   proposed constructions are fairly close.

12         Their infinite geometric plane just seem to us

13   abstract.  We're talking about an actual physical device.

14   And their proposal that it be just a few repeating shapes

15   also is contrary to the specifications that says you could

16   use different shapes.

17         But if the Court were to adopt the full definition

18   that we rely upon from Exhibit 10, we wouldn't see a problem

19   with that, especially "a polygon is a repeated pattern

20   without gaps or overlapping," that would be further

21   clarification, really not definitional.  But I don't think

22   it's for us to now find out the examples in the prior art

23   and define the terms so specifically that there is going to

24   be no dispute down the road as a matter of fact whether the

25   claims cover one thing or the other.

1      THE COURT:  So is there something wrong with

2  the Slide 21 of the defendant that uses the definition from

3  Merriam-Webster?  Is that inconsistent in some way or

4  inapplicable in some way?  I'm not sure we could help the

5  jury by defining tessellation as an act of tessellating, but

6  I think the first part might work:  "A covering of an

7  infinite geometric plane without gaps or overlaps by

8  congruent plane figures of one type or a few types."

9      MR. JENNINGS:  And my only comment on that,

10  Your Honor, is an infinite geometric plane -- we're

11  referring to a urinal screen.  So it's the infinite

12  geometric plane -- I think it would be useful to the jury,

13  and I don't know if a jury is going to come into the case

14  knowing what a tessellation is.  I admit, I had to look it

15  up.

16      THE COURT:  You're not the only one.

17      MR. JENNINGS:  And so I don't think, you know,

18  I don't take an issue with it.  I think we're using

19  "tessellation" consistent with its plain meaning.  I think

20  "infinite" might be a little abstract for the jury, and, you

21  know, we take issue with "a few," but it depends on how many

22  "a few" is.  I don't think I see a problem with that either,

23  Your Honor, so if "a few" types would be hexagons,

24  four-sided figures, five-sided figures --

25      THE COURT:  Steven, you agree if we got rid of

1    "infinite," we might have a workable definition?

2              MR. HILL:  I'm sorry, Your Honor, are you

3    directing that to me?

4              THE COURT:  Yes, I was.  Sorry.

5              MR. HILL:  I'm looking at it right now.

6              THE COURT:  Yep.  I can tell.  That's all

7    right.  Take your time.

8              MR. HILL:  We had addressed -- so we had

9    addressed the issue -- we understood the abstractness issue

10   with infinite, and so the way we addressed it in our

11   proposed construction was to say "a pattern capable of

12   covering an infinite geometric plane"; i.e., you can easily

13   explain to the jury that these are interconnected hexagons

14   in the preferred embodiment.  They could go on infinitely in

15   any an all directions.  That pattern is capable of

16   manifesting the coverage of the entire infinite geometric

17   plane.  So that's how we have addressed it.

18        I'm just now looking at whether or not taking

19   "infinite" out in the definition on Slide 21 would somehow

20   change the meaning.  I think that works, Your Honor.  I

21   think removing the word "infinite," but maintaining the

22   remaining language would still work.

23        And if I can just comment on something that Mr.

24   Jennings said, I disagree if "closely" can be an issue of

25   fact in this context, because "closely" is a term of degree.

1     And the Federal Circuit has held, with respect to terms of

2     degree, that they need to be capable of construction based

3     on boundaries in the patent, and that is the *Interval*

4     *Licensing versus AOL* case.  So for him to suggest that

5     "closely" could be a weasel word that they would try to

6     argue differentiates some of these small urinal screens that

7     have multiple openings from others is to basically say that

8     my suspicions are correct.  And the construction that the

9     Court is contemplating is a superior construction because it

10    avoids the use of the phrase "closely fitted."

11                    THE COURT:  Closely fitted.

12                    MR. HILL:  I said "closely fitted."

13                    THE COURT:  Right.

14         Okay.  So let's go on to issue -- I think, by the way,

15    we struck a deal on that issue, or close to one.

16                    MR. JENNINGS:  I think we did, Your Honor.  If

17    I can comment, I think "closely fitted" came from the

18    dictionary as we proposed.  But this dictionary I think just

19    addresses it a different way, "without gaps or overlaps."

20    So "without gaps" is sort of different words capturing the

21    same concept.

22                    THE COURT:  Goes about it differently.  Issue

23    Number 5.

24                    MR. JENNINGS:  Okay.  Issue 5, and this is the

25    parties' positions are set forth on our Slide 18.  And this

1    is the term "wherein at least some of the plurality of

2    interconnected cells comprise a polygonal shape."  And this

3    affects one of the many claims in the patent, but it's Claim

4    27 of the '098 patent.

5         And it's our position that one of skilled in the art

6    is going to read this phrase to implicate individual cells

7    rather than a collective cells in the entire urinal screen.

8         And as we explained in our brief, the defendant had an

9    expert witness who tried to imagine various scenarios, and

10   one of those was he picked the center point of a bunch of

11   openings in a device that he imagined, and he connected

12   those center points with straight lines, and he said, "Well,

13   I don't know if the claim covers this, or it actually covers

14   a situation where an individual opening is polygonal shape."

15        Now, by definition, if someone is going to connect

16   various points with straight lines, they are going to create

17   a polygon, and so that's sort of a meaningless hypothetical

18   that he came up with.  And we submit that it's clear from

19   the specification that what this clause is referring to is

20   the shape of the individual cells or openings being

21   polygons, and in particular, the preferred embodiment, they

22   are hexagons.

23        And when the patent wants to talk about the shape of

24   the urinal screen as a whole, it says that, and we've quoted

25   that from the specification here.  The Screen 10 has a

1   polygonal, elliptical, circular or other overall shape.

2          So this clause in Claim 27 is not referring to the

3   shape of the urinal screen as a whole; it's referring to the

4   individual cells having polygonal shapes.

5          And with that, I will turn it to my friend for the

6   defendant.

7               MR. HILL:  Thank you.  Your Honor, if you

8   could look at Slide 26 of the defendant's slide.  So Claim

9   27 appears as a dependent claim to Claim 19.  Claim 19 uses

10  the phrase "the plurality of interconnected cells."  And it

11  says that the plurality of interconnected cells includes a

12  plurality of perimeter cells and a plurality of interior

13  cells.  There is nothing in that that precludes the

14  plurality of interconnected cells from being all of the

15  interconnected cells of the screen.

16         And in addition to that, if you look at Claim 25, 26

17  and 28, all of those claims use the word "each" in relation

18  to cells.  But when you get to Claim 27, it doesn't use

19  "each," it uses "at least some of the plurality comprise a

20  polygonal shape."

21         And for the designer, the reasonable designer who's

22  attempting to understand what designs can be created that

23  would not infringe Claim 27, there is a reasonable zone of

24  uncertainty in the use of this phrase "at least some of the

25  plurality of" as it relates to a polygonal shape, because

1    both the individual approach -- turning now to Slide 27 of

2    our slide deck, both the approach of evaluating an

3    individual cell and inquiring as to its shape, or looking at

4    a plurality of cells as a whole and whether they

5    collectively form a polygonal shape, that's the zone of

6    uncertainty here.

7         I'm not saying that Mr. Jennings is wrong for saying

8    that it's reasonable to believe that this construction of

9    looking at cells individually, I think that is reasonable;

10   but it's also reasonable to look at the plurality of those

11   cells as a collective, and whether the collective comprises

12   a polygonal shape.  And since the claim doesn't use "each"

13   the way it does in the other claims in order to make it

14   clear that it's the individual versus the collective,

15   there's simply not a reasonable basis for expressing that

16   one construction is the correct construction to the

17   exclusion of the other.

18              THE COURT:  You want to enter a zone of

19   uncertainty, Joe?

20              MR. JENNINGS:  Well, I don't see the zone of

21   uncertainty.  I'm looking at their Slide 27 where they've

22   called out the individual cells, and they've contrasted that

23   to the shape of the urinal screen as a whole.  And I think

24   the patent makes clear that if it wants to refer to the

25   shape of a urinal screen as a whole, it calls it the "urinal

1       screen," and it says that has a polygonal shape.  But when

2       it is talking about the cells, he's talking about the cells

3       and the cells have a polygonal shape.

4            And with their Slide 26, Claims 25 and 26 talk about

5       first cell, second cell and cell each comprising of

6       polygonal shape.

7            And then Claim 27 comes at it a different way and it

8       doesn't call out first, second and third.  It just says "at

9       least some of the plurality comprise a polygonal shape."

10           So the applicants are claiming their invention in a

11      variety of ways, as applicants often do, to make sure they

12      fully cover it and protect what they've invented as best

13      they can.

14           So 27 just comes at it in a slightly different way

15      than 25 and 26, but I don't think it's creating uncertainty.

16      We can't (phonetic) tell whether it's talking about the

17      urinal screen as a whole, for example, versus the cells

18      themselves, as he's pointed out.

19                THE COURT:  Let's talk about "posts" next.

20      And if you want to reply and go first on post, Steve, you

21      can.

22                MR. HILL:  Gladly.  Just a brief reply.

23      Looking at Slide 26 of our slide deck, if I listen to Mr.

24      Jennings' argument about differentiating Claim 25 and 26

25      from Claim 27, I notice that he did not mention Claim 28,

1    which specifically says "wherein each of the plurality of

2    interconnected cells comprises a polygonal shape."  That is

3    clearly directed to the individual cell-by-cell approach

4    that he is calling out.  But, again, the fact that Claim 28

5    is there using that individual approach only further feeds

6    uncertainty relating to whether Claim 27 is intended to

7    refer to a cluster of interconnected cells potentially

8    comprising a polygonal shape, and that's the zone of

9    uncertainty that we're pointing to.

10        Now, with respect to "post," again, I think this may

11    be one where, with some candid argument, we may be able to

12    reach an agreement similar to the way that the argument

13    proceeded with "tessellation."  Because the way we see it, a

14    "post" is either a "protrusion," broadly speaking, from the

15    surface, or it's an "elongate element," but we have to know

16    what an "elongate element" actually means -- and we can get

17    into that in a second -- or it's just indefinite because it

18    is utterly unbounded in the patent specification.

19        Now, we disagree with the notion that plain and

20    ordinary meaning is accurate here because we don't agree on

21    what the plain and ordinary meaning of "post" is because our

22    construction of the "protrusion" we believe to be consistent

23    with plain and ordinary meaning.

24        But the key here, I think we could agree to "elongate

25    element," if we understood what the 'elongate element"

1    really covers.  And, clearly, if you look at Slide 30 and

2    you look at the embodiment in Figure 5, to the extent these

3    are "elongate elements," that they are long in that their

4    length is far in excess of their width.

5        But when you get to our Slide 31 and you read about

6    "posts" in the specification, "post" is much harder to pin

7    down because there is no starting point.  There is no

8    baseline measurement for a "post."

9        In Column 6, it talks about how some posts can be

10   shorter than other posts, and at Line 9, it says "at least

11   1/3 shorter than one or more of the other posts."

12       The problem is you don't know what the starting point

13   baseline is for the post.  If the starting point of your

14   post is, you know, .9 inches long and .6 inches wide, then

15   taking a third off of that length has now made your length

16   and your width even, and you have a block rather than an

17   elongate element that is stretched.  So the specification is

18   problematic in that it doesn't really give boundaries.

19       Looking at Slide 32, there are numerous examples of

20   posts in the prior art, and we show some of them here that I

21   think all parties agree these are posts.  All of them are

22   much longer than they are wide, when they are measured from

23   the base to the top of the post.

24       This is what I will refer to as a fence post

25   construction of post.  This is where you analogize a post in

1     this sense to, like, how a fence post is.  It's much longer

2     than it is wide.

3          But if you turn to Slide 33, this is where -- this is

4     where I think their construction is potentially problematic

5     without further explanation of what an "elongate element"

6     is, because they have said that in looking at Slide 33 and

7     then at Slide 34, that the elevated risers on the Z Screen

8     are not posts.  They denied in their response to our

9     invalidity contention that this is a teaching of posts on a

10    urinal screen, even though these elevated risers are clearly

11    for support of the urinal screen and they protrude downward

12    from the urinal screen.

13         So all we can say in response to that is that we

14    believe that they must mean that the "elongate element" is

15    elongated measured from the base of the urinal screen to the

16    top of the post is significantly longer than it is wide.

17    And if you look at Slide 35 of our presentation, this is why

18    we need to know the answer to that question, because this

19    claim becomes easy to design around, if a "post" is

20    construed as an elongate element where length is

21    substantially longer than width, measured from the base of

22    the screen to the top of the screen, because at that point,

23    all you have to do is take the post off and replace it with

24    a rectangular fin.

25         And I suspect that what Mr. Jennings is going to say

1    is "elongate element" doesn't need explanation; a jury can

2    just rely upon the plain and ordinary meaning.  But the

3    point is, we don't agree on what the plain and ordinary

4    meaning is.  And under the *02 Micro International* decision,

5    when the parties don't agree what the plain and ordinary

6    meaning of a term is, it becomes incumbent on the Court to

7    clarify so that we have a fixed target of when we are trying

8    the issue of infringement and validity.

9            THE COURT:  Joe, you like plain and ordinary

10    meaning?  And if you don't, what's wrong with "protrusion,"

11    if there is no agreement on it?  Why doesn't that work?

12            MR. JENNINGS:  Because you are just changing

13    one word to another.  And "post," I mean, that's not a -- I

14    had to look up "tessellation."  I didn't have to look up

15    "post."  I think the jury is going to come in knowing what a

16    "post" is.  And I was thinking about this, that, you know,

17    you have a baseball.  The seams on a baseball are

18    protrusions, but no one in their right mind are going to

19    call them "posts."  So what defendants urge with that

20    construction is just changing one word to another, and the

21    applicants chose "post" in defining their invention here,

22    and I think the jury can apply the plain and ordinary

23    meaning of "post" based upon their, you know, common

24    experience and wisdom and determine whether or not something

25    is a post or not.

1          You know, the ever slightest texture would be a

2     protrusion, and that's just not the word that the applicants

3     chose to define their invention.

4               THE COURT:  In the context of this product,

5     though, isn't "protrusion" a synonym for "post"?  I know

6     your baseball analogy, I understand that.  But in the

7     context of all that we have with the urinal screen, isn't it

8     merely a synonym for post?  And maybe that cuts both ways.

9     Maybe that means the plain and ordinary meaning is

10    sufficient.  Or does "protrusion" with this product give it

11    a little more definition that isn't objectionable?

12              MR. JENNINGS:  I don't think it helps us to

13    change "post" to "protrusion."  I mean that is anything ever

14    so slight a texture on a flat surface would be considered a

15    protrusion.  And going back to my example, you know, you

16    look at the seams on a baseball, they certainly protrude,

17    but you wouldn't look at it and say they are posts.

18         And what's the purpose of the post here?  They extend

19    from the frame; they elevate that frame above the surface of

20    the urinal; and they help reduce the splashing.  So the

21    fluid goes through the frame and interacts with those posts

22    and splashing is reduced.  So we think we're better off just

23    saying plain ordinary meaning of post.

24         But if we want to put a further point on it, it is an

25    "elongate element," and the plain meaning of "post" is

1     something that supports.  A fence posts supports a fence.

2     If you're framing a house, the post supports the structure

3     of the house.  And the jury is going to know what a post is

4     and be able to distinguish that from a texture or something

5     that might just be considered the ever so slightest

6     protrusion of a flat surface.

7                    THE COURT:  So "elongated" means "protrusion"?

8                    MR. JENNINGS:  It's a lengthwise longer than

9     wide element, and it extends from the flat surface in a

10    manner that can support the frame above the surface of the

11    urinal, to describe it.  I don't know if that's definitional

12    or not, Your Honor, but. . .

13                   MR. HILL:  Your Honor, I don't mean to admit,

14    but I think we just hit a point of agreement.  We will agree

15    to the construction of the "elongated element," provided

16    that "elongated element" is explained as being longer,

17    measured from the base, than it is wide.

18        That means that they can -- if they can prove it on

19    Slide 34, they can prove that those protrusions are wider

20    than they are long, then they would be able to argue their

21    point that this is not invalidating prior art because it

22    doesn't actually teach posts on both sides of the screen.

23    But on our Slide 35, they clearly are conceding that these

24    wide longer are not posts because they would not be elongate

25    elements the way that Mr. Jennings just articulated what the

1    fence post notion of what a post is.  So we're good with

2    that.

3                    THE COURT:  So we're going to measure post by

4    elongated and further define what elongated is.

5                    MR. HILL:  Safe to say it is longer, when

6    measured from the base to the tip, than it is wide.

7                    THE COURT:  Your comment, Joe?  I can see that

8    you're trying -- that's fine?

9                    MR. JENNINGS:  And it serves as a support,

10   which is what a post does.

11                   MR. HILL:  We're fine with that too.

12                   THE COURT:  So how does this read?

13                   MR. JENNINGS:  An elongate element with a

14   length greater than width that serves as a support.

15                   MR. HILL:  A length greater than width

16   measured from the base, or measured from the surface of the

17   screen.

18                   MR. JENNINGS:  I'm not quite sure what the

19   "measured from" means.

20                   MR. HILL:  Because otherwise you could

21   argue -- you could -- you have to have a baseline

22   perspective for the measurement so that the juror knows what

23   is longways and what is widthways.

24                   THE COURT:  I'll tell you what, why don't you,

25   when we're done, have a conversation and see.  I think

1      you're awfully close to agreeing, if not agreeing.  Have a

2      conversation and let me know whether I take this off the

3      table along with our prior agreement.

4                      MR. JENNINGS:  Will do, Your Honor.

5                      THE COURT:  Thank you.  We are now at Issue

6      Number 8.  Our reporter will happy to know this is our last

7      one.

8                      MR. JENNINGS:  Did we skip 7?

9                      THE COURT:  Oh, did I skip 7?  Yes.

10                      MR. JENNINGS:  And, Your Honor, this is very

11      much like the one we just discussed.

12                      THE COURT:  Right.

13                      MR. JENNINGS:  And it affects a single claim.

14      And the question is:  Is this clause addressed to the

15      openings, or some collective set of the openings or cells?

16      And we submit that the plain -- the jury can apply its plain

17      and ordinary meaning, and that the language is directed to

18      the specific openings themselves, rather than some

19      indeterminant collection of openings.

20          If we look at the context of where this clause comes

21      from, the claims says "a number of said plurality of first

22      posts and a number of said plurality of second posts are

23      positioned along a perimeter of at least some of the

24      plurality of openings, so as to surround the at least some

25      of the plurality of openings."

1          And if you look at the specification, it's clear what

2     the applicant is talking about here is the posts are

3     surrounding the individual openings.

4               THE COURT:  Go ahead, Steve.

5               MR. HILL:  Thank you, Your Honor.  Simply

6     stated, we view this as, again, a Hobson's choice for a

7     reasonable designer reading this language.  It does not say

8     "each of the at least some of the plurality," and because it

9     does not specify the individual, it creates the dilemma that

10    we point out in Slide 37 as to whether a reasonable designer

11    would know which of the two would avoid infringement.

12         The simple fact is that while there is support -- and

13    I'm not arguing that Mr. Jennings' position or that of his

14    expert in defending the individual approach is unreasonable.

15    I'm pointing out that there is a countervailing approach.

16    Looking at the yellow marking the "perimeter of at least

17    some of a plurality of interconnected cells," that is also

18    reasonable.  And a reasonable designer really is placed into

19    a Hobson's choice here in terms of how to design the wording

20    of this claim ascertaining its proper scope.

21         Their expert in our Slide 38 says that he knows that

22    the individual approach is the correct approach because the

23    patent only uses "perimeter structure" when it's referring

24    to a "single cell," and it uses "perimeter structures" when

25    it refers to "the plurality of openings."  But we show in

1    the passage taken from Column 1, Lines 46 through 56, which

2    is to the left of the expert's report, we show that that's

3    actually not true.  There are many places where it uses

4    "perimeter structure" to refer to one or more of "the

5    plurality of openings," plural.  So that's really of no

6    moment to the analysis, and yet that is the basis for his

7    ability to rule out the reasonableness of the collective

8    approach to the construction of this term because both are,

9    in fact, reasonable.  There is a zone of uncertainty as to

10   which is correct here that sustains a finding of

11   indefiniteness.

12            THE COURT:  So, Joe, talk briefly, if you can,

13   about the significance, if any, between "perimeter

14   structure" versus "perimeter structures."

15            MR. JENNINGS:  Well, that is just an

16   additional observation by the expert.  And I don't think

17   that's a definitive issue to -- or a definitive way to

18   analyze this issue.

19       I think we need to look at the specification as a

20   whole.  And in looking at the specification as a whole, the

21   posts surround the individual openings.  And after all, what

22   are the purpose of the posts?  To support the -- when they

23   are on the bottom, they are supporting the frame above the

24   surface of the urinal, and they're playing a role in

25   reducing the splashing.  And if you're looking at this

1      patent, you're not going to say, "Well, you just put posts

2      on the very outside edge."  And that's what this claim is

3      directed to, because the claim is directed to a urinal

4      screen, and one of the advantages of it is to reduce

5      splashing.  And looking at how the device is structured in

6      the patent, the posts surround the individual openings, and

7      that's what's going to break up the stream as it comes

8      against the surface of the frame.

9                      THE COURT:  Okay.

10                     MR. HILL:  Your Honor, may I briefly respond

11     to that?

12                     THE COURT:  Yes.

13                     MR. HILL:  So "plurality" doesn't necessarily

14     mean the "whole."  That argument is a red herring, because

15     what he's doing is he's equating plurality of interconnected

16     cells with every interconnected cell of the screen and

17     saying it doesn't make sense to put those along the

18     perimeter of the screen.

19          A plurality of interconnected posts could be two cells

20     connected together or three cells connected together.  You

21     could have posts along the outer boundary of a small number

22     of interconnected cells that could still accomplish the

23     purpose of deflecting urine.

24          And the point is that when reading the claim, it's not

25     clear whether that is covered.  Clearly, if you look at the

1     figures, that is covered, because there's posts everywhere.

2         So the alignment of the posts is both around the group

3     of cells and around individual cells, and it is of no

4     assistance in resolving whether the individual or collective

5     approach is correct for this construction.

6             THE COURT:  You want to comment, Joe?  If not,

7     we'll move on to the last.

8             MR. JENNINGS:  No.  I will move on to the last

9     term.  And so our last term, again, it's an argument of

10    indefiniteness, and just to remind the Court that that's a

11    validity argument, and these patents were examined by an

12    examiner who was directed by the Manual of Patent Examining

13    Procedure to examine the claims for definiteness, and the

14    claims were issued and presumed valid.  And very

15    straightforward language in these claims, and yet again, the

16    defendant is proposing hypotheticals and urging invalidity

17    based upon some perceived ambiguity.

18        And if you read the specification, again, for this

19    term, "at least some of the plurality of braces comprise

20    contoured upper and lower surfaces," and that's pretty

21    straightforward language to describe an invention.  The

22    applicant says "some of the braces comprise contoured upper

23    and lower surfaces."  And we submit that that's referring to

24    some of the group of braces, and they have both, a contoured

25    upper and lower surface.

1          And the defendant's propose, "Well, I don't know if
2     some braces can have upper and some braces lower."  Well, if
3     some of your plurality have both upper and lower, that's
4     what this claim is directed to.

5          Now, they pointed out we acknowledged our expert in
6     quoting the specification mistakenly changed "and/or" in the
7     specification to "and" when he was explaining his position.
8     But, to be honest, that highlights the fact that the claim
9     is more specific than the specification.  The claim doesn't
10    say "and/or."  The claim says "contoured upper and lower
11    surfaces."  So at least some of the plurality of braces have
12    these contoured non-planar upper and lower surfaces.  That's
13    from the straightforward language of the claim.

14                    THE COURT:  Okay.  Steve, what's the
15    ambiguity?

16                    MR. JENNINGS:  Steve, you are muted.

17                    THE COURT:  Is he talking?  Yeah.

18                    MR. HILL:  If Your Honor would turn to Slide
19    42 of our slide deck.

20                    THE COURT:  Yes.

21                    MR. HILL:  Ambiguity is that there is not two,
22    but there's actually three interpretations that are in the
23    record relating to what it is that this term is covering,
24    because their expert, Dr. Hurd, actually says that what this
25    means is the construction articulated on the far left of the

1    slide.  But this actually covered that "some of the

2    plurality" here in this context actually just means at least

3    one.  And he says that it's "at least one having an upper

4    and lower surface."  That's not really -- let's put it this

5    way:  If you look at Slide 43 of our slide deck, the fact

6    that the only reference to these "contoured upper and lower

7    surfaces" is saying that the "sides 42" -- which elsewhere

8    "sides 42," that means "braces."  So I'm just going to say

9    these braces have "contoured upper and/or lower surfaces."

10        Now, I appreciate somebody getting called for that,

11   and I'm not suggesting that anybody intentionally

12   misrepresented this language in either Dr. Hurd's

13   declaration or in the brief that Fresh filed.  But Dr.

14   Hurd's declaration in Paragraph 75, he's relying on the

15   "and/or" being "and" to make the point that the construction

16   here requires that a brace have both an upper and lower

17   surface contour.  And the fact that it actually says

18   "and/or" rather than "and" cuts against its position, and

19   counsels, going back to our Slide 42, in support of a

20   construction that can be a collective construction where you

21   look at a group of braces, and if you can find two braces

22   that have contoured upper surfaces and two braces that have

23   contoured lower surfaces, that could theoretically satisfy

24   the claim under that construction.  And there's so little

25   guidance in the specification on this element, that the

1    ambiguity here is even more pervasive than it is with the

2    other claims that have this "at least some of the plurality"

3    language, which to us just seems -- what they're asking the

4    Court to do at the end of the day, they are asking the Court

5    to clarify that "at least some of" really means "each," to

6    clarify that this should have covered individual approach to

7    construction and exclude the collective approach to

8    construction.  But it's black letter law that it's not the

9    Court's role to rewrite otherwise ambiguous claim.

10                   THE COURT:  So, Joe, does the current language

11   cover all three boxes on Slide 42 of defendant, or just the

12   first two boxes?

13                   MR. JENNINGS:  Just the first two.  The claim

14   says "and."  So if the applicant wanted to broaden that

15   claim out to cover the right-hand box, would have claimed it

16   in a different way, you know, the first plurality of braces

17   comprising contoured upper surfaces and a second plurality

18   of braces -- you know, I'm drafting claims on the fly --

19   comprising contoured lowered surfaces.  But, instead, this

20   clause is referring to upper and lower surfaces, and pointed

21   out that our expert misquoted the specification, which is

22   shown in our Slide 22.  And the specification does say

23   "and/or," but the claim says "and."  So the claim is more

24   firmly in support of our position that the claim is

25   referring to the green braces in defendant's slide.

1          THE COURT:  Okay.  I don't know if anyone

2    wants to add to the discussion.  I appreciate your efforts

3    today.  I appreciate the visual aids.  They are helpful.  I

4    think I need to go to the urinal and check it out next.

5          I believe there are two of the issues that have been

6    resolved.  Perhaps you can confirm that with a writing that

7    you either file or somehow bring to our attention, and then

8    we will focus our efforts on the remaining issues that there

9    was no agreement on.

10          MR. JENNINGS:  Will do, Your Honor.

11          MR. HILL:  Yes.

12          THE COURT:  Thank you very much.  Have a good

13    rest of the week.  Enjoy.  Today is the last day of summer I

14    understand.  We're adjourned.

15          MR. JENNINGS:  Thank you, Your Honor.

16          MR. HILL:  Thank you.

17          MR. SILK:  Thank you.

18          (Proceedings concluded at 11:57 a.m.)

19                      -  -  -

20              **C E R T I F I C A T E**

21          I certify that the foregoing is a correct transcript
     of the record of proceedings in the above-entitled matter
22    prepared from my stenotype notes.

23          */s/ Stacey L. Kiprotich*            *11/14/2020*
     STACEY L. KIPROTICH, RMR, CRR            DATE

24

25

**'**

**'098** [13] - 4:17, 5:8, 7:14, 7:23, 10:18, 17:13, 20:13, 22:16, 26:21, 29:15, 43:4
**'924** [3] - 23:9, 33:15, 35:7
**'962** [1] - 29:15
**'elongate** [1] - 47:25

**/**

**/s** [1] - 62:23

**0**

**02** [1] - 50:4

**1**

**1** [5] - 4:9, 5:6, 15:4, 15:9, 56:1
**1/3** [1] - 48:11
**10** [8] - 1:7, 3:1, 19:2, 21:18, 35:11, 38:21, 39:18, 43:25
**10:06** [1] - 3:3
**11** [2] - 22:15, 35:8
**11/14/2020** [1] - 62:23
**11:57** [1] - 62:18
**12** [6] - 23:18, 24:24, 26:22, 27:15, 32:4, 35:11
**120** [1] - 1:20
**14** [2] - 26:13
**14th** [1] - 2:5
**15** [1] - 32:6
**1716** [1] - 1:20
**18** [3] - 23:21, 26:14, 42:25
**19** [29] - 4:17, 4:18, 4:22, 5:22, 6:3, 6:5, 6:21, 6:23, 7:4, 7:13, 7:22, 8:20, 10:20, 13:10, 13:11, 22:16, 27:24, 28:1, 31:22, 32:8, 32:9, 32:14, 33:13, 34:24, 35:2, 44:9
**19-cv-2109** [1] - 3:6

**2**

**2** [5] - 5:7, 23:20, 26:17, 27:5, 36:1
**2020** [2] - 1:7, 3:1
**2040** [1] - 2:5
**21** [9] - 20:13, 23:9, 33:19, 35:7, 36:6,

37:4, 40:2, 41:19
**213-5520** [1] - 1:21
**22** [2] - 37:16, 61:22
**24** [2] - 17:13, 37:23
**25** [4] - 44:16, 46:4, 46:15, 46:24
**26** [9] - 17:13, 20:13, 44:8, 44:16, 46:4, 46:15, 46:23, 46:24
**27** [13] - 17:20, 27:1, 43:4, 44:2, 44:9, 44:18, 44:23, 45:1, 45:21, 46:7, 46:14, 46:25, 47:6
**28** [3] - 44:17, 46:25, 47:4
**29** [1] - 17:20

**3**

**3** [11] - 5:12, 7:12, 15:4, 15:10, 17:13, 20:13, 23:20, 26:18, 27:1, 32:24, 37:17
**30** [1] - 48:1
**30339** [1] - 2:11
**31** [2] - 18:22, 48:5
**32** [1] - 48:19
**33** [3] - 18:22, 49:3, 49:6
**3350** [1] - 2:10
**34** [7] - 18:5, 18:20, 18:25, 21:8, 21:12, 49:7, 52:19
**35** [2] - 49:17, 52:23
**37** [1] - 55:10
**38** [3] - 7:14, 7:20, 55:21
**3:19-CV-2109** [1] - 1:4

**4**

**4** [3] - 9:9, 26:19, 32:4
**40** [1] - 27:1
**419** [1] - 1:21
**42** [6] - 23:23, 59:19, 60:7, 60:8, 60:19, 61:11
**43** [1] - 60:5
**43604** [2] - 1:21, 2:14
**46** [2] - 23:23, 56:1

**5**

**5** [16] - 10:4, 14:6, 16:10, 16:12, 16:14, 17:23, 18:3, 18:6, 18:21, 21:6, 24:23, 24:24, 35:11, 42:23, 42:24, 48:2

**56** [1] - 56:1

**6**

**6** [5] - 14:22, 18:22, 24:6, 48:9, 48:14
**600** [1] - 34:7
**650** [1] - 29:14
**68** [1] - 3:11

**7**

**7** [3] - 17:20, 54:8, 54:9
**75** [1] - 60:14

**8**

**8** [5] - 14:13, 16:10, 18:3, 19:4, 54:6
**800** [1] - 2:10

**9**

**9** [5] - 17:18, 19:11, 20:10, 48:10, 48:14
**900** [1] - 2:13
**92614** [1] - 2:6

**A**

**a.m** [2] - 3:3, 62:18
**ability** [1] - 56:7
**able** [5] - 11:4, 38:14, 47:11, 52:4, 52:20
**above-entitled** [1] - 62:21
**abstract** [6] - 22:7, 30:25, 37:15, 37:16, 39:13, 40:20
**abstractness** [1] - 41:9
**accede** [1] - 7:9
**accept** [1] - 10:20
**accepting** [1] - 30:25
**accomplish** [1] - 57:22
**according** [1] - 24:25
**account** [1] - 28:23
**accurate** [2] - 20:3, 47:20
**accurately** [1] - 14:7
**accused** [4] - 19:21, 19:23, 24:20, 39:9
**acknowledge** [1] - 32:21
**acknowledged** [1] - 59:5
**act** [1] - 40:5
**acts** [1] - 4:16

**actual** [4] - 15:22, 16:2, 16:10, 39:13
**actuality** [1] - 29:13
**ad** [1] - 37:20
**Adams** [1] - 2:13
**add** [4] - 11:3, 13:3, 26:19, 62:2
**adding** [4] - 9:3, 9:18, 31:3
**addition** [1] - 44:16
**additional** [3] - 9:4, 11:10, 56:16
**address** [8] - 9:20, 10:19, 12:25, 13:1, 17:23, 20:10, 22:11, 24:6
**addressed** [6] - 34:24, 41:8, 41:9, 41:10, 41:17, 54:14
**addresses** [1] - 42:19
**addressing** [1] - 24:7
**adequate** [1] - 11:8
**adjective** [2] - 30:14, 33:6
**adjourned** [1] - 62:14
**admit** [2] - 40:14, 52:13
**admitted** [2] - 12:3, 38:4
**adopt** [1] - 39:17
**advantageous** [1] - 15:1
**advantages** [2] - 17:7, 57:4
**advocating** [1] - 4:4
**affects** [2] - 43:3, 54:13
**ago** [1] - 8:14
**agree** [11] - 4:13, 11:22, 23:2, 36:1, 40:25, 47:20, 47:24, 48:21, 50:3, 50:5, 52:14
**agreed** [1] - 3:9
**agreed-upon** [1] - 3:9
**agreeing** [2] - 54:1
**agreement** [6] - 38:14, 47:12, 50:11, 52:14, 54:3, 62:9
**ahead** [4] - 15:21, 16:3, 37:23, 55:4
**AIA** [1] - 33:8
**aid** [1] - 3:14
**aided** [1] - 1:25
**aids** [1] - 62:3
**akin** [1] - 7:22
**alignment** [1] - 58:2
**allow** [1] - 24:14
**alone** [5] - 32:12, 32:13, 32:20, 32:22,

32:23
**alternating** [2] - 25:5, 35:25
**ambiguity** [4] - 58:17, 59:15, 59:21, 61:1
**ambiguous** [1] - 61:9
**amended** [2] - 3:9
**amount** [1] - 8:24
**analogize** [1] - 48:25
**analogous** [4] - 10:18, 11:6, 12:21, 13:8
**analogy** [1] - 51:6
**analysis** [2] - 29:16, 56:6
**analyze** [1] - 56:18
**answer** [2] - 10:21, 49:18
**anticipation** [1] - 10:11
**AOL** [1] - 42:4
**apologies** [1] - 9:8
**apology** [1] - 3:23
**apparent** [1] - 31:18
**appear** [2] - 34:10, 37:3
**APPEARANCES** [1] - 2:2
**appeared** [1] - 7:22
**appellate** [1] - 4:1
**appellate-type** [1] - 4:1
**applicant** [10] - 21:1, 32:12, 33:11, 33:23, 33:24, 34:1, 34:2, 55:2, 58:22, 61:14
**applicants** [9] - 5:13, 5:16, 32:16, 33:4, 46:10, 46:11, 50:21, 51:2
**applies** [1] - 33:6
**apply** [2] - 50:22, 54:16
**appreciate** [3] - 60:10, 62:2, 62:3
**approach** [12] - 45:1, 45:2, 47:3, 47:5, 55:14, 55:15, 55:22, 56:8, 58:5, 61:6, 61:7
**area** [3] - 15:18, 20:17, 20:20
**areas** [1] - 9:9
**argue** [10] - 4:21, 10:13, 12:12, 12:19, 21:20, 24:2, 28:20, 42:6, 52:20, 53:21
**argued** [9] - 5:3, 5:13, 5:16, 5:24, 10:17, 11:6, 12:7, 12:17, 12:20

**argues** [2] - 9:10, 14:1
**arguing** [4] - 3:15, 3:17, 26:7, 55:13
**argument** [23] - 9:12, 9:21, 9:23, 10:1, 10:21, 11:12, 11:18, 13:8, 13:19, 16:20, 17:23, 22:8, 22:10, 22:12, 27:23, 28:22, 36:13, 46:24, 47:11, 47:12, 57:14, 58:9, 58:11
**argumentation** [1] - 11:8
**arguments** [1] - 13:16
**arrangement** [4] - 35:21, 36:17, 38:2, 38:22
**art** [24] - 5:7, 5:17, 6:19, 8:11, 9:24, 10:3, 10:10, 10:18, 12:13, 12:21, 13:9, 13:13, 13:14, 13:20, 21:24, 30:6, 37:24, 38:9, 39:5, 39:10, 39:22, 43:5, 48:20, 52:21
**article** [1] - 8:10
**articulated** [3] - 7:16, 52:25, 59:25
**ascertaining** [1] - 55:20
**ascribe** [1] - 25:7
**assert** [1] - 5:22
**asserted** [1] - 10:21
**asserting** [1] - 5:19
**assertion** [1] - 6:1
**asserts** [1] - 12:19
**assessing** [1] - 19:20
**assist** [1] - 19:20
**assistance** [1] - 58:4
**assume** [1] - 30:9
**Atlanta** [1] - 2:11
**attempt** [2] - 13:12, 29:17
**attempting** [1] - 44:22
**attention** [3] - 20:9, 23:19, 62:7
**authority** [1] - 11:4
**Avenue** [1] - 1:20
**avoid** [2] - 33:10, 55:11
**avoids** [1] - 42:10
**aware** [1] - 8:4
**awfully** [1] - 54:1

## B

**bagged** [1] - 16:4
**bars** [2] - 29:8, 29:10

**base** [8] - 18:18, 31:5, 48:23, 49:15, 49:21, 52:17, 53:6, 53:16
**baseball** [4] - 50:17, 51:6, 51:16
**based** [9] - 9:21, 10:22, 10:23, 22:9, 22:14, 26:10, 42:2, 50:23, 58:17
**baseline** [3] - 48:8, 48:13, 53:21
**basic** [1] - 25:25
**basis** [6] - 35:14, 37:25, 38:7, 38:9, 45:15, 56:6
**Bear** [1] - 2:5
**become** [1] - 10:15
**becomes** [4] - 18:5, 26:22, 49:19, 50:6
**BEFORE** [1] - 1:13
**begin** [1] - 8:21
**behalf** [2] - 3:15, 3:17
**behind** [1] - 18:16
**belabor** [1] - 35:5
**best** [4] - 16:15, 26:3, 31:12, 46:12
**better** [1] - 51:22
**between** [9] - 8:8, 18:24, 27:22, 28:4, 31:19, 33:21, 35:15, 36:4, 56:13
**bit** [1] - 31:18
**black** [1] - 61:8
**block** [1] - 48:16
**blown** [1] - 16:11
**body** [7] - 4:19, 7:6, 7:19, 7:24, 8:5, 8:16, 8:21
**bottom** [2] - 17:6, 56:23
**boundaries** [3] - 25:20, 42:3, 48:18
**boundary** [1] - 57:21
**bounding** [1] - 19:11
**box** [2] - 17:19, 61:15
**boxes** [2] - 61:11, 61:12
**brace** [4] - 18:16, 31:25, 60:16
**braces** [37] - 14:23, 14:24, 14:25, 15:10, 15:13, 21:9, 22:18, 22:20, 22:22, 23:2, 23:4, 23:15, 23:16, 23:23, 28:16, 28:17, 32:3, 32:9, 32:15, 33:14, 34:25, 36:8, 58:19, 58:22, 58:24, 59:2, 59:11, 60:8, 60:9, 60:21, 60:22,

61:16, 61:18, 61:25
**break** [1] - 57:7
**breathe** [2] - 8:2, 11:1
**breathes** [1] - 11:9
**brief** [11] - 14:12, 16:11, 24:6, 28:20, 29:11, 29:16, 29:24, 29:25, 43:8, 46:22, 60:13
**briefing** [2] - 3:8, 32:10
**briefly** [2] - 56:12, 57:10
**bring** [3] - 15:23, 30:24, 62:7
**broad** [1] - 5:24
**broaden** [1] - 61:14
**broadly** [1] - 47:14
**bunch** [1] - 43:10

## C

**California** [1] - 2:6
**candid** [1] - 47:11
**capable** [3] - 41:11, 41:15, 42:2
**captioned** [1] - 3:6
**captured** [1] - 20:1
**capturing** [1] - 42:20
**cardinal** [4] - 14:14, 16:21, 26:7, 26:9
**Case** [2] - 1:4, 3:5
**case** [18] - 6:1, 6:11, 7:17, 8:7, 9:1, 9:6, 10:7, 12:18, 13:15, 19:15, 28:1, 29:9, 29:23, 29:24, 33:8, 40:13, 42:4
**cases** [6] - 6:10, 10:15, 13:18, 13:22, 23:2, 27:15
**Catalina** [7] - 7:16, 7:25, 8:7, 9:6, 9:16, 11:15, 11:20
**cell** [36] - 21:25, 22:10, 22:14, 23:6, 27:3, 27:17, 29:1, 29:2, 29:5, 29:6, 29:12, 29:13, 30:6, 30:7, 30:9, 30:10, 30:11, 30:16, 30:22, 31:1, 31:6, 34:8, 34:14, 34:15, 35:15, 36:4, 45:3, 46:5, 47:3, 45:24, 57:16
**cell-by-cell** [1] - 47:3
**cells** [136] - 8:23, 14:24, 21:17, 21:19, 21:20, 21:21, 21:23, 22:2, 22:7, 22:17,

22:21, 23:5, 23:10, 23:11, 23:16, 23:21, 23:24, 24:10, 24:16, 24:25, 25:1, 25:4, 25:5, 25:16, 25:17, 25:18, 25:20, 25:24, 26:4, 26:5, 26:14, 26:15, 26:17, 26:18, 26:24, 26:25, 27:2, 27:3, 27:6, 27:16, 27:19, 27:20, 27:21, 27:24, 27:25, 28:3, 28:4, 28:5, 28:7, 28:8, 28:10, 28:11, 28:12, 28:17, 28:18, 28:21, 28:22, 28:24, 28:25, 30:2, 30:3, 30:4, 31:4, 31:23, 32:2, 32:3, 32:8, 32:12, 32:13, 32:14, 32:18, 32:20, 32:21, 32:23, 32:24, 32:25, 33:2, 33:6, 33:13, 33:15, 33:16, 33:23, 33:25, 34:1, 34:3, 34:4, 34:22, 35:1, 35:3, 35:4, 35:8, 35:10, 35:14, 35:23, 35:24, 35:25, 36:1, 36:10, 36:11, 43:2, 43:6, 43:7, 43:20, 44:4, 44:10, 44:11, 44:12, 44:13, 44:14, 44:15, 44:18, 45:4, 45:9, 45:11, 45:22, 46:2, 46:3, 46:17, 47:2, 47:7, 54:15, 55:17, 57:16, 57:19, 57:20, 57:22, 58:3
**center** [3] - 15:14, 43:10, 43:12
**certain** [5] - 4:5, 4:16, 4:17, 29:17, 38:12
**certainly** [3] - 25:15, 51:16
**certify** [1] - 62:21
**cetera** [1] - 30:19
**change** [2] - 41:20, 51:13
**changed** [1] - 59:6
**changing** [2] - 50:12, 50:20
**check** [1] - 62:4
**choice** [2] - 55:6, 55:19
**chose** [2] - 50:21, 51:3
**Circuit** [16] - 4:25, 6:7, 7:16, 7:25, 8:3, 9:1, 11:3, 11:24, 16:23, 25:6, 26:2, 29:8,

29:20, 29:25, 33:9, 42:1
**circular** [1] - 44:1
**cited** [6] - 7:18, 8:3, 14:11, 24:5, 29:24, 38:22
**CLAIM** [1] - 1:12
**claim** [82] - 4:13, 4:20, 5:1, 5:2, 5:4, 5:23, 6:9, 6:14, 7:6, 7:19, 7:24, 8:2, 8:6, 8:16, 8:22, 10:2, 10:10, 10:17, 10:23, 10:25, 11:2, 11:10, 11:19, 11:23, 12:3, 12:5, 13:18, 14:9, 14:14, 14:16, 14:18, 14:20, 16:21, 19:19, 21:21, 22:9, 22:11, 22:21, 24:1, 24:2, 24:4, 24:6, 26:8, 26:9, 26:23, 28:14, 28:23, 30:3, 32:14, 33:14, 33:17, 33:21, 35:9, 35:23, 36:5, 36:14, 37:2, 37:6, 43:13, 44:9, 45:12, 49:19, 54:13, 55:20, 57:2, 57:3, 57:24, 59:4, 59:8, 59:9, 59:10, 59:13, 60:24, 61:9, 61:13, 61:15, 61:23, 61:24
**Claim** [45] - 4:17, 4:18, 4:22, 5:22, 6:3, 6:5, 6:21, 7:4, 7:13, 7:14, 7:20, 7:22, 8:20, 10:20, 13:10, 13:11, 22:16, 23:9, 27:24, 31:22, 32:14, 33:13, 33:19, 34:24, 35:2, 35:7, 36:6, 37:16, 43:3, 44:2, 44:8, 44:9, 44:16, 44:18, 44:23, 46:7, 46:24, 46:25, 47:4, 47:6
**claimed** [4] - 12:11, 22:13, 34:4, 61:15
**claiming** [1] - 46:10
**claims** [40] - 3:7, 4:16, 4:17, 5:18, 6:22, 7:4, 7:18, 7:21, 10:5, 12:3, 12:14, 12:15, 12:23, 21:24, 22:6, 22:16, 28:25, 30:3, 30:4, 31:21, 32:13, 33:13, 33:24, 34:4, 34:15, 37:3, 39:7, 39:9, 39:25, 43:3, 44:17, 45:13, 54:21,

58:13, 58:14, 58:15, 61:2, 61:18
**Claims** [1] - 46:4
**clarification** [1] - 39:21
**clarify** [3] - 50:7, 61:5, 61:6
**clause** [6] - 4:19, 43:19, 44:2, 54:14, 54:20, 61:20
**Clayton** [5] - 5:9, 5:13, 5:14, 5:17, 10:1, 10:18, 11:17, 12:8, 12:9, 12:13, 12:16, 12:21
**clear** [10] - 9:10, 21:24, 29:20, 30:5, 34:13, 43:18, 45:14, 45:24, 55:1, 57:25
**clearly** [6] - 20:24, 47:3, 48:1, 49:10, 52:23, 57:25
**close** [3] - 39:11, 42:15, 54:1
**closed** [8] - 25:23, 29:6, 30:10, 30:11, 30:18, 34:22, 35:13, 35:25
**closely** [17] - 35:22, 36:2, 36:18, 36:23, 36:24, 38:2, 38:10, 38:22, 39:3, 39:5, 41:24, 41:25, 42:5, 42:10, 42:11, 42:12, 42:17
**cluster** [1] - 47:7
**coined** [5] - 29:13, 32:11, 33:12, 34:3, 34:14
**collection** [1] - 54:19
**collective** [9] - 43:7, 45:11, 45:14, 54:15, 56:7, 58:4, 60:20, 61:7
**collectively** [1] - 45:5
**Column** [11] - 17:13, 17:19, 18:22, 20:13, 24:23, 27:1, 32:4, 35:11, 48:9, 56:1
**combination** [8] - 9:24, 10:1, 10:3, 12:9, 12:19, 13:13, 13:14, 13:20
**combining** [1] - 12:10
**commenced** [1] - 3:3
**comment** [10] - 4:3, 4:6, 11:14, 11:17, 40:9, 41:23, 42:17, 53:7, 58:6
**common** [1] - 50:23

**compared** [1] - 21:14
**comparing** [1] - 39:9
**complete** [3] - 8:6, 8:9, 8:19
**completely** [1] - 28:22
**comport** [1] - 30:22
**comports** [1] - 19:13
**comprise** [5] - 43:2, 44:19, 46:9, 58:19, 58:22
**comprises** [3] - 28:7, 45:11, 47:2
**comprising** [7] - 4:19, 7:6, 8:21, 46:5, 47:8, 61:17, 61:19
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**concede** [1] - 17:25
**conceded** [1] - 36:20
**conceding** [1] - 52:23
**concept** [1] - 42:21
**concern** [1] - 38:10
**conclude** [1] - 7:3
**concluded** [1] - 62:18
**concludes** [1] - 11:12
**conclusion** [1] - 6:12
**confirm** [1] - 62:6
**congruent** [1] - 40:8
**connect** [2] - 15:11, 43:15
**connected** [7] - 27:22, 28:10, 28:11, 36:3, 43:11, 57:20
**connection** [1] - 35:13
**consider** [2] - 5:17, 12:13
**considered** [3] - 12:22, 51:14, 52:5
**considering** [1] - 24:3
**consistent** [17] - 9:16, 15:8, 21:25, 23:7, 23:11, 23:25, 25:15, 25:17, 25:25, 29:21, 30:13, 32:15, 33:9, 34:4, 37:21, 40:19, 47:22
**construction** [48] - 3:7, 3:9, 4:13, 10:23, 10:25, 14:15, 17:16, 18:1, 18:2, 18:19, 19:6, 19:19, 21:20, 26:9, 26:12, 31:3, 31:5, 36:15, 36:25, 37:6, 37:14, 38:7, 38:10, 38:15, 38:21, 39:2, 41:11, 42:2, 42:8, 42:9, 45:8, 45:16, 47:22, 48:25, 49:4, 50:20, 52:15,

56:8, 58:5, 59:25, 60:15, 60:20, 60:24, 61:7, 61:8
**CONSTRUCTION** [1] - 1:12
**constructions** [2] - 3:10, 39:11
**construe** [2] - 26:8, 39:7
**construed** [1] - 49:20
**construing** [1] - 33:9
**contemplated** [1] - 29:6
**contemplates** [2] - 25:18, 29:3
**contemplating** [2] - 28:12, 42:9
**contend** [2] - 6:3, 7:4
**contention** [1] - 49:9
**contentions** [1] - 37:25
**context** [7] - 24:12, 34:9, 41:25, 51:4, 51:7, 54:20, 60:2
**continue** [1] - 37:20
**continues** [1] - 36:6
**contour** [6] - 15:1, 15:15, 15:16, 15:20, 16:15, 60:17
**contoured** [14] - 14:25, 21:5, 21:7, 58:20, 58:22, 58:24, 59:10, 59:12, 60:6, 60:9, 60:22, 60:23, 61:17, 61:19
**contours** [1] - 15:8
**contradict** [2] - 17:24, 29:17
**contradiction** [5] - 28:19, 31:18, 33:5, 33:7, 33:10
**contradictory** [1] - 33:11
**contradicts** [1] - 31:3
**contrary** [4] - 21:4, 31:14, 36:5, 39:15
**contrasted** [3] - 7:13, 16:10, 45:22
**conversation** [2] - 53:25, 54:2
**Coolsavings** [1] - 7:17
**corner** [4] - 17:19, 23:5, 27:17, 32:1
**corners** [18] - 15:11, 22:19, 22:23, 23:16, 23:23, 26:15, 26:20, 27:4, 27:8, 27:11, 27:12, 27:21, 28:16, 28:17, 31:24, 32:9, 32:15, 33:14

**correct** [9] - 16:23, 18:2, 31:2, 42:8, 45:16, 55:22, 56:10, 58:5, 62:21
**counsel** [1] - 3:12
**counsels** [1] - 60:19
**countervailing** [1] - 55:15
**couple** [1] - 16:8
**course** [1] - 37:7
**COURT** [12] - 1:1, 3:5, 6:25, 7:10, 8:12, 9:7, 11:14, 13:2, 13:5, 13:23, 14:1, 15:21, 16:7, 16:25, 17:11, 19:17, 21:17, 22:2, 24:20, 25:10, 27:9, 27:12, 30:8, 31:15, 31:17, 34:16, 38:16, 40:1, 40:16, 40:25, 41:4, 41:6, 42:11, 42:13, 42:22, 45:18, 46:19, 50:9, 51:4, 52:7, 53:3, 53:7, 53:12, 53:24, 54:5, 54:9, 54:12, 55:4, 56:12, 57:9, 57:12, 58:6, 59:14, 59:17, 59:20, 61:10, 62:1, 62:12
**court** [1] - 3:20
**Court** [18] - 1:19, 1:20, 3:13, 7:8, 8:4, 10:3, 11:5, 11:12, 19:12, 21:15, 24:5, 24:24, 39:17, 42:9, 50:6, 58:10, 61:4
**Court's** [2] - 23:19, 61:9
**cover** [11] - 4:23, 5:24, 12:3, 12:4, 12:5, 30:9, 37:11, 39:25, 46:12, 61:11, 61:15
**coverage** [1] - 41:16
**covered** [6] - 12:15, 12:23, 57:25, 58:1, 60:1, 61:6
**covering** [3] - 40:6, 41:12, 59:23
**covers** [4] - 6:3, 43:13, 48:1
**create** [1] - 43:16
**created** [1] - 44:22
**creates** [1] - 55:9
**creating** [1] - 46:15
**criticizing** [1] - 37:14
**cross** [1] - 4:2
**CRR** [2] - 1:19, 62:23
**current** [1] - 61:10
**curtain** [1] - 23:3

**curved** [1] - 21:10
**cuts** [2] - 51:8, 60:18

## D

**DATE** [1] - 62:23
**deal** [1] - 42:15
**dealing** [1] - 10:7
**deals** [1] - 4:9
**decide** [2] - 39:7, 39:9
**decided** [1] - 35:19
**decision** [1] - 50:4
**deck** [5] - 7:12, 45:2, 46:23, 59:19, 60:5
**Decker** [1] - 2:9
**declaration** [3] - 32:11, 60:13, 60:14
**defendant** [7] - 3:17, 6:1, 40:2, 43:8, 44:6, 58:16, 61:11
**Defendant** [2] - 1:9, 2:8
**defendant's** [3] - 44:8, 59:1, 61:25
**defendants** [16] - 4:21, 5:21, 6:24, 12:2, 14:8, 16:11, 16:18, 20:12, 21:11, 21:19, 22:7, 24:9, 32:6, 32:21, 34:6, 50:19
**defending** [1] - 55:14
**define** [6] - 15:11, 20:15, 28:18, 39:23, 51:3, 53:4
**defined** [14] - 17:22, 22:18, 22:22, 23:14, 28:15, 28:16, 31:23, 31:25, 32:9, 32:14, 33:14, 34:25, 35:1, 36:8
**defining** [6] - 15:13, 23:5, 23:16, 39:1, 40:5, 50:21
**definiteness** [1] - 58:13
**definition** [23] - 12:16, 12:24, 14:4, 19:3, 19:4, 19:10, 19:13, 26:1, 29:5, 31:1, 31:6, 37:5, 37:13, 38:17, 39:4, 39:17, 40:2, 41:1, 41:19, 43:15, 51:11
**definitional** [2] - 39:21, 52:11
**definitions** [5] - 14:11, 29:19, 30:24, 31:13, 37:6
**definitive** [2] - 56:17

**deflecting** [1] - 57:23
**degree** [3] - 39:8, 41:25, 42:2
**demonstrative** [1] - 23:1
**denied** [1] - 49:8
**dependent** [1] - 44:9
**derive** [2] - 31:10, 31:11
**describe** [3] - 21:1, 52:11, 58:21
**described** [6] - 26:2, 26:5, 26:14, 30:1, 30:2, 31:7
**describes** [2] - 11:15, 26:25
**describing** [1] - 30:14
**description** [4] - 15:9, 16:17, 25:19, 35:13
**Description** [1] - 6:17
**design** [2] - 49:19, 55:19
**designed** [2] - 24:13, 24:14
**designer** [5] - 44:21, 55:7, 55:10, 55:18
**designs** [1] - 44:22
**detail** [1] - 8:24
**Detailed** [1] - 6:17
**detailed** [1] - 8:7
**determine** [1] - 50:24
**device** [7] - 19:21, 21:3, 24:10, 39:10, 39:13, 43:11, 57:5
**devices** [1] - 15:2
**dictionary** [18] - 14:11, 19:2, 19:13, 25:25, 26:1, 29:19, 30:23, 31:1, 31:6, 31:13, 37:5, 37:6, 38:17, 38:21, 38:23, 39:3, 42:18
**difference** [4] - 8:1, 8:8, 11:16, 36:12
**different** [12] - 10:23, 10:25, 11:19, 12:4, 15:18, 39:3, 39:16, 42:19, 42:20, 46:7, 46:14, 61:16
**differentiate** [1] - 13:12
**differentiates** [1] - 42:6
**differentiating** [1] - 46:24
**differently** [2] - 34:14, 42:22
**dilemma** [1] - 55:9
**dimensional** [4] - 15:6, 15:7, 15:20,

16:15
**directed** [8] - 6:12, 6:20, 47:3, 54:17, 57:3, 58:12, 59:4
**directing** [1] - 41:3
**direction** [1] - 37:19
**directions** [1] - 41:15
**directly** [1] - 36:3
**disagree** [2] - 41:24, 47:19
**disclaimer** [3] - 10:25, 29:7, 29:9
**disclose** [1] - 12:20
**disclosed** [2] - 5:9, 26:10
**discloses** [2] - 6:15, 22:5
**disclosure** [1] - 29:22
**discuss** [1] - 21:12
**discussed** [2] - 5:8, 54:11
**discusses** [2] - 6:16, 14:23
**discussion** [8] - 3:14, 3:25, 4:1, 4:4, 8:7, 9:5, 16:8, 62:2
**dismiss** [1] - 12:21
**dispute** [2] - 4:15, 39:24
**disputed** [1] - 3:10
**distance** [1] - 18:24
**distinction** [2] - 12:8, 35:15
**distinguish** [1] - 52:4
**distinguished** [1] - 5:13
**DISTRICT** [3] - 1:1, 1:1, 1:14
**District** [1] - 1:20
**DIVISION** [1] - 1:2
**docket** [1] - 3:11
**Document** [1] - 3:11
**done** [2] - 15:24, 53:25
**double** [2] - 14:17, 16:4
**doubling** [1] - 16:22
**down** [6] - 14:17, 16:22, 21:2, 27:14, 39:24, 48:7
**downward** [1] - 49:11
**Dr** [3] - 59:24, 60:12, 60:13
**drafter** [1] - 30:1
**drafters** [1] - 18:14
**drafting** [1] - 61:18
**drain** [1] - 24:14
**drawing** [3] - 16:2, 16:16, 35:14
**drawings** [1] - 15:6

**drew** [1] - 16:12
**during** [5] - 3:24, 5:3, 5:8, 5:25, 12:12

## E

**easier** [1] - 16:1
**easily** [1] - 41:12
**easy** [2] - 15:5, 49:19
**Ed** [1] - 2:4
**edge** [2] - 15:13, 57:2
**efforts** [2] - 62:2, 62:8
**either** [10] - 7:2, 17:1, 17:2, 17:6, 17:9, 30:14, 40:22, 47:14, 60:12, 62:7
**elaborate** [1] - 19:25
**elaborating** [1] - 19:24
**element** [15] - 47:15, 47:16, 47:25, 48:17, 49:5, 49:14, 49:20, 50:1, 51:25, 52:9, 52:15, 52:16, 53:13, 60:25
**elements** [2] - 48:3, 52:25
**elevate** [2] - 31:5, 51:19
**elevated** [2] - 49:7, 49:10
**elevations** [1] - 15:18
**elliptical** [1] - 44:1
**elongate** [12] - 47:15, 47:16, 47:24, 48:3, 48:17, 49:5, 49:14, 49:20, 50:1, 51:25, 52:24, 53:13
**elongated** [6] - 49:15, 52:7, 52:15, 52:16, 53:4
**eloquent** [1] - 38:19
**elsewhere** [2] - 18:19, 60:7
**embodiment** [12] - 6:15, 14:19, 14:21, 16:18, 16:22, 20:6, 26:10, 27:5, 27:20, 41:14, 43:21, 48:2
**embodiments** [4] - 26:9, 26:11, 29:6, 31:7
**emphasize** [1] - 13:7
**enclosed** [1] - 22:1
**encourage** [1] - 4:1
**end** [3] - 6:25, 33:20, 61:4
**endeavor** [5] - 5:15, 12:15, 12:17, 12:23, 12:24
**Engineering** [1] - 33:8

**enjoy** [1] - 62:13
**enlargement** [1] - 18:4
**enter** [1] - 45:18
**entire** [2] - 41:16, 43:7
**entirely** [4] - 10:22, 12:21, 20:2, 23:7
**entirety** [1] - 29:21
**entitled** [2] - 6:14, 62:21
**equates** [1] - 35:12
**equating** [1] - 57:15
**especially** [6] - 8:5, 8:15, 8:24, 38:24, 38:25, 39:19
**Esquire** [6] - 2:4, 2:4, 2:8, 2:9, 2:9, 2:12
**essence** [1] - 20:1
**essentially** [2] - 5:21, 31:5
**estoppel** [2] - 10:24, 11:19
**et** [1] - 30:19
**evaluated** [1] - 13:16
**evaluating** [1] - 45:2
**everywhere** [1] - 58:1
**evidence** [7] - 25:16, 25:17, 29:2, 29:18, 29:21, 30:22, 31:2
**exact** [2] - 6:4, 31:8
**exactly** [2] - 31:10, 37:20
**examine** [2] - 12:14, 58:13
**examined** [1] - 58:11
**examiner** [5] - 5:16, 12:10, 12:12, 12:19, 58:12
**examiner's** [1] - 9:25
**examiners** [1] - 24:8
**examining** [1] - 5:17
**Examining** [1] - 58:12
**example** [14] - 23:21, 23:23, 23:24, 26:16, 28:5, 32:2, 32:3, 32:14, 32:23, 33:3, 35:25, 37:8, 46:17, 51:15
**examples** [3] - 37:24, 39:22, 48:19
**except** [1] - 13:18
**excess** [1] - 48:4
**exclude** [4] - 14:19, 16:22, 20:6, 61:7
**excludes** [3] - 27:25, 35:2, 35:23
**exclusion** [1] - 45:17
**exclusively** [1] - 25:16
**exemplary** [1] - 22:15
**Exhibit** [2] - 38:21, 39:18

**expansively** [1] - 37:11
**expected** [1] - 33:24
**experience** [1] - 50:24
**expert** [9] - 29:16, 32:10, 43:9, 55:14, 55:21, 56:16, 59:5, 59:24, 61:21
**expert's** [2] - 29:12, 56:2
**explain** [1] - 41:13
**explained** [5] - 18:15, 32:10, 32:11, 43:8, 52:16
**explaining** [1] - 59:7
**explanation** [2] - 49:5, 50:1
**explicitly** [1] - 28:23
**expressing** [1] - 45:15
**extend** [2] - 21:13, 51:18
**extending** [1] - 37:18
**extends** [3] - 18:5, 18:21, 52:9
**extension** [1] - 18:6
**extent** [2] - 31:13, 48:2
**extra** [1] - 18:10

## F

**face** [19] - 8:22, 8:23, 9:13, 13:24, 14:10, 17:14, 19:4, 19:15, 19:22, 19:23, 20:1, 20:8, 20:21, 20:22, 20:24, 21:10, 21:16, 26:7, 29:22
**faces** [1] - 17:3
**fact** [17] - 10:5, 12:20, 19:20, 25:7, 25:21, 28:14, 28:23, 39:6, 39:8, 39:24, 41:25, 47:4, 55:12, 56:9, 59:8, 60:5, 60:17
**facts** [1] - 19:7
**fail** [1] - 24:9
**fails** [2] - 13:20, 28:22
**faint** [1] - 15:14
**fairly** [1] - 39:11
**fall** [1] - 21:10
**familiar** [1] - 15:16
**far** [4] - 18:6, 38:5, 48:4, 59:25
**fashion** [1] - 33:12
**fealty** [1] - 29:23
**feature** [1] - 15:1
**Federal** [4] - 4:25, 6:7, 7:16, 7:25, 8:3, 9:1, 11:3, 11:24,

16:23, 25:6, 26:2, 29:8, 29:20, 29:25, 33:9, 42:1
**feeds** [1] - 47:5
**fence** [5] - 48:24, 49:1, 52:1, 53:1
**few** [6] - 6:22, 39:14, 40:8, 40:21, 40:22, 40:23
**field** [7] - 5:14, 5:15, 12:13, 12:15, 12:17, 12:23, 12:24
**fifth** [1] - 20:20
**Figure** [17] - 15:4, 15:9, 15:10, 16:10, 16:12, 16:14, 17:23, 18:3, 18:6, 18:21, 21:6, 27:5, 32:24, 36:1, 37:17, 48:2
**figure** [2] - 6:15, 33:1
**Figures** [1] - 15:3
**figures** [7] - 15:3, 16:17, 23:25, 40:8, 40:24, 58:1
**file** [1] - 62:7
**filed** [2] - 4:12, 60:13
**fin** [1] - 49:24
**final** [1] - 13:5
**finally** [1] - 16:9
**fine** [2] - 53:8, 53:11
**finer** [1] - 24:18
**fire** [1] - 4:2
**firmly** [1] - 61:24
**first** [18] - 4:10, 8:22, 17:14, 18:24, 19:18, 20:21, 20:22, 31:21, 31:22, 34:19, 40:6, 46:5, 46:8, 46:20, 54:21, 61:12, 61:13, 61:16
**fit** [2] - 19:7, 36:21
**fitted** [13] - 35:22, 36:2, 36:18, 36:23, 36:24, 38:2, 38:8, 38:22, 39:6, 42:10, 42:11, 42:12, 42:17
**five** [1] - 40:24
**five-sided** [1] - 40:24
**fixed** [1] - 50:7
**flat** [5] - 17:15, 21:3, 51:14, 52:6, 52:9
**flawed** [1] - 13:9
**flip** [1] - 17:2
**floor** [2] - 5:11, 9:12
**Floor** [1] - 2:5
**flooring** [11] - 5:10, 5:20, 5:23, 5:24, 10:21, 12:3, 12:5, 12:11, 12:14, 12:16
**fluid** [1] - 51:21

**fly** [2] - 29:22, 61:18
**focus** [4] - 20:12, 22:7, 23:18, 62:8
**focusing** [1] - 31:22
**folks** [2] - 3:19, 3:21
**follows** [2] - 8:21, 19:11
**foregoing** [1] - 62:21
**form** [6] - 14:24, 23:10, 33:15, 33:16, 35:8, 45:5
**formed** [1] - 25:5
**forth** [4] - 11:21, 14:7, 21:19, 42:25
**four** [1] - 40:24
**four-sided** [1] - 40:24
**fourth** [1] - 28:2
**frame** [22] - 8:22, 17:15, 18:22, 18:23, 20:21, 20:22, 20:23, 20:25, 21:7, 21:9, 21:12, 21:14, 25:2, 51:19, 51:21, 52:10, 56:23, 57:8
**framing** [1] - 52:2
**free** [1] - 4:4
**Fresh** [6] - 3:6, 11:4, 14:1, 37:14, 38:4, 60:13
**FRESH** [1] - 1:4
**Fresh's** [9] - 19:2, 26:4, 26:21, 27:15, 27:23, 36:13, 37:5, 38:1, 38:7
**friend** [2] - 7:9, 44:5
**friends** [1] - 15:23
**full** [2] - 24:3, 39:17
**fully** [1] - 46:12
**fundamentally** [1] - 30:21

**G**

**gaps** [5] - 38:24, 39:20, 40:7, 42:19, 42:20
**general** [1] - 8:3
**generically** [1] - 30:16
**geometric** [9] - 36:14, 37:12, 39:12, 40:7, 40:10, 40:12, 41:12, 41:16
**geometrical** [1] - 37:21
**geometry** [2] - 37:7, 37:8
**Georgia** [1] - 2:11
**give-and-take** [1] - 3:25
**given** [3] - 4:25, 18:19,

18:20
**gladly** [1] - 46:22
**great** [2] - 16:5
**greater** [2] - 53:14, 53:15
**green** [2] - 16:13, 61:25
**group** [3] - 58:2, 58:24, 60:21
**guidance** [4] - 4:25, 5:2, 11:24, 60:25
**gut** [1] - 22:3

**H**

**half** [3] - 25:3, 27:19, 28:9
**hand** [6] - 17:19, 18:6, 19:10, 25:2, 37:4, 61:15
**happy** [1] - 54:6
**harder** [1] - 48:6
**head** [1] - 31:9
**hear** [3] - 7:1, 31:15, 38:18
**heard** [1] - 4:3
**HEARING** [1] - 1:12
**hearing** [1] - 3:7
**held** [5] - 7:25, 8:5, 8:15, 15:24, 42:1
**help** [2] - 40:4, 51:20
**helpful** [2] - 6:10, 62:3
**helping** [1] - 25:11
**helps** [3] - 15:2, 30:15, 51:12
**herring** [1] - 57:14
**hexagonal** [1] - 27:7
**hexagons** [9] - 26:18, 26:19, 26:20, 37:7, 37:8, 37:18, 40:23, 41:13, 43:22
**high** [2] - 29:8, 29:9
**highlight** [2] - 5:6, 32:25
**highlighted** [5] - 5:12, 14:6, 14:22, 20:11, 28:4
**highlights** [2] - 11:15, 59:8
**hiking** [2] - 15:17, 15:18
**HILL** [29] - 7:11, 8:18, 9:13, 13:7, 17:12, 24:22, 25:12, 27:11, 27:13, 30:21, 34:21, 41:2, 41:5, 41:8, 42:12, 44:7, 46:22, 52:13, 53:5, 53:11, 53:15, 53:20, 55:5, 57:10, 57:13, 59:18,

59:21, 62:11, 62:16
**Hill** [3] - 2:8, 2:10, 3:18
**history** [9] - 9:21, 9:23, 10:8, 10:24, 11:7, 11:18, 12:1, 13:8, 13:16
**hit** [1] - 52:14
**Hobson's** [2] - 55:6, 55:19
**hold** [1] - 9:4
**holding** [1] - 9:17
**holes** [2] - 22:3, 25:1
**honest** [1] - 59:8
**Honor** [36] - 4:11, 5:19, 7:4, 7:11, 7:13, 11:20, 13:1, 13:4, 13:7, 13:25, 14:5, 15:16, 16:24, 17:12, 19:18, 20:9, 22:25, 24:22, 25:13, 31:16, 33:8, 40:10, 40:23, 41:2, 41:20, 42:16, 44:7, 52:12, 52:13, 54:4, 54:10, 55:5, 57:10, 59:18, 62:10, 62:15
**HONORABLE** [1] - 1:13
**hoping** [1] - 28:18
**horizontal** [2] - 17:15, 17:22
**house** [2] - 52:2, 52:3
**Hurd** [1] - 59:24
**Hurd's** [2] - 60:12, 60:14
**hypothetical** [2] - 20:24, 43:17
**hypothetically** [1] - 37:10
**hypotheticals** [1] - 58:16

**I**

**i.e** [1] - 41:12
**idea** [4] - 15:25, 27:23, 31:3, 34:9
**identified** [1] - 37:24
**identify** [1] - 30:15
**ignore** [1] - 26:11
**ignoring** [1] - 11:16
**illustrate** [2] - 7:15, 22:25
**illustrated** [1] - 23:20
**imagine** [2] - 5:19, 43:9
**imagined** [1] - 43:11
**IMPACT** [1] - 1:8
**Impact** [1] - 3:6

**Impact's** [1] - 14:4
**implicate** [1] - 43:6
**important** [1] - 26:22
**impossible** [1] - 18:13
**improper** [1] - 9:4
**inapplicable** [1] - 40:4
**inaudible** [1] - 6:24
**INC** [1] - 1:4
**inches** [2] - 48:14
**include** [1] - 3:21
**includes** [4] - 23:22, 35:3, 35:4, 44:11
**including** [3] - 3:9, 17:21, 29:15
**inconsistent** [2] - 26:11, 40:3
**incorrect** [1] - 9:23
**incumbent** [1] - 50:6
**indefinite** [4] - 21:22, 22:10, 24:3, 47:17
**indefiniteness** [6] - 22:13, 24:7, 25:8, 30:5, 56:11, 58:10
**independent** [2] - 7:18, 7:20
**indeterminant** [1] - 54:19
**indeterminate** [1] - 18:18
**indicated** [2] - 18:25, 35:6
**indicating** [1] - 21:8
**individual** [20] - 10:17, 43:6, 43:14, 43:20, 44:4, 45:1, 45:3, 45:14, 45:22, 47:3, 47:5, 55:3, 55:9, 55:14, 55:22, 56:21, 57:6, 58:3, 58:4, 61:6
**individually** [1] - 45:9
**infinite** [11] - 39:12, 40:7, 40:10, 40:11, 40:20, 41:1, 41:10, 41:12, 41:16, 41:19, 41:21
**infinitely** [2] - 37:11, 41:14
**infinitum** [1] - 37:20
**information** [1] - 31:12
**infringe** [1] - 44:23
**infringement** [3] - 16:20, 50:8, 55:11
**infringes** [1] - 19:21
**inherently** [1] - 24:15
**inquiring** [1] - 45:3
**inquiry** [1] - 25:8
**instead** [4] - 19:7, 30:3, 36:15, 61:19

**instructed** [1] - 24:8
**intend** [1] - 38:11
**intended** [2] - 18:7, 47:6
**intent** [2] - 17:24, 18:14
**intentionally** [2] - 29:9, 60:11
**interacts** [1] - 51:21
**interchangeably** [1] - 35:16
**interconnected** [44] - 8:23, 22:17, 22:21, 23:5, 23:6, 23:10, 25:4, 26:23, 26:25, 27:2, 27:3, 27:6, 27:16, 27:17, 27:24, 28:3, 28:5, 28:7, 28:13, 28:18, 28:25, 31:23, 33:16, 33:25, 35:1, 35:3, 35:8, 35:24, 36:10, 37:10, 37:18, 41:13, 43:2, 44:10, 44:11, 44:14, 44:15, 47:2, 47:7, 55:17, 57:15, 57:16, 57:19, 57:22
**interior** [4] - 26:17, 28:8, 28:21, 44:12
**International** [1] - 50:4
**interpret** [1] - 34:10
**interpretation** [2] - 4:7, 32:20
**interpretations** [1] - 59:22
**interrupting** [1] - 3:24
**intersect** [7] - 22:19, 22:22, 28:16, 31:24, 32:9, 32:15, 33:14
**intersecting** [1] - 28:17
**intersects** [1] - 32:1
**Interval** [2] - 26:2, 42:3
**intrinsic** [7] - 25:16, 25:17, 29:2, 29:17, 29:21, 30:22, 31:2
**invalid** [1] - 22:13
**invalidating** [1] - 52:21
**invalidity** [4] - 22:8, 37:25, 49:9, 58:16
**invented** [1] - 46:12
**invention** [11] - 5:15, 8:6, 8:9, 8:19, 12:11, 22:13, 24:13, 46:10, 50:21, 51:3, 58:21
**involved** [1] - 7:17
**Irvine** [1] - 2:6

**issue** [19] - 5:6, 6:22, 6:23, 14:7, 20:5, 29:16, 39:6, 39:8, 40:18, 40:21, 41:9, 41:24, 42:14, 42:15, 42:24, 50:8, 56:17, 56:18
**Issue** [3] - 4:8, 42:22, 54:5
**issued** [1] - 58:14
**issues** [2] - 62:5, 62:8
**itself** [2] - 9:3, 37:17

**J**

**JACK** [1] - 1:13
**James** [1] - 2:12
**janitors** [1] - 17:7
**JENNINGS** [36] - 4:11, 7:3, 11:20, 13:4, 13:25, 14:5, 16:4, 16:9, 17:4, 19:18, 21:18, 22:4, 31:16, 31:20, 38:20, 40:9, 40:17, 42:16, 42:24, 45:20, 50:12, 51:12, 52:8, 53:9, 53:13, 53:18, 54:4, 54:8, 54:10, 54:13, 56:15, 58:8, 59:16, 61:13, 62:10, 62:15
**Jennings** [11] - 2:4, 3:16, 18:9, 26:6, 35:6, 36:19, 38:6, 41:24, 45:7, 49:25, 52:25
**Jennings'** [5] - 9:20, 9:22, 10:19, 46:24, 55:13
**Jerry** [1] - 2:9
**Joe** [14] - 3:16, 4:10, 7:1, 7:11, 11:14, 31:17, 38:17, 38:18, 45:19, 50:9, 53:7, 56:12, 58:6, 61:10
**joined** [2] - 23:4, 23:16
**joint** [1] - 4:13
**joseph** [1] - 2:4
**Jr** [1] - 2:12
**JUDGE** [1] - 1:14
**juror** [1] - 53:22
**jurors** [1] - 30:24
**jury** [15] - 19:20, 19:23, 24:17, 39:7, 39:9, 40:5, 40:12, 40:13, 40:20, 41:13, 50:1, 50:15, 50:22, 52:3, 54:16

**K**

**Kertscher** [2] - 2:10
**key** [1] - 47:24
**kind** [2] - 3:12, 8:16
**KIPROTICH** [1] - 62:23
**Kiprotich** [2] - 1:19, 62:23
**Knobbe** [1] - 2:5
**knock** [1] - 22:9
**knowing** [2] - 40:14, 50:15
**known** [1] - 37:7
**knows** [2] - 53:22, 55:21

**L**

**language** [29] - 7:19, 7:21, 8:9, 14:16, 14:22, 18:19, 20:11, 22:11, 24:1, 24:4, 24:7, 26:23, 28:6, 28:14, 28:21, 29:7, 31:21, 33:18, 35:12, 36:5, 41:22, 54:17, 55:7, 58:15, 58:21, 59:13, 60:12, 61:3, 61:10
**last** [5] - 54:6, 58:7, 58:8, 58:9, 62:13
**law** [6] - 7:15, 10:7, 12:18, 13:15, 29:8, 61:8
**least** [25] - 22:18, 22:21, 23:14, 27:16, 27:17, 28:15, 31:23, 33:21, 35:1, 43:1, 44:19, 44:24, 46:9, 48:10, 54:23, 54:24, 55:8, 55:16, 58:19, 59:11, 60:2, 60:3, 61:2, 61:5
**leaves** [1] - 36:9
**left** [5] - 4:15, 23:19, 25:2, 56:2, 59:25
**left-hand** [1] - 25:2
**length** [7] - 21:13, 48:4, 48:15, 49:20, 53:14, 53:15
**lengthwise** [1] - 52:8
**less** [2] - 13:11, 20:20
**letter** [1] - 61:8
**level** [1] - 13:18
**lexicography** [3] - 29:4, 29:9, 32:19
**Licensing** [1] - 26:3, 42:4
**life** [4] - 6:9, 8:2, 11:1,

11:9
**lighter** [1] - 15:14
**limit** [2] - 15:2, 26:10
**limitation** [23] - 4:16, 4:22, 5:4, 9:22, 10:6, 10:8, 10:9, 10:13, 10:15, 11:11, 12:6, 12:7, 13:11, 13:18, 14:15, 14:18, 14:19, 16:19, 16:21, 20:7, 28:2, 30:7, 37:1
**limited** [4] - 6:5, 6:23, 7:6, 24:25
**limiting** [10] - 5:1, 6:8, 8:4, 8:5, 8:15, 9:5, 9:19, 11:9, 11:22, 11:25
**Line** [1] - 48:10
**line** [7] - 10:15, 18:5, 18:7, 18:8, 18:10, 18:11, 18:17
**Lines** [7] - 17:13, 17:20, 18:22, 20:13, 27:1, 35:11, 56:1
**lines** [9] - 15:12, 15:14, 15:17, 15:19, 16:12, 16:14, 43:12, 43:16
**listen** [1] - 46:23
**listening** [2] - 3:19, 3:20
**listing** [1] - 3:21
**lists** [1] - 9:9
**Liu** [1] - 2:9
**LLC** [1] - 1:8
**located** [1] - 30:18
**location** [2] - 30:12, 30:14
**longways** [1] - 53:23
**look** [45] - 6:11, 8:20, 11:23, 15:3, 15:9, 16:13, 18:3, 18:4, 19:3, 19:10, 22:15, 22:19, 25:2, 25:3, 25:7, 26:13, 27:4, 27:14, 28:1, 28:3, 33:13, 33:17, 33:19, 35:11, 35:25, 37:4, 37:16, 40:14, 44:8, 44:16, 45:10, 48:1, 48:2, 49:17, 50:14, 51:16, 51:17, 54:20, 55:1, 56:19, 57:25, 60:5, 60:21
**looking** [18] - 20:16, 21:2, 27:18, 32:17, 32:19, 41:5, 41:18, 45:3, 45:9, 45:21, 46:23, 48:19, 49:6, 55:16, 56:20, 56:25,

57:5
**lost** [3] - 8:17, 25:10, 27:9
**lower** [17] - 17:18, 25:3, 27:19, 28:9, 58:20, 58:23, 58:25, 59:2, 59:3, 59:10, 59:12, 60:4, 60:6, 60:9, 60:16, 60:23, 61:20
**lowered** [1] - 61:19

**M**

**M.P.E.P** [1] - 24:9
**Main** [1] - 2:5
**main** [11] - 11:25, 14:3, 14:7, 17:2, 17:4, 17:5, 17:16, 19:8, 20:2, 20:4, 20:5
**maintaining** [1] - 41:21
**majority** [2] - 23:13, 36:7
**mandate** [2] - 13:17, 29:1
**mandates** [2] - 28:21, 30:6
**manifesting** [1] - 41:16
**manner** [1] - 52:10
**Manual** [1] - 58:12
**manufacture** [1] - 22:8
**map** [1] - 15:16
**Marketing** [6] - 7:16, 7:25, 8:7, 9:6, 9:17, 11:21
**marking** [1] - 55:16
**Martens** [1] - 2:5
**Martha** [1] - 2:9
**material** [1] - 25:21
**mathematical** [1] - 37:21
**matter** [3] - 17:9, 39:24, 62:21
**mean** [10] - 10:20, 12:2, 17:6, 31:8, 37:10, 49:14, 50:13, 51:13, 52:13, 57:14
**meaning** [25] - 6:9, 14:2, 14:10, 19:22, 21:25, 24:16, 25:7, 30:23, 31:5, 31:11, 32:21, 40:19, 41:20, 47:20, 47:21, 47:23, 50:2, 50:4, 50:6, 50:10, 50:23, 51:9, 51:23, 51:25, 54:17
**meaningless** [1] -

43:17
**means** [12] - 4:14, 31:13, 37:19, 47:16, 51:9, 52:7, 52:18, 53:19, 59:25, 60:2, 60:8, 61:5
**meant** [1] - 9:11
**measure** [1] - 53:3
**measured** [10] - 18:23, 20:21, 48:22, 49:15, 49:21, 52:17, 53:6, 53:16, 53:19
**measurement** [2] - 48:8, 53:22
**mechanical** [1] - 1:24
**meeting** [1] - 38:10
**mention** [1] - 46:25
**merely** [1] - 51:8
**Merriam** [1] - 40:3
**Merriam-Webster** [1] - 40:3
**met** [1] - 29:10
**Micro** [1] - 50:4
**might** [10] - 9:8, 11:3, 17:8, 20:2, 26:19, 34:10, 40:6, 40:20, 41:1, 52:5
**mind** [1] - 50:18
**minority** [1] - 36:9
**mischallenge** [1] - 9:25
**misquoted** [1] - 61:21
**misrepresented** [1] - 60:12
**missed** [2] - 8:13, 38:19
**mistakenly** [1] - 59:6
**moment** [1] - 56:6
**most** [3] - 19:4, 19:9, 19:13
**mount** [1] - 9:25
**move** [3] - 13:6, 58:7, 58:8
**MR** [66] - 4:11, 7:3, 7:11, 8:18, 9:13, 11:20, 13:4, 13:7, 13:25, 14:5, 16:4, 16:9, 17:4, 17:12, 19:18, 21:18, 22:4, 24:22, 25:12, 27:11, 27:13, 30:21, 31:16, 31:20, 34:21, 38:20, 40:9, 40:17, 41:2, 41:5, 41:8, 42:12, 42:16, 42:24, 44:7, 45:20, 46:22, 50:12, 51:12, 52:8, 52:13, 53:5, 53:9, 53:11, 53:13, 53:15, 53:18, 53:20, 54:4, 54:8,

54:10, 54:13, 55:5, 56:15, 57:10, 57:13, 58:8, 59:16, 59:18, 59:21, 61:13, 62:10, 62:11, 62:15, 62:16, 62:17
**muddled** [1] - 26:3
**Muderlak** [7] - 10:1, 10:4, 11:17, 12:9, 12:10, 13:13
**multiple** [3] - 36:19, 38:12, 42:7
**must** [1] - 49:14
**muted** [2] - 38:18, 59:16

## N

**narrow** [1] - 31:3
**narrowly** [1] - 26:8
**Nathanson** [1] - 2:13
**nature** [1] - 8:25
**necessarily** [2] - 36:21, 57:13
**necessary** [2] - 8:2, 11:1
**need** [7] - 17:23, 39:7, 42:2, 49:18, 50:1, 56:19, 62:4
**needs** [2] - 14:2, 14:12
**never** [3] - 7:24, 10:1, 22:11
**new** [1] - 9:18
**next** [6] - 6:7, 15:4, 23:12, 23:18, 46:19, 62:4
**non** [6] - 10:18, 11:6, 11:9, 13:8, 16:20, 59:12
**non-analogous** [3] - 10:18, 11:6, 13:8
**non-infringement** [1] - 16:20
**non-limiting** [1] - 11:9
**non-planar** [1] - 59:12
**none** [2] - 14:11, 28:9
**NORTHERN** [1] - 1:1
**notes** [1] - 62:22
**nothing** [3] - 35:2, 35:22, 44:13
**notice** [1] - 46:25
**notion** [2] - 47:19, 53:1
**notwithstanding** [1] - 29:11
**NOVEMBER** [1] - 1:7
**November** [1] - 3:1
**nth** [1] - 39:8
**number** [7] - 3:19, 9:9, 24:5, 27:18, 54:21,

54:22, 57:21
**Number** [13] - 3:5, 3:11, 4:8, 18:5, 18:20, 18:25, 19:3, 19:11, 26:17, 26:18, 26:19, 42:23, 54:6
**numbered** [1] - 18:14
**numerous** [1] - 48:19
**Nystrom** [1] - 29:24

## O

**object** [2] - 15:7, 19:5
**objectionable** [1] - 51:11
**observation** [1] - 56:16
**obtain** [1] - 15:21
**obvious** [1] - 9:25
**obviously** [1] - 12:22
**obviousness** [1] - 10:12
**occupy** [1] - 20:20
**odds** [1] - 18:1
**OF** [2] - 1:1, 1:12
**office** [2] - 6:4, 16:6
**Official** [1] - 1:19
**often** [2] - 31:12, 46:11
**OHIO** [1] - 1:1
**Ohio** [3] - 1:5, 1:21, 2:14
**Olson** [1] - 2:5
**one** [40] - 5:7, 6:12, 11:25, 13:10, 15:22, 15:23, 17:7, 17:8, 20:20, 21:24, 23:20, 26:10, 27:16, 27:17, 30:8, 31:17, 34:10, 36:3, 37:10, 38:3, 38:5, 39:25, 40:8, 40:16, 42:15, 43:3, 43:5, 43:10, 45:16, 47:11, 48:11, 50:13, 50:18, 50:20, 54:7, 54:11, 56:4, 57:4, 60:3
**open** [19] - 20:17, 21:2, 25:5, 25:23, 26:5, 27:6, 28:4, 28:10, 28:12, 28:22, 29:1, 29:6, 30:2, 30:3, 30:7, 30:18, 33:2, 33:6, 35:25
**opening** [18] - 14:12, 20:10, 22:1, 23:7, 23:24, 24:18, 27:20, 30:10, 31:1, 31:19, 32:3, 32:13, 32:16, 32:22, 32:23, 43:14

**openings** [57] - 14:24, 15:11, 20:20, 22:20, 23:11, 23:13, 23:14, 23:17, 23:21, 24:10, 24:12, 25:14, 25:15, 25:18, 26:14, 30:17, 32:24, 33:16, 33:17, 33:22, 34:5, 34:17, 34:20, 34:23, 35:9, 35:18, 35:19, 35:20, 35:21, 36:2, 36:7, 36:17, 36:19, 36:22, 37:3, 38:2, 38:3, 38:5, 38:8, 38:13, 42:7, 43:11, 43:20, 54:15, 54:18, 54:19, 54:24, 54:25, 55:3, 55:25, 56:5, 56:21, 57:6
**opponent** [1] - 11:15
**opposed** [3] - 3:25, 16:2, 29:1
**opposite** [3] - 5:25, 6:4, 31:10
**order** [3] - 10:14, 11:1, 45:13
**ordinary** [18] - 14:2, 14:10, 19:22, 21:25, 24:16, 30:23, 31:5, 47:20, 47:21, 47:23, 50:2, 50:3, 50:5, 50:9, 50:22, 51:9, 51:23, 54:17
**otherwise** [3] - 8:18, 53:20, 61:9
**outer** [2] - 15:12, 57:21
**outset** [1] - 3:23
**outside** [2] - 15:13, 57:2
**overall** [1] - 44:1
**overlapping** [2] - 38:25, 39:20
**overlaps** [2] - 40:7, 42:19

## P

**Page** [3] - 9:9, 14:13, 24:6
**paper** [1] - 16:3
**Paragraph** [1] - 60:14
**paragraph** [4] - 23:12, 27:15, 33:3, 33:20
**parallel** [1] - 20:21
**Parkway** [1] - 2:10
**part** [6] - 4:12, 10:11, 13:13, 28:24, 35:23, 40:6
**partially** [8] - 22:18,

22:22, 23:14, 28:15, 28:16, 31:23, 35:1, 36:8
**particular** [3] - 30:19, 33:2, 43:21
**particularly** [2] - 12:7, 13:11
**parties** [5] - 3:8, 4:12, 4:13, 48:21, 50:5
**parties'** [4] - 14:6, 21:19, 39:10, 42:25
**parts** [1] - 29:17
**passage** [1] - 56:1
**passes** [2] - 17:14, 20:25
**passing** [1] - 20:23
**past** [1] - 38:14
**Patent** [1] - 58:12
**patent** [59] - 4:17, 5:1, 5:9, 5:18, 5:20, 6:4, 6:11, 6:12, 6:13, 6:16, 6:19, 7:14, 9:7, 10:18, 11:6, 12:1, 14:25, 15:5, 16:18, 17:13, 17:17, 19:7, 20:11, 20:13, 21:23, 22:4, 22:5, 22:16, 22:17, 23:9, 24:12, 24:13, 25:18, 25:19, 25:24, 26:21, 29:5, 29:7, 29:15, 29:22, 30:2, 31:7, 32:2, 33:15, 34:10, 34:11, 34:13, 35:7, 42:3, 43:3, 43:4, 43:23, 45:24, 47:18, 55:23, 57:1, 57:6
**patented** [1] - 5:15
**patents** [5] - 22:9, 29:14, 34:7, 34:11, 58:11
**pattern** [4] - 38:24, 39:19, 41:11, 41:15
**pause** [2] - 4:2, 8:12
**pending** [1] - 6:22
**people** [1] - 17:7
**per** [1] - 24:8
**perceived** [1] - 58:17
**perhaps** [1] - 62:6
**perimeter** [26] - 20:19, 23:12, 23:22, 25:3, 26:18, 27:19, 28:7, 28:9, 28:11, 28:24, 30:11, 30:18, 32:25, 33:2, 35:4, 36:1, 36:6, 44:12, 54:23, 55:16, 55:23, 55:24, 56:4, 56:13, 56:14, 57:18
**person** [1] - 30:5

perspective [2] - 18:16, 53:22
pervasive [1] - 61:1
Phillips [2] - 31:9
phonetic [1] - 46:16
phrase [7] - 4:9, 29:12, 30:13, 42:10, 43:6, 44:10, 44:24
physical [1] - 39:13
picked [1] - 43:10
piece [1] - 16:2
pieces [1] - 23:3
pin [1] - 48:6
pivotal [2] - 8:1, 11:16
placed [1] - 55:18
places [1] - 56:3
plain [24] - 14:2, 14:10, 18:19, 19:22, 21:25, 24:16, 30:23, 31:4, 32:21, 34:13, 40:19, 47:19, 47:21, 47:23, 50:2, 50:3, 50:5, 50:9, 50:22, 51:9, 51:23, 51:25, 54:16
plainly [1] - 24:13
Plaintiff [2] - 1:5, 2:4
plaintiff [1] - 3:15
plaintiff's [1] - 9:9
plaintiffs [2] - 35:21, 38:11
planar [12] - 14:4, 14:8, 14:10, 14:12, 18:4, 18:12, 18:17, 19:11, 19:16, 20:5, 21:10, 59:12
plane [16] - 17:14, 17:22, 18:21, 20:21, 20:22, 37:12, 37:19, 39:12, 40:7, 40:8, 40:10, 40:12, 41:12, 41:17
playing [1] - 56:24
pluck [2] - 24:2, 24:22
plucking [1] - 24:21
plural [1] - 56:5
plurality [58] - 8:23, 20:19, 22:17, 22:18, 22:22, 23:9, 23:22, 25:4, 26:23, 26:25, 27:24, 28:3, 28:5, 28:6, 28:7, 28:8, 28:15, 28:18, 28:20, 28:24, 31:22, 31:24, 33:16, 34:25, 35:2, 35:3, 35:24, 36:10, 43:1, 44:10, 44:11, 44:12, 44:14, 44:19, 44:25, 45:4, 45:10, 46:9, 47:1, 54:21,

54:22, 54:24, 54:25, 55:8, 55:17, 55:25, 56:5, 57:13, 57:15, 57:19, 58:19, 59:3, 59:11, 60:2, 61:2, 61:16, 61:17
point [22] - 9:20, 10:19, 16:3, 17:5, 20:14, 24:18, 25:14, 31:4, 35:5, 43:10, 48:7, 48:12, 48:13, 49:22, 50:3, 51:24, 51:24, 52:21, 55:10, 57:24, 60:15
pointed [5] - 11:5, 33:8, 46:18, 59:5, 61:20
pointing [4] - 18:9, 18:11, 47:9, 55:15
points [4] - 11:25, 12:25, 43:12, 43:16
polite [1] - 4:1
polygon [3] - 37:9, 39:19, 43:17
polygonal [16] - 27:4, 27:7, 43:2, 43:14, 44:1, 44:4, 44:20, 44:25, 45:5, 45:12, 46:1, 46:3, 46:6, 46:9, 47:2, 47:8
polygons [2] - 38:24, 43:21
portion [13] - 16:11, 20:15, 20:16, 20:17, 21:1, 26:21, 26:24, 32:5, 33:21, 34:2, 35:10, 35:12, 35:15
portions [5] - 32:7, 32:18, 32:25, 33:12, 35:13
position [8] - 4:5, 6:2, 19:21, 43:5, 55:13, 59:7, 60:18, 61:24
positioned [2] - 33:21, 54:23
positions [3] - 14:6, 21:19, 42:25
possibility [1] - 36:9
possibly [1] - 34:12
post [34] - 46:20, 47:10, 47:14, 47:21, 48:6, 48:8, 48:13, 48:14, 48:23, 48:24, 48:25, 49:1, 49:16, 49:19, 49:23, 50:13, 50:15, 50:16, 50:21, 50:23, 50:25, 51:5, 51:8, 51:13, 51:18, 51:23, 51:25, 52:2, 52:3, 53:1, 53:3,

53:10
posts [27] - 21:13, 46:19, 48:6, 48:9, 48:10, 48:11, 48:20, 48:21, 49:8, 49:9, 50:19, 51:17, 51:21, 52:1, 52:22, 52:24, 54:22, 55:2, 56:21, 56:22, 57:1, 57:6, 57:19, 57:21, 58:1, 58:2
potentially [2] - 47:7, 49:4
PowerPoint [1] - 3:13
preamble [27] - 5:1, 6:8, 7:18, 7:19, 7:22, 7:23, 8:2, 8:4, 8:9, 9:2, 9:5, 9:17, 10:2, 10:8, 10:9, 10:13, 10:14, 11:8, 11:22, 11:23, 11:24, 12:20, 13:11, 13:17, 13:19, 13:21, 28:2
preceded [1] - 29:14
precludes [1] - 44:13
prefer [1] - 3:25
preferred [8] - 14:19, 14:21, 16:18, 16:22, 20:6, 27:19, 41:14, 43:21
prepared [1] - 62:22
presentation [4] - 17:18, 26:22, 37:15, 49:17
presentations [1] - 3:13
presumed [1] - 58:14
pretty [3] - 34:13, 58:20
principle [3] - 7:15, 10:23, 10:24
problem [7] - 25:12, 27:13, 30:25, 31:2, 39:18, 40:22, 48:12
problematic [2] - 48:18, 49:4
Procedure [1] - 58:13
proceeded [1] - 47:13
PROCEEDINGS [1] - 1:12
proceedings [1] - 62:21
Proceedings [3] - 1:24, 3:3, 62:18
produced [1] - 1:25
product [8] - 15:22, 16:2, 16:25, 22:3, 30:12, 30:17, 51:4, 51:10
production [1] - 37:6

Products [2] - 3:6
PRODUCTS [2] - 1:4, 1:8
proffered [1] - 26:12
prominent [2] - 19:5, 19:9
proper [1] - 55:20
proposal [1] - 39:14
propose [4] - 21:20, 36:17, 39:2, 59:1
proposed [7] - 3:10, 24:19, 38:7, 38:21, 39:11, 41:11, 42:18
proposing [1] - 58:16
prosecution [14] - 5:3, 5:8, 5:25, 9:21, 9:23, 10:7, 10:14, 10:24, 11:7, 11:18, 11:25, 12:12, 13:8, 13:16
protect [1] - 46:12
protrude [2] - 49:11, 51:16
protrusion [10] - 47:14, 47:22, 50:10, 51:2, 51:5, 51:10, 51:13, 51:15, 52:6, 52:7
protrusions [2] - 50:18, 52:19
prove [2] - 52:18, 52:19
provided [3] - 3:20, 34:6, 52:15
purely [1] - 34:24
purpose [4] - 6:5, 51:18, 56:22, 57:23
put [7] - 17:8, 24:18, 51:24, 57:1, 57:17, 60:4

Q

questions [3] - 7:8, 11:13, 16:24
quite [2] - 9:10, 53:18
quoted [1] - 43:24
quoting [1] - 59:6

R

rampant [1] - 27:23
ran [1] - 19:6
rarely [1] - 16:23
rather [6] - 8:10, 9:15, 43:7, 48:16, 54:18, 60:18
re [1] - 13:7
re-emphasize [1] - 13:7
reach [2] - 38:14,

47:12
reaction [1] - 22:3
read [15] - 6:19, 16:19, 17:16, 20:5, 21:23, 21:24, 22:5, 22:6, 25:19, 30:8, 36:5, 43:6, 48:5, 53:12, 58:18
readily [1] - 17:25
reading [7] - 14:9, 14:15, 14:17, 14:18, 16:20, 55:7, 57:24
really [14] - 22:11, 29:16, 35:18, 36:25, 37:1, 37:16, 38:25, 39:21, 48:1, 48:18, 55:18, 56:5, 60:4, 61:5
reason [5] - 6:21, 7:14, 10:3, 19:14, 28:25
reasonable [13] - 30:6, 36:23, 44:21, 44:23, 45:8, 45:9, 45:10, 45:15, 55:7, 55:10, 55:18, 56:9
reasonableness [1] - 56:7
reasonably [1] - 6:19
reasons [3] - 13:9, 19:1, 30:1
received [1] - 3:8
recently [1] - 4:12
recite [2] - 4:18, 7:5
recites [4] - 6:14, 8:6, 8:16, 8:22
recognize [1] - 19:8
record [3] - 3:22, 59:23, 62:21
recorded [1] - 1:24
rectangular [1] - 49:24
red [2] - 16:13, 57:14
reduce [2] - 51:20, 57:4
reduced [1] - 51:22
reducing [1] - 56:25
reed [1] - 18:18
refer [26] - 26:20, 32:17, 33:12, 45:24, 47:7, 48:24, 56:4
reference [10] - 5:9, 5:14, 11:5, 12:8, 19:15, 20:14, 20:24, 21:6, 35:6, 60:6
references [9] - 5:7, 6:18, 9:13, 9:14, 9:24, 10:10, 13:20, 19:14, 26:15
referred [1] - 34:2
referring [14] - 20:14,

32:12, 34:12, 35:19, 35:20, 40:11, 43:19, 44:2, 44:3, 55:23, 58:23, 61:20, 61:25
**refers** [5] - 17:13, 28:23, 32:22, 33:20, 55:25
**reflected** [1] - 3:11
**reflects** [1] - 9:23
**regarding** [2] - 8:24, 18:20
**rejection** [3] - 10:12, 12:22
**relates** [1] - 44:25
**relating** [4] - 25:21, 38:15, 47:6, 59:23
**relation** [1] - 44:17
**relative** [1] - 21:13
**relevant** [1] - 5:17
**relied** [1] - 29:19
**rely** [4] - 32:6, 32:19, 39:18, 50:2
**relying** [1] - 60:14
**remaining** [2] - 41:22, 62:8
**remark** [1] - 34:22
**remarks** [1] - 3:24
**remind** [1] - 58:10
**removing** [1] - 41:21
**renders** [1] - 21:21
**Renishaw** [1] - 29:23
**repeated** [2] - 38:24, 39:19
**repeating** [1] - 39:14
**replace** [1] - 49:23
**replete** [1] - 6:17
**reply** [3] - 19:17, 46:20, 46:22
**report** [1] - 56:2
**Reporter** [1] - 1:19
**reporter** [5] - 3:21, 7:1, 8:13, 25:10, 54:6
**reprises** [1] - 17:19
**reproduced** [1] - 15:4
**requires** [1] - 60:16
**resolved** [1] - 62:6
**resolving** [1] - 58:4
**respect** [6] - 7:20, 10:17, 13:10, 17:22, 42:1, 47:10
**respond** [2] - 24:21, 57:10
**response** [4] - 24:6, 34:7, 49:8, 49:13
**rest** [1] - 62:13
**restrict** [1] - 26:4
**results** [1] - 34:6
**reversible** [2] - 17:1, 20:3

**rewrite** [1] - 61:9
**rid** [1] - 40:25
**right-hand** [3] - 17:19, 18:6, 61:15
**rise** [2] - 13:17, 30:4
**risers** [2] - 49:7, 49:10
**Riverwood** [1] - 2:10
**RMR** [1] - 1:19, 62:23
**road** [1] - 39:24
**rod** [3] - 23:2, 23:3, 32:1
**role** [2] - 56:24, 61:9
**room** [2] - 5:10, 36:9
**rule** [3] - 8:3, 26:7, 56:7

**S**

**safe** [1] - 53:5
**sanitary** [1] - 5:10
**satisfied** [3] - 10:2, 10:10, 10:14
**satisfy** [2] - 36:17, 60:23
**save** [1] - 25:8
**scenarios** [1] - 43:9
**scheduled** [1] - 3:7
**Schlatter** [1] - 2:4
**scope** [2] - 24:3, 55:20
**screen** [63] - 4:9, 4:14, 4:15, 4:19, 4:21, 4:24, 6:6, 6:13, 6:14, 6:15, 6:16, 6:17, 6:18, 6:20, 6:23, 7:7, 7:21, 7:23, 8:25, 9:10, 9:14, 9:22, 10:5, 11:22, 12:6, 12:10, 19:24, 20:4, 20:16, 20:17, 20:18, 21:2, 24:14, 25:3, 36:16, 36:18, 37:2, 37:17, 38:3, 40:11, 43:7, 43:24, 44:3, 44:15, 45:23, 45:25, 46:1, 46:17, 49:10, 49:11, 49:12, 49:15, 49:22, 51:7, 52:22, 53:17, 57:4, 57:16, 57:18
**Screen** [2] - 43:25, 49:7
**screens** [5] - 36:20, 37:24, 38:9, 38:12, 42:6
**seams** [2] - 50:17, 51:16
**search** [1] - 34:6
**second** [11] - 6:3, 8:12, 8:23, 18:24, 25:11, 31:17, 46:5,

46:8, 47:17, 54:22, 61:17
**section** [1] - 6:16
**see** [21] - 4:10, 7:13, 10:4, 15:6, 15:7, 16:14, 18:4, 24:24, 25:4, 26:3, 27:5, 27:18, 27:25, 28:1, 36:13, 39:18, 40:22, 45:20, 47:13, 53:7, 53:25
**seem** [1] - 39:12
**segue** [1] - 34:16
**selling** [2] - 5:20, 5:22
**semblance** [1] - 20:7
**SENIOR** [1] - 1:14
**sense** [2] - 49:1, 57:17
**sentence** [1] - 8:14
**separately** [1] - 34:2
**series** [2] - 7:18, 17:21
**serves** [2] - 53:9, 53:14
**set** [5] - 14:7, 17:15, 31:14, 42:25, 54:15
**sets** [2] - 11:21, 21:18
**shape** [24] - 25:21, 27:4, 27:7, 30:14, 30:19, 43:2, 43:14, 43:20, 43:23, 44:1, 44:3, 44:20, 44:25, 45:3, 45:5, 45:12, 45:23, 45:25, 46:1, 46:3, 46:6, 46:9, 47:2, 47:8
**shapes** [4] - 38:22, 39:14, 39:16, 44:4
**share** [1] - 3:12
**shared** [1] - 4:5
**shares** [1] - 27:16
**short** [1] - 34:22
**shorter** [2] - 48:10, 48:11
**show** [11] - 5:7, 15:7, 15:17, 17:18, 19:1, 29:11, 35:1, 38:3, 48:20, 55:25, 56:2
**showed** [2] - 29:15, 38:4
**showing** [4] - 15:15, 15:19, 16:14
**shown** [6] - 15:8, 23:25, 26:16, 26:21, 35:7, 61:22
**shows** [6] - 11:5, 15:10, 26:13, 32:2, 32:23, 37:17
**side** [20] - 4:3, 4:6, 4:7, 7:9, 14:3, 16:13, 17:3, 17:4, 17:16, 17:17, 17:21, 18:6,

19:8, 20:2, 23:19, 25:2, 27:16, 31:14, 33:1
**sided** [2] - 40:24
**sides** [17] - 14:24, 17:5, 18:24, 20:4, 22:20, 23:22, 26:15, 26:16, 26:20, 27:4, 27:7, 27:10, 27:21, 37:11, 52:22, 60:7, 60:8
**signals** [1] - 10:8
**significance** [1] - 56:13
**significant** [2] - 19:4, 19:9
**significantly** [1] - 49:16
**SILK** [1] - 62:17
**Silk** [1] - 2:12
**similar** [1] - 47:12
**simple** [1] - 55:12
**simply** [5] - 13:15, 18:13, 18:17, 45:15, 55:5
**sin** [3] - 14:14, 16:21, 26:9
**single** [5] - 4:15, 36:4, 37:12, 54:13, 55:24
**singled** [2] - 11:6, 13:19
**situation** [1] - 43:14
**size** [2] - 25:20, 25:21
**skill** [3] - 6:19, 21:24, 30:6
**skilled** [1] - 43:5
**skip** [3] - 37:23, 54:8, 54:9
**slide** [17] - 5:6, 6:7, 7:12, 15:4, 20:10, 23:18, 23:19, 25:2, 26:21, 37:14, 44:8, 45:2, 46:23, 59:19, 60:1, 60:5, 61:25
**Slide** [50] - 5:6, 5:7, 5:12, 7:12, 10:4, 14:6, 14:22, 16:9, 17:18, 18:3, 19:2, 20:10, 21:18, 22:15, 23:18, 24:24, 26:13, 26:22, 27:15, 28:1, 32:4, 32:6, 35:7, 37:4, 37:23, 40:2, 41:19, 42:25, 44:8, 45:1, 45:21, 46:4, 46:23, 48:1, 48:5, 48:19, 49:3, 49:6, 49:7, 49:17, 52:19, 52:23, 55:10, 55:21, 59:18, 60:5, 60:19,

61:11, 61:22
**slight** [1] - 51:14
**slightest** [2] - 51:1, 52:5
**slightly** [1] - 46:14
**small** [12] - 22:1, 24:11, 24:15, 24:18, 25:15, 31:1, 32:22, 36:21, 36:22, 38:8, 42:6, 57:21
**solid** [49] - 14:4, 19:12, 21:1, 25:1, 25:5, 25:18, 26:16, 26:18, 27:6, 27:20, 27:25, 28:4, 28:11, 28:12, 28:17, 29:2, 29:12, 29:13, 30:2, 30:10, 30:15, 31:4, 31:19, 31:25, 32:7, 32:8, 32:17, 32:18, 32:25, 33:6, 33:12, 33:21, 33:25, 34:2, 34:3, 34:8, 34:14, 35:4, 35:9, 35:10, 35:12, 35:14, 35:15, 35:23, 36:4, 36:10
**someone** [3] - 5:20, 5:22, 43:15
**sorry** [6] - 9:7, 15:21, 25:10, 38:18, 41:2, 41:4
**sort** [7] - 14:14, 20:4, 33:4, 33:7, 33:10, 42:20, 43:17
**source** [1] - 31:12
**sources** [1] - 37:21
**space** [2] - 22:1, 38:8
**speaking** [2] - 30:16, 47:14
**special** [1] - 29:4
**specific** [3] - 25:20, 54:18, 59:9
**specifically** [4] - 5:4, 8:8, 39:23, 47:1
**specification** [43] - 14:23, 14:25, 15:5, 17:25, 18:2, 18:20, 19:14, 20:12, 22:20, 23:7, 23:15, 23:20, 23:25, 24:23, 24:25, 26:5, 26:24, 31:8, 31:10, 31:11, 32:4, 32:5, 32:7, 32:16, 32:22, 33:3, 34:3, 35:17, 43:19, 43:25, 47:18, 48:6, 48:17, 55:1, 56:19, 56:20, 58:18, 59:6, 59:7, 59:9, 60:25, 61:21, 61:22

**specifications** [2] - 20:15, 39:15
**specify** [2] - 28:6, 55:9
**Spengler** [1] - 2:13
**Spielbusch** [1] - 1:20
**splashing** [5] - 15:2, 51:20, 51:22, 56:25, 57:5
**Stacey** [2] - 1:19, 62:23
**STACEY** [1] - 62:23
**standard** [1] - 11:21
**standing** [3] - 32:20, 32:22, 32:23
**standpoint** [1] - 15:20
**stands** [1] - 31:8
**start** [1] - 31:20
**starting** [4] - 17:12, 48:7, 48:12, 48:13
**statement** [2] - 4:2, 4:13
**STATES** [2] - 1:1, 1:14
**States** [1] - 1:20
**stenography** [1] - 1:24
**stenotype** [1] - 62:22
**Steve** [4] - 46:20, 55:4, 59:14, 59:16
**steven** [1] - 40:25
**Steven** [7] - 2:8, 3:17, 7:10, 13:5, 17:11, 24:20, 34:18
**still** [5] - 18:4, 21:11, 36:10, 41:22, 57:22
**straight** [9] - 16:12, 18:7, 18:8, 18:10, 18:11, 18:21, 43:12, 43:16
**straightforward** [3] - 58:15, 58:21, 59:13
**stream** [1] - 57:7
**Street** [2] - 2:5, 2:13
**stretched** [1] - 48:17
**struck** [1] - 42:15
**structurally** [3] - 8:6, 8:9, 8:18
**structure** [12] - 8:11, 9:3, 9:4, 9:16, 9:19, 15:15, 20:18, 52:2, 55:23, 56:4, 56:14
**structured** [2] - 8:25, 57:5
**structures** [3] - 20:19, 55:24, 56:14
**strut** [2] - 23:2, 32:1
**submit** [6] - 9:12, 19:15, 21:23, 43:18, 54:16, 58:23
**substantially** [1] - 49:21
**sufficient** [2] - 24:17,

51:10
**suggest** [3] - 35:21, 36:4, 42:4
**suggesting** [2] - 21:3, 60:11
**suggestion** [2] - 29:12, 39:5
**suggests** [1] - 12:18
**Suite** [2] - 1:20, 2:10
**summarize** [1] - 36:13
**summer** [1] - 62:13
**superior** [1] - 42:9
**support** [9] - 16:19, 49:11, 52:10, 53:9, 53:14, 55:12, 56:22, 60:19, 61:24
**supported** [2] - 14:16, 20:7
**supporting** [1] - 56:23
**supports** [3] - 52:1, 52:2
**surface** [22] - 14:4, 17:15, 19:5, 19:9, 19:11, 19:16, 20:20, 21:3, 21:7, 21:9, 47:15, 51:14, 51:19, 52:6, 52:9, 52:10, 53:16, 56:24, 57:8, 58:25, 60:4, 60:17
**surfaces** [12] - 18:22, 58:20, 58:23, 59:11, 59:12, 60:7, 60:9, 60:22, 60:23, 61:17, 61:19, 61:20
**surround** [3] - 54:24, 56:21, 57:6
**surrounding** [1] - 55:3
**suspect** [1] - 49:25
**suspicions** [1] - 42:8
**sustains** [1] - 56:10
**synonym** [2] - 51:5, 51:8

**T**

**table** [1] - 54:3
**talks** [4] - 14:25, 23:15, 36:6, 48:9
**target** [1] - 50:7
**task** [1] - 19:3
**teach** [2] - 13:21, 52:22
**teaches** [1] - 10:4
**teaching** [2] - 21:4, 49:9
**technical** [1] - 26:1
**technically** [1] - 9:22
**term** [37] - 4:14, 9:2, 9:17, 11:9, 11:21, 12:20, 13:17, 25:8,

26:8, 26:10, 29:13, 30:6, 31:12, 32:8, 32:11, 32:17, 32:18, 33:4, 33:7, 33:9, 33:10, 34:3, 34:14, 36:14, 36:15, 36:16, 36:24, 38:15, 41:25, 43:1, 50:6, 56:8, 58:9, 58:19, 59:23
**terminology** [1] - 29:14
**Terms** [1] - 17:20
**terms** [8] - 3:10, 8:1, 17:21, 33:5, 35:16, 39:23, 42:1, 55:19
**tessellate** [2] - 37:9, 37:19
**tessellated** [1] - 38:13
**tessellating** [1] - 40:5
**tessellation** [26] - 23:10, 23:13, 33:15, 33:17, 33:22, 34:17, 34:20, 34:23, 35:8, 35:18, 35:19, 35:20, 36:7, 36:12, 37:3, 37:22, 38:1, 38:4, 38:5, 39:4, 40:5, 40:14, 40:19, 47:13, 50:14
**texture** [3] - 51:1, 51:14, 52:4
**THE** [58] - 1:13, 3:5, 6:25, 7:10, 8:12, 9:7, 11:14, 13:2, 13:5, 13:23, 14:1, 15:21, 16:7, 16:25, 17:11, 19:17, 21:17, 22:2, 24:20, 25:10, 27:9, 27:12, 30:8, 31:15, 31:17, 34:16, 38:16, 40:1, 40:16, 40:25, 41:4, 41:6, 42:11, 42:13, 42:22, 45:18, 46:19, 50:9, 51:4, 52:7, 53:3, 53:7, 53:12, 53:24, 54:5, 54:9, 54:12, 55:4, 56:12, 57:9, 57:12, 58:6, 59:14, 59:17, 59:20, 61:10, 62:1, 62:12
**themselves** [4] - 24:8, 34:15, 46:18, 54:18
**theoretically** [1] - 60:23
**theory** [1] - 12:4
**therefore** [2] - 11:10, 21:10
**therefrom** [1] - 7:5
**they've** [5] - 4:3,

36:13, 45:21, 45:22, 46:12
**thickness** [6] - 18:23, 21:8, 21:11, 21:12, 21:14
**thin** [1] - 18:18
**thinking** [3] - 22:24, 23:1, 50:16
**third** [3] - 33:20, 46:8, 48:15
**three** [6] - 15:7, 23:14, 36:8, 57:20, 59:22, 61:11
**three-dimensional** [1] - 15:7
**throughout** [1] - 37:15
**tip** [1] - 53:6
**today** [4] - 3:8, 3:14, 62:3, 62:13
**together** [10] - 35:22, 36:2, 36:18, 36:23, 38:2, 38:8, 38:23, 39:6, 57:20
**Toledo** [3] - 1:5, 1:21, 2:14
**took** [2] - 19:6, 37:5
**top** [9] - 15:9, 15:10, 17:6, 18:16, 21:4, 21:9, 48:23, 49:16, 49:22
**topic** [1] - 34:18
**touched** [1] - 15:24
**towards** [1] - 8:10
**trace** [1] - 18:7
**trailed** [1] - 6:25
**TRANSCRIPT** [1] - 1:12
**transcript** [3] - 1:24, 3:22, 62:21
**transcription** [1] - 1:25
**transform** [1] - 11:8
**transitions** [1] - 34:22
**tried** [2] - 22:25, 43:9
**trier** [1] - 19:20
**true** [3] - 35:9, 36:5, 56:3
**try** [4] - 22:8, 34:9, 38:11, 42:5
**trying** [4] - 15:7, 20:15, 50:7, 53:8
**TUESDAY** [1] - 1:7
**Tuesday** [1] - 3:1
**turn** [7] - 7:12, 14:21, 20:9, 24:24, 44:5, 49:3, 59:18
**turned** [1] - 15:24
**turning** [1] - 45:1
**two** [21] - 13:9, 13:15, 15:6, 15:20, 16:12,

16:15, 17:3, 18:22, 20:3, 22:9, 27:22, 33:4, 33:7, 55:11, 57:19, 59:21, 60:21, 60:22, 61:12, 61:13, 62:5
**two-dimensional** [3] - 15:6, 15:20, 16:15
**two-word** [2] - 33:4, 33:7
**type** [4] - 4:1, 11:7, 31:6, 40:8
**types** [2] - 40:8, 40:23

**U**

**ultimately** [2] - 13:21, 39:8
**unbounded** [1] - 47:18
**uncertain** [1] - 33:25
**uncertainty** [8] - 44:24, 45:6, 45:19, 45:21, 46:15, 47:6, 47:9, 56:9
**under** [7] - 5:11, 10:15, 36:23, 38:1, 38:7, 50:4, 60:24
**understood** [2] - 41:9, 47:25
**undeserving** [1] - 29:23
**unidentified** [1] - 18:10
**unique** [1] - 29:13
**UNITED** [2] - 1:1, 1:14
**United** [1] - 1:20
**unless** [3] - 7:8, 11:12, 21:15
**unmarked** [1] - 18:9
**unreasonable** [1] - 55:14
**up** [9] - 7:10, 12:11, 16:11, 17:11, 40:15, 43:18, 50:14, 57:7
**updated** [1] - 4:12
**upper** [14] - 58:20, 58:22, 58:25, 59:2, 59:3, 59:10, 59:12, 60:3, 60:6, 60:9, 60:16, 60:22, 61:17, 61:20
**urge** [2] - 21:11, 50:19
**urging** [1] - 58:16
**urinal** [71] - 4:9, 4:14, 4:15, 4:18, 4:21, 4:23, 5:10, 5:11, 5:21, 5:23, 6:5, 6:13, 6:14, 6:15, 6:16, 6:18, 6:20, 6:23, 7:5,

7:7, 7:21, 7:23, 9:10,
9:11, 9:14, 9:15,
9:22, 10:4, 10:5,
11:22, 12:6, 12:10,
16:5, 17:8, 19:23,
20:4, 20:16, 20:17,
20:18, 20:25, 21:2,
24:14, 36:16, 36:18,
36:21, 37:2, 38:3,
38:12, 40:11, 42:6,
43:7, 43:24, 44:3,
45:23, 45:25, 46:17,
49:10, 49:11, 49:12,
49:15, 51:7, 51:20,
52:11, 56:24, 57:3,
62:4
**urine** [2] - 24:15,
57:23
**usage** [4] - 9:18, 26:1,
36:23
**useful** [1] - 40:12
**uses** [8] - 32:8, 35:12,
40:2, 44:9, 44:19,
55:23, 55:24, 56:3
**utterly** [1] - 47:18

## V

**valid** [1] - 58:14
**validity** [2] - 50:8,
58:11
**variety** [2] - 14:11,
46:11
**various** [3] - 15:17,
43:9, 43:16
**versus** [8] - 3:6, 7:17,
20:18, 21:2, 42:4,
45:14, 46:17, 56:14
**VIDEO** [1] - 1:12
**view** [7] - 4:23, 15:10,
16:14, 18:1, 38:1,
38:25, 55:6
**viewed** [2] - 11:10,
29:2
**violate** [1] - 26:6
**virtually** [1] - 22:9
**visual** [1] - 62:3
**vitality** [1] - 6:9
**voice** [1] - 6:25
**vs** [1] - 1:7

## W

**Wait** [1] - 6:3
**wants** [3] - 43:23,
45:24, 62:2
**watching** [1] - 3:20
**ways** [2] - 46:11, 51:8
**weasel** [2] - 38:11,
42:5

**Webster** [1] - 40:3
**week** [1] - 62:13
**weekend** [1] - 22:25
**WESTERN** [1] - 1:2
**Wharton** [1] - 2:10
**wherein** [4] - 20:22,
23:12, 43:1, 47:1
**whole** [17] - 10:11,
11:7, 22:12, 24:1,
24:4, 24:7, 24:23,
29:3, 43:24, 44:3,
45:4, 45:23, 45:25,
46:17, 56:20, 57:14
**wide** [8] - 48:14,
48:22, 49:2, 49:16,
52:9, 52:17, 52:24,
53:6
**wider** [1] - 52:19
**width** [5] - 48:4, 48:16,
49:21, 53:14, 53:15
**widthways** [1] - 53:23
**wisdom** [1] - 50:24
**wish** [1] - 34:17
**witness** [1] - 43:9
**wooden** [1] - 23:3
**word** [26] - 8:21, 14:8,
17:21, 20:8, 21:21,
22:7, 22:10, 22:14,
24:2, 24:3, 30:9,
32:20, 33:4, 33:7,
33:23, 34:8, 34:10,
38:11, 38:18, 41:21,
42:5, 44:17, 50:13,
50:20, 51:2
**wording** [1] - 55:19
**words** [7] - 4:22, 8:20,
13:5, 17:1, 30:13,
33:11, 42:20
**workable** [1] - 41:1
**works** [2] - 17:9, 41:20
**world** [1] - 37:8
**writing** [1] - 62:6

## Y

**yellow** [1] - 55:16

## Z

**zone** [6] - 44:23, 45:5,
45:18, 45:20, 47:8,
56:9
**ZOUHARY** [1] - 1:13