IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Fresh Products, Inc., | Case No. 3:19 CV 2109 |
| Plaintiff, | MARKMAN ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Impact Products, LLC, | |
| Defendant. | |

### INTRODUCTION

Plaintiff Fresh Products, Inc. ("Fresh Products") accuses Defendant Impact Products, LLC. ("Impact Products") of patent infringement (Doc. 50 at ¶¶ 14–16). Fresh Products' patent describes an improved urinal screen (Doc. 50-1 at 1). Urinal screens are designed, generally, to prevent debris from being flushed down a urinal drain, maintain a sanitary environment, and freshen the surrounding air (*id.*) One of the specific improvements of this invention are "posts" designed to separate the screen's frame from the surface of the urinal such that "splashing on a user can be reduced" (Doc. 50 at 3).

The parties offer competing interpretations of the patent's scope. The matter is fully briefed (Docs. 62–66), and counsel presented oral argument (Doc. 71). Under *Markman v. Westview Instruments*, 517 U.S. 370 (1996), this Court resolves these interpretive disputes below.

### LEGAL FRAMEWORK

A patent document contains two parts: one or more claims, and the specification. *Markman*, 517 U.S. at 373. Claims define the scope of patent rights, and the specification teaches how to make and use the protected invention (*id.*). The words of a claim mean what they would mean "to a person

of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). The claim "must be read in view of the specification," which is "the single best guide to the meaning of a disputed [claim] term" (*id.* at 1315) (citations omitted). Also relevant is the prosecution history, which is the record of proceedings between the patent applicant and the Patent and Trademark Office ("PTO") during the patent approval process (*id.* at 1317). When interpreting patent language, courts may also consider "extrinsic evidence" such as dictionaries and expert testimony (*id.*). Sometimes, the ordinary and customary meaning of claim language to a person of ordinary skill in the art may be identical to the meaning the language would have to a lay person not skilled in the art (*id.* at 1312–14).

## ANALYSIS

Counsel for both parties reached an agreement on the construction of several disputed patent terms prior to the Markman Hearing (Doc. 68). Since the Hearing, counsel have submitted a Joint Notice of Additional Agreed-Upon Claim Constructions, which details three additional terms the parties have agreed upon (Doc. 72). The remaining terms are analyzed in turn below.

### *Urinal screen*

The parties have agreed to the definition of the term "urinal screen" -- defined as, "a screen used in a urinal and through which urine passes" (Doc. 68-1 at 11). The only issue in dispute is whether the term "urinal screen" is a non-limiting preamble term or a limiting term.

Defendant argues that the term is not a limitation of claim 19 of the '098 patent, meaning, claim 19 could conceivably cover an item that is not a urinal screen. An example of such a device is Patent No. 927,026 ("Clayton patent") -- a design for a floor covering intended to go beneath a urinal (Doc. 63-5). Plaintiff argues that the Clayton patent is not even in the same field or endeavor as their

product, and that the term "urinal screen" should be read as a limiting preamble term that gives "life, meaning, and vitality to the claim" (Doc. 71 at 5–6). Plaintiff further notes that the term appears throughout both the claim and specifications of the patent, and that nobody having skill in the art could reasonably believe claim 19 refers to anything other than a screen located in a urinal (*id.*).

Defendant argues that language in the preamble in not limiting where the body of the claim recites an otherwise structurally complete invention (Doc. 65 at 3). Defendant says the body is structurally complete, and that the preamble only goes to the use of the structure, not the structure itself (*id.* at 5). Defendant points to *Catalina*, which held that when the preamble only adds usage, and not structure, it cannot be limiting (Docs. 62 at 3–4; 71 at 7–8) (citing *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 810–11 (Fed. Cir. 2002)). *Catalina*, however, also held that a preamble limits the claim if it is "necessary to give life, meaning, and vitality" to the claim, and whether a preamble is treated as a limiting term is "resolved only on review of the entire patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim." *Catalina Mktg. Intl.*, 289 F.3d at 808 (cleaned up).

The patent at issue here is replete with references to a urinal screen designed to be used inside of a urinal, which nobody would confuse with a flooring device such as the Clayton patent. Even if the term is not used in the body of a specific claim, any reader would understand that the claim is referencing a urinal screen. This Court agrees with Plaintiff that the term "urinal screen" in this context shall be construed as a limiting term.

*Face*

The parties disagree over the term "face." Plaintiff argues that the term should be given its plain and ordinary meaning, but if construction is necessary, it should be construed to mean, "a main

3

side of a thing" (Doc. 68-2 at 2). Defendant proposes to construe the term as, "planar surface of a solid" (*id.*).

Plaintiff admits that the urinal screen product they produce is reversible and has two faces (Doc. 71 at 20). Their proposed construction therefore introduces the confusing concept of an item having two separate "main" sides, which Plaintiff's counsel admitted "might not be . . . entirely accurate" (*id.*). Therefore, "a main side of a thing" is not the best construction of the term.

Defendant's proposed construction is likewise not ideal. Defendant proposes "planar surface of a solid" as a construction (Doc. 68-2 at 2). Plaintiff rightfully points out that Defendant's proposed use of the term "planar" conflicts with the preferred embodiment of the patent (Doc. 64 at 3–4). Indeed, a key feature of the face of the urinal screen is that it is contoured, without a solid surface, which conflicts with the term "planar" (*id.*). The word planar is nowhere to be found in the patent. It would be improper to read in the term now. This Court adopts neither proposed construction. Rather, the term shall be given its plain and ordinary meaning. The average juror should have little difficultly understanding the term "face" in this context. No construction is necessary.

*Cell*

The parties propose different constructions for the term "cell." Plaintiff argues for the term to be given its plain and ordinary meaning, but if further defined, to be given the construction, "small enclosed openings or spaces" (Doc. 68-2 at 5). Defendant argues the term "cell" is indefinite (*id.*).

Defendant argues that, in the patent, cells are not limited to "small enclosed openings or spaces" but include a variety of forms including solid cells, and that the variety of cell types, without a clear definition, will leave a person of skill in the art in a "zone of uncertainty" (Doc. 62 at 7–9,

4

14). Plaintiff responds that specific terms such as "solid cell" are their own "coined terms" and there would be no such uncertainty when read by a person of ordinary skill (Doc. 63 at 12).

This Court finds that Plaintiff's proposed construction of "small enclosed openings or spaces" has the potential to create unnecessary confusion; the term "cell" on its own is clear. Common dictionary definitions include: "a small enclosed cavity or space, as in a honeycomb" (Webster's New College Dictionary) and "any small compartment: the cells of a honeycomb" (Collins Dictionary) (Docs. 63-6; 63-8). Definitions such as these are sufficient to capture the concept of a "cell" as is used in the patent. No construction is necessary.

### *"Wherein at Least Some of the Plurality of Interconnected Cells Comprise a Polygonal Shape"*

Plaintiff argues this term should have its plain and ordinary meaning; Defendant argues the term is indefinite (Doc. 68-2 at 14). Defendant asserts one point of potential confusion is whether this term refers to individual cells having a polygonal shape or the structure of the screen as a whole having a polygonal shape (Doc. 62 at 15–16). Further, Defendant argues that other portions of the patent that refer to only individual cells specifically use the phrase "each cell," and the absence of the word "each" here creates a "zone of uncertainty" for potential designers (Doc. 71 at 44). Plaintiff responds that, whenever the patent refers to the structure as a whole, the term "urinal screen" is used, and the overall structure is never referred to as a plurality of interconnected cells (*id.* at 45–46).

This Court agrees with Plaintiff that the term is clear on its face. Given there is no reason for uncertainty or confusion to arise from this term, no construction is necessary.

5

### *"Along a Perimeter of at Least Some of the Plurality of Openings, so as to Surround [ ] at Least Some of the Plurality of Openings"*

Plaintiff argues for this term to be given its plain and ordinary meaning; Defendant asserts that it is indefinite (Doc. 68-2 at 20). Defendant argues there will be confusion to a potential designer as to whether the term "perimeter" is referring to the perimeter of the openings individually or collectively (Docs. 62 at 20; 71 at 55). Plaintiff argues that the specifications, overall context, and function of the device make it clear that the posts are "positioned along a perimeter of at least some of the openings, so as to surround at least some of the openings" (Docs. 63 at 19; 71 at 54–55). Based on the design, function, and specifications for the product, it is clear the "perimeter" is the portion of the product where the sides of the cells meet, and there is no contradiction as alleged by Defendant. This Court agrees with Plaintiff that the term is straightforward and no construction is necessary.

### *"At Least Some of the Plurality of Braces Comprise Contoured Upper and Lower Surfaces"*

Plaintiff argues for the plain and ordinary meaning, and, if not, to further define as "at least some of the plurality of braces have non-planar upper and lower surfaces" (Doc. 68-2 at 22). Defendant argues the term is indefinite because it is ambiguous and open to multiple possible interpretations (Doc. 71 at 59–60). From Plaintiff's perspective, the term is straightforward and can be understood as referring to braces that have both a contoured upper and lower surface (*id.* at 58–59).

As acknowledged by Plaintiff, their expert mistakenly used the words "and/or" instead of "and" when explaining the specification (*id.*). Absent potential confusion the expert may have introduced, which is not at issue here, the claim term itself is not ambiguous. No construction is necessary, and the term shall be given its plain and ordinary meaning.

## CONCLUSION

Each of the terms in Fresh Product's patent that are still in dispute speak for themselves and require no construction from this Court. Further, this Court determines the term "urinal screen" is a limiting preamble term and shall be a limitation of the claims.

IT IS SO ORDERED.

                                             s/ *Jack Zouhary*
                                             JACK ZOUHARY
                                             U. S. DISTRICT JUDGE

                                             November 24, 2020